IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:17-cv-184

BARRY HONIG, an individual, )
)
Plaintiff, )
)
v. ) COMPLAINT
)
ROBERT LADD, an individual; MGT )
CAPITAL INVESTMENTS, INC., )
a Delaware corporation; TERI BUHL, )
an individual; and DOES 1-20, )
)
Defendants. )
_____ )

Plaintiff alleges:

## SUMMARY OF THE CASE

1. Plaintiff is a private investor who is the victim of a conspiracy between defendants Robert Ladd ("Ladd"), MGT Capital Investments, Inc. ("MGT") and Teri Buhl ("Buhl") (collectively, "Defendants") to publish a series of false and highly defamatory articles about Plaintiff, beginning in September 2016 and continuing into February 2017. Ladd is the President and Chief Executive Officer of MGT, a publicly-traded company in which Plaintiff is a shareholder, and Buhl is a self-styled "investigative journalist."

2. The articles, which were conceived by Ladd and MGT, authored by Buhl and published on Buhl's website, contain assertions that Plaintiff, among other things, is violating securities laws, is the "target" of a Securities and Exchange Commission

{00078520;1}

("SEC") investigation arising out of those violations, and that "90%" of a SEC subpoena served on MGT (the "Subpoena") is about Plaintiff. These statements, and many others, are unequivocally false.

3. Ladd and MGT concocted the scheme to defame Plaintiff in order to divert attention away from MGT as the target of the very SEC scrutiny that the articles falsely allege is directed at Plaintiff. By placing the blame on Plaintiff, Ladd and MGT sought to deceive the public into believing there were no problems at MGT and that it was safe to purchase MGT's stock. Ladd and MGT engaged in this market manipulation in an attempt to boost the share price of MGT, which had substantially declined after MGT's disclosure of the Subpoena and other negative events.

4. In order to carry out their scheme, Ladd and MGT enlisted Buhl to write and publish false and defamatory articles regarding Plaintiff through Buhl's website. Ladd and MGT knew they could turn to Buhl for assistance because she had participated in a similar scheme with respect to another shareholder of MGT in the past. Specifically, in 2014, Defendants' conspired to publish an article on Buhl's website that accused Iroquois Capital and its principal of securities violations similar to those allegedly committed by Plaintiff. As was the case here, Ladd and MGT caused Buhl to publish the article in order to manipulate the market for MGT's stock, maintain their control and also to deflect Iroquois Capital's criticism of MGT's management, and Ladd in particular.

5. The conspiracy amongst Defendants to defame Plaintiff also furthered Buhl's interests. Several months earlier, in May 2016, Buhl published another false and defamatory article accusing Plaintiff of similar activities in relation to a separate

investment. The publication of additional articles, using Ladd and MGT as purported sources, further extended Buhl's fanciful narrative demonizing Plaintiff, based solely on Buhl's ill-informed conjecture, and efforts to drive traffic and associated revenue to her website.

6. Defendants' conduct has injured Plaintiff in his trade and profession and is continuing to cause him substantial harm. Accordingly, Plaintiff hereby asserts claims against Defendants for defamation, civil conspiracy, intentional interference with prospective business advantage and unfair and deceptive trade practices.

## PARTIES

7. Plaintiff Barry Honig is a private investor who resides in, and is a citizen and domiciliary of Palm Beach County, Florida.

8. Defendant Robert Ladd resides in and is a citizen and domiciliary of Chapel Hill, North Carolina. Ladd is, and at all relevant times was, the President, Chief Executive Officer and a Director of MGT.

9. Defendant MGT Capital Investments, Inc. is a Delaware corporation with its principal place of business in Durham, North Carolina.

10. Defendant Teri Buhl resides in and is a citizen and domiciliary of New York, New York. Buhl owns and operates the weblog at www.teribuhl.com.

11. Plaintiff is presently unaware of the identity of the defendants sued herein as DOES 1-20, and will amend this complaint to identify them once Plaintiff learns of

their identities. Defendant Ladd, MGT, Buhl and DOES 1-20 are collectively referred to herein as "Defendants."

12. On information and belief, Defendants, and each of them, were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining Defendants and each of them are, and at all times mentioned herein were, acting within the course and scope of that agency, license, partnership, employment, conspiracy, ownership, or joint venture. On further information and belief, the acts and conduct herein alleged of each of the Defendants were known to, authorized by and/or ratified by the other Defendants, and each of them.

13. Whenever in this complaint reference is made to any act of a defendant, such allegation shall be deemed to mean the acts of the defendants named in the particular cause of action, and each of them, acting individually, jointly and severally.

## JURISDICTION & VENUE

14. This Court has personal jurisdiction over Defendants because they have minimum contacts with the State of North Carolina and/or are domiciliaries of the State of North Carolina.

15. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of the parties to this action and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b), in that Ladd and MGT reside here and a substantial part of the events or omissions giving rise to this complaint occurred here.

## FACTS RELEVANT TO ALL CAUSES OF ACTIONS

17. On or about May 26, 2016, Buhl published an article on teribuhl.com entitled *"Microcap Attorney Jaclin's Co-Conspirator Turned DOJ Witness in Shell Factory Scheme"* (the "May 26, 2016 article"). A true copy of the May 26, 2016 article is attached hereto as **Exhibit A**.

18. The May 26, 2016 article discusses SEC charges against a securities lawyer and a 2014 plea deal by an executive who admitted to illegal trading in his own company's securities, and contains the statement: "But it's possible more players in the microcap space will be arrested by the DOJ or charged with an enforcement action by the SEC. One name that comes to mind is microcap financer Barry Honig." This statement is false and defamatory. Plaintiff is not the target of any such investigation or enforcement action, and there is no basis to believe an arrest will be made by the DOJ or that Barry Honig will be charged in an enforcement action by the SEC.

19. Thereafter, on or about September 15, 2016, MGT was served with a non-public subpoena by the SEC ("Subpoena"), which on February 9, 2017 was leaked publicly by Buhl on her website after it was provided to her by Ladd and MGT. The Subpoena was accompanied by a cover letter, which stated, in pertinent part:

> This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of federal securities laws. The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law. Also, the investigation does

not mean that we have a negative opinion of any person, entity or security.

A true copy of the cover letter and Subpoena are attached hereto as **Exhibit B**.

20. On or about September 19, 2016, MGT issued a press release disclosing its receipt of the Subpoena, stating:

> MGT Capital Investments, Inc. (NYSE MKT: MGT) announced today that on September 15, 2016, it received a subpoena from the Securities and Exchange Commission requesting certain information from the Company. MGT has no indication or reason to believe that the Company is or will be the subject of any enforcement proceedings. The Company is fully cooperating to comply with the SEC's request.

21. Subsequent to MGT's public disclosure of the Subpoena, MGT's stock price suffered a substantial decline in value.

22. Between the time of MGT's receipt of the Subpoena on September 15, 2016, and September 23, 2016, Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame Plaintiff in articles published on teribuhl.com. As part of this conspiracy, and during the aforementioned time period, Ladd, acting on his own behalf and on behalf of MGT, stated to Buhl that the Subpoena was targeted at Plaintiff, that 90% of the SEC's questions were about Plaintiff and that Plaintiff was the target of an SEC investigation into his trading and investing in MGT stock (the "Ladd Defamatory Statements"). The Ladd Defamatory Statements

were made by Ladd with the intention that they be reduced to writing and published by Buhl.

23. The Ladd Defamatory Statements were in fact written and published by Buhl on teribuhl.com. Specifically, and in furtherance of Defendants' conspiracy, on or about September 23, 2016, Buhl published a second article on teribuhl.com entitled *Investor Barry Honig Target of SEC MGT Capital Subpoena* (the "September 23, 2016 article"). A true copy of the original version of the September 23, 2016 article is attached hereto as **Exhibit C**.

24. The original version of the September 23, 2016 article contains the following false and defamatory statements:

    a. "Investor Barry Honig Target of SEC MGT Capital Subpoena"

    b. "Microcap investor Barry C. Honig is the target of an SEC investigation for his role in trading and investing in shares of MGT Capital ($MGT)."

    c. "90% of the regulator's questions are about Honig."

    d. "Honig has been calling SEC enforcement defense lawyers this week looking for representation."

    e. "Barry uses other people to run a company he is secretly controlling and pays stock pumpers to tout the company without disclosure."

    f. Plaintiff "runs things behind the scene."

    g. Plaintiff allegedly engages in "tons of questionable pump and dump deals".

    h. Plaintiff's counsel allegedly "has been able to keep the SEC at bay".

    i. Plaintiff "acted as an affiliate in trading MGT stock".

j. "Market participants sit on the side line to see if the SEC can get the goods to finally charge Barry Honig".

25. The statements in the original September 23, 2016 article are highly defamatory. They accuse Plaintiff of committing serious violations of securities law by, among other things, engaging in "pump and dump" schemes, secretly controlling publicly traded companies, paying stock promoters without proper disclosures and secretly teaming up with others to illegally trade MGT's stock as an affiliate. The original September 23, 2016 article attempts to legitimize these false accusations by making additional false statements, including that Plaintiff is under investigation by the SEC for securities violations, that the SEC may charge Plaintiff for the violations, and that Plaintiff is in the process of hiring counsel because he fears the SEC investigation.

26. In truth, the Subpoena mentions Plaintiff's name only once in the twenty categories of documents to be produced by MGT, as part of a list that included shareholders of MGT. Plaintiff is not the target of the Subpoena or an SEC investigation, or the subject of 90 percent of a regulator's questions to MGT, as falsely stated by Defendants. Plaintiff has not been looking for an SEC enforcement defense lawyer. Plaintiff is a passive investor and does not run things behind the scenes and is not involved in "pump and dump" schemes. Plaintiff has never paid a stock promoter to tout the company. He also has no affiliation with anyone in MGT's management or Board of Directors.

27. On or about September 23, 2016, a written communication was delivered to Buhl identifying the foregoing false and defamatory statements about Plaintiff and

demanding a retraction and apology. Buhl refused to comply with the retraction and apology. Instead, Buhl changed the title of the September 23, 2016 article to "*Investor Barry Honig Subject of SEC MGT Capital Subpoena*", an equally false statement misleading readers into the belief Plaintiff is the sole the focus of the Subpoena, and published an amended version of the article. A true copy of the amended September 23, 2016 article is attached hereto as **Exhibit D**.

28. The amended September 23, 2016 article repeated many of the defamatory statements about Plaintiff and added two new defamatory statements:

a. "Barry Honig is pulling out the big legal guns apparently worried about what's inside that SEC subpoena."

b. "Additionally, Honig had two days to respond to questions about the subpoena and refused to return a call and email for comment."

29. The two new statements, added to the amended September 23, 2016 article, are false. Plaintiff is not worried about what is inside the Subpoena, and engaged a well-known libel lawyer for the specific purpose of putting Buhl on notice of her false and defamatory statements about Plaintiff, and demanding a retraction and apology of same. Further, Plaintiff did not have two days to respond to Buhl's reporting. Buhl did not send any written request for comment to Plaintiff himself, but rather sent a very cryptic statement to Plaintiff's representative that provided no information at all about what Buhl intended to report, or what specifically she was asking Plaintiff to comment on. The statements identified in Paragraph 15, above, certainly were not contained or referenced in any way in Buhl's email to Plaintiff's representative for comment.

30. On September 23, 2016, Plaintiff's libel counsel sent Buhl a second written communication setting forth additional defamatory statements by Buhl against Plaintiff, namely, the two defamatory statements in the amended September 23, 2016 article, and the defamatory statement in the May 26, 2016. Plaintiff counsel requested a retraction and apology regarding same, as well as made a second request for a retraction and apology of the defamatory statements listed above in Paragraph 16 herein. Ms. Buhl did not retract any of the defamatory statements and did not apologize, and instead responded by email that she would not do so.

31. In furtherance of Defendants' conspiracy, on or about November 8, 2016, and then again on or about February 9, 2017, Buhl published a third article on teribuhl.com entitled "*California DOJ investigating Honig and The Frost Group*" (the "November 8, 2016 article") to further discredit Plaintiff by reciting unsubstantiated claims made by a disgruntled executive in a lawsuit settled in 2013. A true copy of the article is attached hereto as **Exhibit E**.

32. The November 8, 2016 article contains the following defamatory statements:

    a. "California DOJ investigating Honig and The Frost Group".

    b. "The Northern California DOJ has been sniffing around asking tough question (sic) about the investing and trading activities of a billionaire Phillip Frost, a former boxer turned penny stock investor Barry Honig, and a man Honig has done investing deals with Michael Brauser."

33. These statements are false. Plaintiff is not aware of any investigation of him by the California DOJ, or of any tough questions that have been asked by the Northern California DOJ about his investing and trading activities.

34. In furtherance of Defendants' conspiracy, on or about February 9, 2017, Buhl published a fourth article on teribuhl.com entitled "*Here it is: that MGT Capital SEC Subpoena*" (the "February 9, 2017 article"). In connection with Buhl's publication of the February 9, 2017 article, Ladd and MGT leaked a copy of the Subpoena to Buhl, which she then posted along with the article. A true copy of the article is attached hereto as **Exhibit F**.

35. The February 9, 2017 article republished several of the false and defamatory statements in the September 23, 2016 article and contains the following defamatory statement: "the regulator is looking for evidence that these people [including Barry Honig] traded as a group and therefore became beneficial owners of the stock." (Exhibits A and C through F are collectively referred to herein as the "Defamatory Articles." The defamatory statements identified in paragraphs 18, 24, 28, 32 and 35 are collectively referred to herein as the "Buhl Defamatory Statements.")

36. This statement is false and defamatory for the reasons set forth paragraphs 25 and 26 above.

37. On February 20, 2017, Plaintiff, through his counsel, delivered a written communication to Buhl specifying the Defamatory Articles and Buhl Defamatory Statements, and demanding a retraction and apology. Buhl failed to comply with the demand for a retraction and apology prior to the filing of this action.

38. The conspiracy described hereinabove was not the first conspiracy by Defendants against a shareholder of MGT. On June 11, 2014, Buhl published an article on teribuhl.com, based upon statements by Ladd and MGT, accusing Iroquois Capital of engaging in similar securities violations as those falsely attributed to Plaintiff in this case. In that instance, the article was published in an attempt by Ladd and MGT to gain the upper hand in their dispute with Iroquois Capital and its principal, Josh Silverman, and by Buhl to drive traffic and associated revenue to her website. A true and correct copy of the article, entitled "*Iroquois Capital's Josh Silverman Threatens Portfolio Stock CEO*", is attached hereto as **Exhibit G**.

## FIRST CAUSE OF ACTION
(Libel And Slander Against Ladd, MGT And Does 1-20)

39. Plaintiff hereby incorporates by this reference each allegation set forth in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Ladd, acting on his own behalf and on behalf of MGT, published the Ladd Defamatory Statements to Buhl. The Ladd Defamatory Statements were authorized and ratified by MGT, and made within the course and scope of Ladd's employment with MGT.

41. The Ladd Defamatory Statements are false and defamatory statements of and concerning Plaintiff as more fully stated above.

42. The Ladd Defamatory Statements are defamatory because they wrongly state that 90% of the SEC's questions in the Subpoena were about Plaintiff and accuse Plaintiff of being the target of the Subpoena and SEC investigation. These false

statements tend to subject Plaintiff to hatred, distrust, contempt, aversion, ridicule and disgrace in the minds of a substantial number in the community, and were calculated to harm Plaintiff's social and business relationships, and did harm his social and business relationships.

43. The Ladd Defamatory Statements constitute slander and libel because they were made with the intention that they be reduced to writing by Buhl, and they were in fact written and published by Buhl on teribuhl.com in the September 23, 2016 article.

44. The Ladd Defamatory Statements constitute libel and slander per se because they disparage and discredit Plaintiff in the way of his profession and trade as an investor.

45. The Ladd Defamatory Statements were false and no applicable privilege or authorization protecting the statements can attach to them.

46. As a direct and proximate cause of the falsity of the Ladd Defamatory Statements, Plaintiff has suffered substantial damages, including to his reputation, personal and professional relationships and prospective economic opportunities, in an amount to be determined at trial. The false statements attribute conduct, characteristics and conditions incompatible with the proper exercise of Plaintiff's business as an investor.

47. Publication of the Ladd Defamatory Statements is egregious conduct constituting moral turpitude, particularly inasmuch as Ladd and MGT knew that the Ladd Defamatory Statements were false at the time they were made. As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages

{00078520;1}                                   13

Case 1:17-cv-00184-CCE-LPA   Document 1   Filed 03/03/17   Page 13 of 19

relating to publication of the Ladd Defamatory Statements, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
(Libel Against Buhl And Does 1-20)

48. Plaintiff hereby incorporates by this reference each allegation set forth in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. The Buhl Defamatory Statements are false and defamatory statements of and concerning Plaintiff as more fully stated above.

50. The Buhl Defamatory Statements are libelous because they wrongly accuse Plaintiff of committing serious violations of securities law and seek to legitimize these false accusations by falsely stating that Plaintiff is under investigation by the SEC for securities violations, that the SEC may charge Plaintiff with a crime for the violations, and that Plaintiff is in the process of hiring counsel because he fears the SEC investigation.

51. The Buhl Defamatory Statements tend to subject Plaintiff to hatred, distrust, contempt, aversion, ridicule and disgrace in the minds of a substantial number in the community, and were calculated to harm Plaintiff's social and business relationships, and did harm his social and business relationships.

52. The Buhl Defamatory Statements also constitute libel per se because they disparage and discredit Plaintiff in the way of his profession and trade as an investor.

53. The Buhl Defamatory Statements are false and no applicable privilege or authorization protecting the statements can attach to them.

54. As a direct and proximate cause of the falsity of the Buhl Defamatory Statements, Plaintiff has suffered substantial damages, including to his reputation, personal and professional relationships and prospective economic opportunities, in an amount to be determined at trial. The false statements attribute conduct, characteristics and conditions incompatible with the proper exercise of Plaintiff's business as an investor.

55. The Defamatory Articles were widely disseminated on the Internet, in part because Buhl distributed the May 16, 2016 article and September 23, 2016 article via her Twitter account, and in part because other individuals and companies, including news organizations, come to teribuhl.com for financial news, and republish her stories for their readers to read. The Defamatory Articles were re-published by others, and Buhl was aware of this process and that republications of the Defamatory Articles would occur once she published them.

56. Buhl's actions were intended to hold Plaintiff up to ridicule and to damage his personal and professional relationships.

57. Publication of the Buhl Defamatory Statements is egregious conduct constituting moral turpitude. As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages relating to publication of the Buhl Defamatory Statements, in an amount to be determined at trial.

58. Plaintiff has complied with the notice requirements set forth in of N.C. Gen. Stat. Ann. § 99–1 prior to filing this action by informing Buhl of her defamatory statements, and requesting a retraction and apology, as least five days prior to filing this

action. Buhl has failed to comply with the demand for a retraction and apology of the Buhl Defamatory Statements.

### THIRD CAUSE OF ACTION
### (Civil Conspiracy Against All Defendants)

59. Plaintiff hereby incorporates by this reference each allegation set forth in paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame Plaintiff, interfere with his prospective economic advantages and to engage in unfair and deceptive trade practices, by causing false and disparaging statements about Plaintiff to be published in the September 23, 2016 article, November 8, 2016 article and February 9, 2016 article.

61. As a direct and proximate cause of Defendants' conspiracy, Plaintiff has suffered substantial damages, including to his reputation, personal and professional relationships and prospective economic opportunities, in an amount to be determined at trial.

62. The above-described conduct is egregious and constitutes moral turpitude. As such, in addition to compensatory damages, Plaintiff demands punitive damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (Intentional Interference With Prospective Economic Advantage
### Against All Defendants)

63. Plaintiff hereby incorporates by this reference each allegation set forth in paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. Defendants knew that Plaintiff, being an investor, had a reasonable expectation of entering into contracts related thereto, which would have been completed had it not been for Defendants' unlawful acts.

65. On information and belief, Defendants' unlawful acts have induced third parties not to enter into contracts with Plaintiff.

66. Defendants acted solely out of malice, and/or used dishonest, unfair or improper means to interfere with Plaintiff's prospective business relationships.

67. Defendants, through the misconduct alleged herein, intended to harm Plaintiff by intentionally and unjustifiably interfering with his prospective business relationships.

68. Defendants have seriously damaged Plaintiff's prospective business relationships as a direct and proximate cause of the aforementioned acts.

69. The above-described conduct is egregious and constitutes moral turpitude. As such, in addition to compensatory damages, Plaintiff demands punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
**(Unfair And Deceptive Trade Practices Against All Defendants)**

70. Plaintiff hereby incorporates by this reference each allegation set forth in paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71. Defendants' defamatory statements set forth hereinabove constitute slander and/or liable per se of a type impeaching Plaintiff's business activities as an investor.

{00078520;1}                                    17

Case 1:17-cv-00184-CCE-LPA   Document 1   Filed 03/03/17   Page 17 of 19

Thus, Defendants' have engaged in unfair and deceptive acts in or affecting commerce in violation of N.C. Gen. Stat. Ann. § 75-1.1.

72. As a direct and proximate result of Defendants' unfair and deceptive trade practices, Plaintiff has been damaged in an amount to be determined at trial.

73. Pursuant to N.C. Gen. Stat. Ann. § 75-16, plaintiff also seeks treble damages for Defendants' unfair and deceptive trade practices.

74. Pursuant to N.C. Gen. Stat. Ann. § 75-16-1, plaintiff also seeks recovery of his reasonable attorneys' fees due to Defendants' willful engagement in the aforementioned unfair and deceptive trade practices.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

(a) An award of damages in an amount to be determined at trial;

(b) An award of treble damages in an amount to be determined at trial;

(c) An award of punitive damages in an amount to be determined at trial;

(d) An award of reasonable attorneys' fees in an amount to be determined at trial;

(e) An order requiring Ladd and MGT to make a retraction of the Ladd Defamatory Statements;

(f) An order granting preliminary and permanent injunctive relief to prevent Ladd and MGT from continuing to publish or disseminate the Ladd

Defamatory Statements;

(g) An order requiring Buhl to make a public retraction of the Defamatory Articles and Buhl Defamatory Statements;

(h) An order granting preliminary and permanent injunctive relief to prevent Buhl from continuing to publish or disseminate the Defamatory Articles and the Buhl Defamatory Statements; and

(i) Such other and further relief as the Court may deem just and proper.

Dated: March 3, 2017  Respectfully submitted,

**MOORE & VAN ALLEN PLLC**

By: /s/ David E. Fox
David E. Fox, Esq.
N.C. State Bar No. 10332
Moore & Van Allen PLLC
3015 Carrington Mill Blvd., Suite 400
Morrisville, North Carolina 28202-4003
Tel: (704) 331-1000
Fax: (704) 331-1159
Email: davidfox@mvalaw.com

Charles J. Harder, Esq.
(*special appearance pursuant to L.R.83.1(d) to follow*)
Ryan J. Stonerock, Esq.
(*special appearance pursuant to L.R.83.1(d) to follow*)
**HARDER MIRELL & ABRAMS LLP**
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel: (424) 203-1600
Fax: (424) 203-1601

*Counsel for Plaintiff*