# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| **BARRY HONIG**, an individual, | |
| *Plaintiff*, | |
| v. | **Case No. 1:17-cv-00184-CCE-LPA** |
| **ROBERT LADD**, an individual; **MGT CAPITAL INVESTMENTS, INC.**, a Delaware corporation; **TERI BUHL**, an individual; and **DOES 1-20**, | |
| *Defendants*. | |

## BRIEF IN SUPPORT OF MOTION OF DEFENDANTS ROBERT LADD AND MGT CAPITAL INVESTMENTS, INC. TO DISMISS THE COMPLAINT

Jonathan C. Krisko
N.C. State Bar. No. 28625
Erik R. Zimmerman
N.C. State Bar. No. 50247

**ROBINSON, BRADSHAW & HINSON, P.A.**
1450 Raleigh Road, Suite 100
Chapel Hill, NC 27517
Telephone: (919) 328-8800
Facsimile:  (919) 328-8790
jkrisko@robinsonbradshaw.com
ezimmerman@robinsonbradshaw.com

John P. Coffey*
Darren A. LaVerne*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
scoffey@kramerlevin.com
dlaverne@kramerlevin.com
* LR 83.1(d) Special Appearance

*Attorneys for Defendants Robert Ladd & MGT Capital Investments, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

NATURE OF THE MATTER BEFORE THE COURT ..................................................... 1

STATEMENT OF FACTS .................................................................................. 4

QUESTIONS PRESENTED .............................................................................. 10

ARGUMENT ............................................................................................... 11

I.      Honig Fails to Adequately Plead Venue In This District ...................................... 11

II.     Honig Fails to State a Claim As To Any Cause of Action ..................................... 15

        A.      The Complaint Fails to Plausibly Allege That Mr. Ladd Made The
                Allegedly Defamatory Statements to Ms. Buhl ......................................... 15

        B.      The Complaint Fails to State a Claim of Defamation. ................................ 17

        C.      The Complaint Fails to State A Claim of Conspiracy ................................ 23

        D.      The Complaint Fails to State A Claim of Intentional Interference
                with Prospective Economic Advantage ................................................. 24

        E.      The Complaint Fails to State A Claim of Unfair and Deceptive Trade
                Practices ................................................................................... 27

CONCLUSION ............................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*600 West 115th St. Corp. v. Von Gutfeld*,
   603 N.E.2d 930 (N.Y. 1992) .................................................................. 20

*Aggarao v. MOL Ship Mgmt. Co., Ltd.*,
   675 F.3d 355 ....................................................................................... 13 n.7

*Akpinar v. Moran*,
   922 N.Y.S.2d 8 (N.Y. App. Div., 1st Dep't 2011) ..................................... 21

*Aronson v. Wiersma*,
   483 N.E.2d 1138 (N.Y. 1985) .................................................................. 18

*Bartko v. Wheeler*,
   2014 WL 29441 (M.D.N.C. Jan. 3, 2014), *aff'd* 589 F. App'x 181 (4th
   Cir. 2015) ................................................................................................ 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................... 15, 24

*Beverage Systems of the Carolinas, LLC v. Associated Beverage Repair,*
   *LLC*,
   784 S.E.2d 457 (N.C. 2016) ............................................................. 26 n.15

*Brown v. Ferguson Enters., Inc.*,
   2012 WL 6185310 (D. Md. Dec. 11, 2012) .............................................. 16

*Carcano v. JBSS, LLC*,
   684 S.E.2d 41 (N.C. Ct. App. 2009) ........................................................ 29

*Carvel Corp. v. Noonan*,
   818 N.E.2d 1100 (N.Y. 2004) .................................................................. 26

*Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2d Cir. 2012) .............................................................. 25

*Craven v. Cope*,
   656 S.E.2d 729 (N.C. Ct. App. 2008) ...................................................... 28

ii

*Daniels v. Metro Magazine Holding Co., L.L.C.*,
    634 S.E.2d 586 (N.C. Ct. App. 2006) ........................................................... 20

*Diagnostic Devices, Inc. v. Pharma Supply, Inc.*,
    2009 WL 3633888 (W.D.N.C. Oct. 30, 2009) ............................................... 16

*Dickinson v. Igoni*,
    908 N.Y.S.2d 85 (N.Y. App. Div., 2d Dep't 2010) ...................................... 23

*Elhassan v. Proctor & Gamble Mfg. Co.*,
    2014 WL 1281231 (M.D.N.C. Mar. 27, 2014) .............................................. 15

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
    957 F. Supp. 477 (S.D.N.Y. 1997) ................................................................ 26

*Francesca's Collections, Inc. v. Medina*,
    2011 WL 3925062 (S.D. Tex. Sept. 7, 2011) ......................................... 12 n.6

*G.K.A. Beverage Corp. v. Honickman*,
    55 F.3d 762 (2d Cir. 1995) ........................................................................... 27

*Gray v. N.C. Ins. Underwriting Ass'n*,
    529 S.E.2d 676 (N.C. 2000) .......................................................................... 28

*Guzman v. Diamond Candles, LLC*,
    2016 WL 5679451 (M.D.N.C. Sept. 30, 2016) ............................................. 28

*Hackos v. Sparks*,
    378 F. Supp. 2d 632 (M.D.N.C. 2005) ......................................................... 11

*Hall v. Virginia*,
    385 F.3d 421 (4th Cir. 2004) .................................................................. 19 n.12

*Harco Nat'l Ins. Co. v. Grant Thornton LLP*,
    698 S.E.2d 719 (N.C. Ct. App. 2010) ..................................................... 17 n.11

*Henderson v. LeBauer*,
    399 S.E.2d 142 (N.C. Ct. App. 1991) ........................................................... 23

*Jain v. Sec. Indus. & Fin. Mkts. Ass'n*,
    2009 WL 3166684 (S.D.N.Y. Sept. 28, 2009) .............................................. 25

*Johnson v. Phoenix Mut. Life Ins. Co.*,
  266 S.E.2d 610 (N.C. 1980), *overruled in part on other grounds*, *Myers
  & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d
  385 (N.C. 1988) ........................................................................................... 29

*Johnson v. Wal-Mart Stores East, L.P.*,
  2011 WL 2183155 (W.D.N.C. June 6, 2011) ........................................... 15

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ........................................................................ 17 n.11

*Kolchinsky v. Moody's Corp.*,
  2012 WL 639162 (S.D.N.Y. Feb. 28, 2012) ............................................ 22

*Liberman v. Gelstein*,
  605 N.E.2d 344 (N.Y. 1992) ..................................................... 18, 21, 22

*Lindner v. Durham Hosiery Mills, Inc.*,
  761 F.2d 162 (4th Cir. 1985) .................................................................. 29

*Malone v. Topsail Area Jaycees, Inc.*,
  439 S.E.2d 192 (N.C. Ct. App. 1994) ..................................................... 30

*Marshall v. Miller*,
  276 S.E.2d 397 (N.C. 1981) ................................................................... 29

*Martinez v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  911 F. Supp. 2d 331 (E.D.N.C. 2012) ..................................................... 28

*Massey v. Ojaniit*,
  759 F.3d 343 (4th Cir. 2014) .............................................................. 5 n.2

*Matherson v. Marchello*,
  473 N.Y.S.2d 998 (N.Y. App. Div., 2d Dep't 1984) ........................... 22, 23

*Mead v. Ganston Cnty. Police Dep't*,
  2012 WL 631850 (D.S.C. Feb. 27, 2012) ........................................... 12, 13

*Miller v. Asensio*,
  101 F. Supp. 2d 395 (D.S.C. 2000) ..................................................... 12 n.6

*Moore v. Cox*,
  341 F. Supp. 2d 570 (M.D.N.C. 2004) ............................................... 18 n.11

*Mua v. Maryland*,
2017 WL 633392 (D. Md. Feb. 15, 2017) .................................................. 5

*Nichols v. G.D. Searle & Co.*,
991 F.2d 1195 (4th Cir. 1993) ....................................................... 11, 14

*O'Brien v. Alexander*,
898 F. Supp. 162 (S.D.N.Y. 1995)................................................... 25

*Olberding v. Ill. Cent. R.R.*,
346 U.S. 338 (1953)......................................................................... 12

*In re PEC Solutions, Inc. Sec. Litig.*,
418 F.3d 379 (4th Cir. 2005) ..................................................... 13 n.7

*Plotzker v. Lamberth*,
2008 WL 4706255 (W.D. Va. Oct. 22, 2008)................................. 14

*Riepe v. Sarstedt, Inc.*,
2010 WL 3326691 (W.D.N.C. Aug. 23, 2010)............................... 17

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
925 N.Y.S.2d 407 (N.Y. App. Div., 1st Dep't 2011) .................. 18, 19

*Smith v. Aylor*,
2009 WL 959801 (E.D. Va. Nov. 7, 2008).................................... 14

*Stepanov v. Dow Jones & Co., Inc.*,
987 N.Y.S.2d 37 (N.Y. App. Div., 1st Dep't 2014) ....................... 17

*Stephenson v. Warren*,
525 S.E.2d 809 (N.C. Ct. App. 2000) ........................................... 30

*Taylor v. Bettis*,
976 F. Supp. 2d 721 (E.D.N.C. 2013)........................................... 24

*Thai v. Cayre Group, Ltd.*,
726 F. Supp. 2d 323 (S.D.N.Y. 2010)...................................... 22, 23

*United Dominion Indus., Inc. v. Overhead Door Corp.*,
762 F. Supp. 126 (W.D.N.C. 1991) .............................................. 28

*United Roasters Inc. v. Colgate-Palmolive Co.*,
485 F. Supp. 1041 (E.D.N.C. 1979).............................................. 29

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
    455 F. App'x 102 (2d Cir. 2012) ................................................................. 26

*Verona v. U.S. Bancorp*,
    2011 WL 1252935 (E.D.N.C. Mar. 29, 2011) ..................................... 17 n.11

**Statutes**

28 U.S.C. § 1391(b) ............................................................................. 11 & n.5, 13

28 U.S.C. § 1406(a) ......................................................................... 2, 10, 11, 14 n.8

N.C. Gen. Stat. § 75-1.1 ................................................................................. 28, 29

**Other Authorities**

Fed. R. Civ. P. 12(b)(3) ........................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................... *passim*

Fed. R. Civ. P. 41(a)(1)(A)(i) ............................................................................. 7

## NATURE OF THE MATTER BEFORE THE COURT

Defendants Robert Ladd and MGT Capital Investments, Inc. ("MGT") respectfully submit this motion to dismiss the Complaint for improper venue and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), respectively. MGT is a public company that, among other thing, invests in and develops cybersecurity technology. During the relevant time period, Mr. Ladd was the president, chief executive officer and a director of MGT.

The Complaint should be dismissed because venue does not lie in the Middle District of North Carolina. In September 2016, Honig filed a defamation suit based on essentially the same facts as the Complaint in this case, in the Southern District of New York (the "New York Complaint"). There, as here, Honig claimed that the third defendant in this case, Teri Buhl, an investigative journalist who is alleged to reside in New York, along with certain "Doe" defendants, had defamed him in a series of articles that Buhl published on her website about ongoing government investigations, including an investigation by the Securities and Exchange Commission ("SEC") and a related subpoena served on MGT (the "Subpoena"). With regard to venue, the New York Complaint alleged that "a substantial part of the events or omissions giving rise to this complaint occurred" in the Southern District of New York. Honig indicated that he intended to amend the New York Complaint once he learned of the identity of the "Doe" defendants. Rather than do so, on February 7, 2017, Honig withdrew the suit in New York, three days before Ms. Buhl was to file her motion to dismiss. He did so shortly

after the court, during a conference to discuss the case, stayed discovery and expressed skepticism about the merits of Honig's claims, noting, among other things, that there was "a question mark in [its] mind as to whether a number of the statements at issue will survive a motion to dismiss."

Honig filed this action approximately three weeks later, again naming Ms. Buhl, and adding Mr. Ladd and MGT as defendants.[1] The substance of the allegations remains much the same; and the same allegedly defamatory statements remain the focus of Honig's claims. Honig has now identified two of the New York Complaint's "Doe" defendants as MGT and Mr. Ladd, both of whom are resident in this District. Nonetheless, given that the third defendant, Ms. Buhl, is not alleged to reside here, venue is not proper in this District. More is required under the venue statute. Specifically, Honig must show that "a substantial part of the events or omissions giving rise to the" claims at issue occurred here. However, the Complaint does not allege that any specific or identifiable acts occurred in this District. The Court should thus exercise its power pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a), reject Honig's transparent effort at forum shopping, and dismiss this case.

Were the Court to reach the merits of Honig's claims, it should dismiss the Complaint with prejudice because Honig fails to state a claim as to any of his causes of

---

[1] As noted below, the following month, Honig, together with a group of other investors, filed another action in the Southern District of New York, naming Mr. Ladd, MGT and others as defendants. The complaint in that case, which remains pending, alleges breach of contract and related claims and seeks damages in connection with the acquisition by MGT of two other companies in which Honig had invested, D-Vasive, Inc. and Demonsaw LLC.

action.  With regard to the First Cause of Action, alleging libel and slander against Mr. Ladd and MGT, the Complaint fails to allege basic facts necessary to sustain a cause of action for defamation, leaving out crucial details regarding Mr. Ladd's allegedly defamatory statements to Ms. Buhl, including when and where they were made and their precise content.  In fact, other than simply asserting that Mr. Ladd made the statements that Ms. Buhl later published on her website, the Complaint alleges no facts supporting a plausible inference that Mr. Ladd did so.

Further, under the law of defamation, the statements published by Ms. Buhl and attributed by the Complaint to Mr. Ladd are mere opinion and hyperbole, and thus not actionable.  In particular, the statements that Honig was the "target" of an SEC investigation and that "90% of the SEC's questions [in its subpoena] are about" Honig are merely opinions based on an interpretation of the Subpoena, which indisputably includes references to Honig and entities with whom he conducted business.

The Complaint also fails to plead special damages.  Defamation claims must plead special damages with particularity unless the statements at issue on their face impeach a plaintiff in his or her profession or trade, or fit into the other narrow exceptions to the rule.  Read independently of Ms. Buhl's article, the statements attributed to Mr. Ladd, which merely characterize the focus of the SEC's subpoena and investigation, do not impugn Honig in his profession or fall within any of the other exceptions.  Accordingly, the Complaint's conclusory damages allegations are insufficient to state a claim.

3

Finally, the remaining causes of action alleged against Mr. Ladd and MGT should be dismissed. The Third Cause of Action (alleging conspiracy against all defendants) should be dismissed because Honig has not pleaded facts supporting a plausible inference that Mr. Ladd conspired with Ms. Buhl to defame or otherwise harm Honig. The Fourth Cause of Action (alleging intentional interference with prospective economic advantage against all defendants) should be dismissed because the Complaint fails to identify any business relationship with which the defendants interfered. The Fifth Cause of Action (alleging a violation of N.C. Gen Stat. § 75-1.1, the North Carolina Unfair and Deceptive Trade Practices Act against all defendants) should be dismissed because North Carolina law does not apply to the claim and, even if it did, Honig has not adequately alleged that the conduct at issue concerns the type of business activity covered by the statute. In addition, the Fourth and Fifth Causes of Action are duplicative and derivative of the defamation claims, and subject to dismissal for that reason as well.

Accordingly, MGT and Mr. Ladd respectfully submit that the Court should dismiss the Complaint with prejudice in its entirety.

## STATEMENT OF FACTS

### Honig Commences His Action in New York

On September 26, 2016, Plaintiff Barry Honig filed suit in the District Court for the Southern District of New York against Defendant Buhl and "Does 1-20," alleging that

Buhl defamed him in a series of articles regarding the "microcap" investment industry.[2] Dkt. No. 1, Complaint in *Honig v. Buhl*, Case 1:16-cv-07477-PGG (S.D.N.Y. Sept. 26, 2016), attached to the Declaration of Darren A. LaVerne dated June 5, 2017 ("Decl.") as Exhibit A, at ¶¶ 8-15. In the New York Complaint, Honig stated that while at that time he was "unaware of the identities of the defendants sued herein as DOES 1-20," he would "amend this Complaint to identify them once Plaintiff learns of their true identities." *Id.* at ¶ 3.

Honig claimed that "Buhl's articles falsely accuse Plaintiff of serious violations of laws and falsely state that he is under investigation by the government." *Id.* at 1. Honig alleged that the defamatory statements appeared in three articles published on a website operated by Buhl: one statement in a May 26, 2016 article (*id.* at ¶ 9); eleven statements in a September 23, 2016 article (*id.* at ¶11a. – ¶11k.); and two statements added to an "amended" version of the September 23, 2016 article (*id.* at ¶14a. – ¶14b.). With regard to the September 23, 2016 article, the New York Complaint alleged, among other things, that Ms. Buhl falsely stated that Honig was "the target" of a subpoena issued by the SEC to MGT, and that "90% of the regulator's questions are about Honig." (*Id.* at ¶11a, c). Notably, in connection with venue, Honig alleged that "a substantial part of the events or

---

[2]  In considering this motion to dismiss, the Court may take judicial notice of, among other things, pleadings, papers, docket entries and transcripts filed in other cases. *See, e.g.*, *Massey v. Ojaniit*, 759 F.3d 343, 352-53 (4th Cir. 2014) ("we approve of the district court's consideration of the 1999 trial transcript" from different case); *Mua v. Maryland*, 2017 WL 633392, at *7 (D. Md. Feb. 15, 2017) ("Moreover, in the context of a motion to dismiss, a court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment.") (quotation marks and brackets omitted).

omissions giving rise to this complaint occurred" in the Southern District of New York. (*Id.* at ¶ 7.)

On January 20, 2017, pursuant to the District Court's individual rules, Ms. Buhl submitted a letter to the court setting forth her legal arguments for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 23, *Honig v. Buhl* (S.D.N.Y). Honig responded on January 24. Dkt. No. 25, *Honig v. Buhl* (S.D.N.Y.). The court then held a conference on February 1.

At the pre-motion conference, the District Court made clear that it was skeptical of Honig's defamation claims. *See* Decl., Ex. B (transcript of Feb. 1, 2017 proceedings in *Honig v. Buhl* (S.D.N.Y.)). Noting Ms. Buhl's intention to move to dismiss, the Court stated that "it's not entirely clear to me how some of these statements are actionable." *Id.* at 3:18-22. As to Honig's theory for how one particular statement was defamatory, the Court stated: "Well, that frankly sounds like speculation now." *Id.* at 5:4-5. As to another statement, the Court stated it did not "understand the defamatory import." *Id.* at 6:7-8. And as to a third statement, the Court rhetorically asked why it was not "opinion" or "speculation." *Id.* at 8:22-24, 9:2-5. At the hearing's conclusion, the Court stayed discovery in the case because it had "a question mark in [its] mind as to whether a number of the statements at issue will survive a motion to dismiss." *Id.* at 15:9-11; *see also id.* at 17:7-10 ("And again, because I'm uncertain whether a number of these alleged defamatory statements are going to survive, I'm reluctant to have the parties spend a lot of time on discovery on it.")

6

Defendant's motion to dismiss was due on February 10, 2017. Dkt. 29, *Honig v. Buhl* (S.D.N.Y.). On February 8, 2017, Honig entered a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i). Dkt. 30, *Honig v. Buhl* (S.D.N.Y.).

Honig Re-Files His Action in This District

Three weeks later, Honig filed his Complaint in this Court. As in the New York action, the essence of the Complaint is that Honig seeks recourse for "a series of false and highly defamatory articles about [Honig]" published on Ms. Buhl's website which "contain assertions that [Honig], among other things, is violating securities laws" and is "the 'target' of a" government investigation. *See* Compl. ¶¶ 1-2. With a single exception, the Complaint again makes claims about all of the allegedly defamatory statements identified in the New York Complaint. *Id.* ¶ 18; ¶ 24a. - ¶ 24j; ¶ 28a. - ¶ 28b.[3] The Complaint also now adds allegations against Ms. Buhl related to articles she published on November 8, 2016 and February 9, 2017. Compl. ¶¶ 31-36.

According to Honig, Defendants Ladd and MGT "concocted the scheme to defame [Honig] in order to divert attention away from MGT as the target of the very SEC scrutiny that the articles falsely allege is directed at Plaintiff." Compl. ¶ 3. This is essentially the same claim made in the New York action. *Compare* Decl., Ex. A at 1 (Buhl's sources are "seeking to deflect attention away from themselves because they are the targets of the very governmental scrutiny in which Buhl falsely alleges against Mr.

_____

[3] The only statement that Honig dropped from his allegations was one that Honig "teamed up with his favorite investing partner Michael Brauser." *See* Decl., Ex. A at ¶ 11i.

Honig."). Honig again alleges that Ms. Buhl is driven by a vendetta against Honig, leading her to develop "fanciful" means of "demonizing" Honig. *Compare* Compl. ¶ 5 (". . . further extended Buhl's fanciful narrative demonizing Plaintiff . . .") *with* Decl., Ex. A at 1 ("Buhl has solely created and perpetuates a fanciful story demonizing Mr. Honig . . . .")

The primary difference between the two complaints is that two of the New York "Doe" defendants – who, according to Honig, would be identified in an amended complaint in the New York action (*see* Decl., Ex. A at ¶ 3 ) – have been identified as Mr. Ladd and MGT. In addition, the Complaint here alleges that Ms. Buhl, Mr. Ladd and MGT undertook a defamatory "scheme" as a form of "market manipulation" meant to "boost the share price of MGT," which has allegedly declined after MGT had disclosed a September 14, 2016 SEC subpoena "and other negative events," which are not identified by the Complaint.

With regard to Mr. Ladd, Honig alleges that "Ladd, acting on his own behalf and on behalf of MGT," made the following three defamatory statements to Ms. Buhl "with the intention that they be reduced to writing and published by Buhl":

1. "that the Subpoena was targeted at plaintiff;"

2. "that 90% of the SEC's questions were about [Honig];" and

3. "that [Honig] was the target of an SEC investigation into his trading and investing in MGT stock."

8

Compl. ¶22.  According to the Complaint, these statements were then reflected in Buhl's September 23 article – the same article identified in the New York Complaint.  ¶ 23.  *See* Decl., Ex. A at ¶ 10.

The Subpoena itself, which is attached to the Complaint as Exhibit B, is addressed to MGT and requests twenty categories of documents.  Among other things, the Subpoena requests documents relating to certain persons and entities, including Honig; D-Vasive Inc. ("D-Vasive"); John Stetson; John R. O'Rourke III; Mark Groussman; Joshua Silverman; Demonsaw LLC ("Demonsaw"); GRQ Consultants, Inc.; ATG Capital, LLC; Melechdavid, Inc.; Stetson Capital Investments, Inc.; and Iroquois Capital Management LLC.  All of these persons and entities are identified in a separate complaint filed by Honig and other investors against MGT, Ladd and MGT's directors on April 4, 2017 – in the Southern District of New York, notably – alleging breach of contract and related claims in connection with an investment Honig and others identified in the Subpoena made in D-Vasive and Demonsaw.[4]  *See* Decl., Ex. C (Complaint in *ATG Capital LLC, et al. v. MGT Capital Investments, Inc., et al.*, 1:17-cv-2440 (S.D.N.Y.)) Other requests in the Subpoena seek documents related to filings and events in May 2016, including "MGT's acquisition of certain technology and assets of D-Vasive."  *See* Compl., Ex. B at Request 10.

---

[4]  The breach-of-contract complaint alleges that, in May 2016, Plaintiffs Barry Honig, Jonathan Honig, ATG Capital, LLC, Melechdavid Inc., GRQ Consultants, Inc., Iroquois Capital Management, and others purchased convertible notes from D-Vasive and Demonsaw, with the expectation that MGT would thereafter acquire those entities, and that their notes would be exchanged for MGT stock.  *See* Decl., Ex. C at ¶¶ 16-51.

9

Honig does not specify where or precisely when the "Ladd Defamatory Statements" were made to Ms. Buhl, or the basis for inferring that Ladd in fact made the statements or conspired with her. The Complaint's description of the statements themselves is drawn solely from the statements that appeared on Ms. Buhl's website, without attribution to Mr. Ladd by Ms. Buhl. The Complaint also claims that MGT "ratified" these statements, but provides no details of when or how this was done. Compl. ¶ 40. The Complaint alleges that Defendants Ladd and MGT subsequently provided the SEC subpoena at issue to Ms. Buhl, which she posted to her website on February 9, 2017, less than five months after the September 23 article that included the allegedly defamatory statements about the Subpoena. Compl. ¶¶ 19, 34.

With regard to venue, the Complaint alleges that "a substantial part of the events or omissions giving rise to this complaint occurred" in the Middle District of North Carolina, but does not identify a single event or omission occurring in this District. Compl. ¶ 16. The Complaint describes Ms. Buhl, who allegedly published the statements at issue, as "a citizen and domiciliary of New York, New York." *Id.* ¶ 10.

Based on these facts, the Complaint alleges the following causes of action against Mr. Ladd and MGT: libel and slander; civil conspiracy; intentional interference with prospective economic advantage; and unfair and deceptive trade practices.

## QUESTIONS PRESENTED

I.      Whether the Complaint should be dismissed for improper venue, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

II.     Whether the Complaint should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

## I.     HONIG FAILS TO ADEQUATELY PLEAD VENUE IN THIS DISTRICT

The Complaint should be dismissed because Honig fails to carry his burden of pleading that venue is proper in the Middle District of North Carolina.

Federal Rule of Civil Procedure 12(b)(3) provides that, on defendant's motion, a complaint may be dismissed for "improper venue." As relevant here, to plead that venue is proper, Honig must sufficiently allege that "a substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(b)(2).[5] Honig bears the burden of establishing venue. *See, e.g.*, *Hackos v. Sparks*, 378 F. Supp. 2d 632, 633 (M.D.N.C. 2005). When a plaintiff files suit in an improper venue, the District Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Dismissal for lack of venue is particularly appropriate where "plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1202 (4th Cir. 1993).

---

[5]  In pleading venue, the Complaint invokes only the language of §1391(b)(2). *See* Compl. ¶ 16 (venue proper because "Ladd and MGT reside here and a substantial part of the events or omissions giving rise to this complaint occurred here."). Subsection (b)(1) cannot apply because Ms. Buhl is not a resident of North Carolina. *See* Compl. ¶ 10. Subsection (b)(3) cannot apply because Honig has not shown that venue is not proper elsewhere, and, as further discussed below, venue is in fact proper in the Southern District of New York, a fact Honig affirmatively embraced when he originally brought suit there.

11

As the United States Supreme Court has cautioned, the venue requirement should be strictly construed. *Olberding v. Ill. Cent. R.R.*, 346 U.S. 338, 340 (1953) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."). Mere conclusory allegations as to the propriety of venue will not suffice. *Bartko v. Wheeler*, 2014 WL 29441, at *8 (M.D.N.C. Jan. 3, 2014), *aff'd* 589 F. App'x 181 (4th Cir. 2015). Instead, plaintiffs must allege facts establishing a "substantial" connection between the claim and the venue. *Id.* Pleading such a "substantial" connection should be held to a high standard: "Federal appellate courts have cautioned district courts to take seriously the adjective 'substantial.'" *Id.* at *9 (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356-57 (2d Cir. 2005)) (internal brackets omitted). That "some action" relevant to the claims took place in a district does not establish venue where "the overwhelming majority of actions" occurred elsewhere. *Mead v. Ganston Cnty. Police Dep't*, 2012 WL 631850, at *2 (D.S.C. Feb. 27, 2012).[6]

Honig has not met his burden in pleading venue here. The Complaint does not identify a single event or omission giving rise to his claims that took place in this District, much less a "substantial" portion of such events or omissions. Instead, Honig relies on a

---

[6] Honig has failed to allege even that the September 23, 2016 article was accessed and read in this District. But if the Complaint did contain such an allegation, it would not suffice to establish venue here. *See, e.g., Francesca's Collections, Inc. v. Medina,* 2011 WL 3925062, at *3 (S.D. Tex. Sept. 7, 2011) (venue for Lanham Act case not proper based on accessibility of website; expressing concern that "the reach of the internet alone would make venue proper in any district in the United States, or indeed, anywhere in the world . . . ." ); *Miller v. Asensio*, 101 F. Supp. 2d 395, 404-07 (D.S.C. 2000) (venue not proper for Exchange Act suit simply because website accessible in district).

12

conclusory assertion that merely tracks the language of the statute. Compl. ¶ 16 ("Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b), in that Ladd and MGT reside here and a substantial part of the events or omissions giving rise to this complaint occurred here.")

Indeed, contrary to this assertion, the natural inference from the facts alleged in the Complaint is that the majority of events giving rise to Honig's claims occurred in the Southern District of New York, where Honig originally filed suit. *See Mead*, 2012 WL 631850 at *2. Defendant Buhl, who published the allegedly defamatory statements on her website, is a resident and domiciliary of New York (Compl. ¶ 10), and Honig makes no allegations that Ms. Buhl took any action outside of New York.

Moreover, publicly available SEC filings indicate that in September 2016, when the Ladd Defamatory Statements were allegedly made, MGT's principal corporate office was in Harrison, New York, which is located within the Southern District of New York. [7] *See* Decl., Ex. D, at cover page (MGT Form 8-K filed Oct. 5, 2016). Indeed, Honig is aware of this fact, as he himself, in a filing that he certified as true and correct on September 29, 2016, acknowledged that MGT's principal executive office was located in Harrison. *See* Decl., Ex. E, at Item 1(b) (MGT Form SC 13G/A filed Sept. 29, 2016). While MGT entered into a lease agreement in August 2016 for corporate space in

_____

[7] The Court may take judicial notice of SEC filings at the motion to dismiss stage. *See In re PEC Solutions, Inc. Sec. Litig.,* 418 F.3d 379, 390 n. 10 (4th Cir. 2005). Moreover, "[o]n a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365-66 (4th Cir. 2012).

Durham, North Carolina and subsequently transferred its headquarters there, *see* Decl., Ex. F (excerpt from MGT Form 10-Q filed Nov. 14, 2016), it has continued to maintain its office in Harrison, as is reflected in MGT's most recently filed Form 10-K, *see* Decl., Ex. G (excerpt from MGT Form 10-K for fiscal year ended Dec. 31, 2016) ("We currently employ or have consulting arrangements with 8 personnel and occupy approximately 3,000 square feet of office space in Harrison, New York and Durham, North Carolina.").

In light of the above, Honig has not adequately pleaded venue in this District. Given the complete absence of reference in the Complaint to conduct in this District, and in light of the circumstances under which Honig withdrew the New York Complaint and filed this action, it is clear that Honig is forum shopping and further, that counsel should have foreseen that there is no venue in this District. The case should therefore be dismissed. *See Nichols*, 991 F.2d at 1201 (dismissing suit where "plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper."); *Plotzker v. Lamberth*, 2008 WL 4706255, at *10 (W.D. Va. Oct. 22, 2008) (citing *Nichols* and dismissing for improper venue); *Smith v. Aylor*, 2009 WL 959801, at * 2 (E.D. Va. Nov. 7, 2008) (same).[8]

---

[8] Under 28 U.S.C. § 1406(a), if the Court is not inclined to dismiss, it may transfer this case, "in the interests of justice," to another District in which it could have been brought. While Defendants do not believe that the interests of justice would be served by such transfer here in light of Honig's forum shopping, should the Court decide otherwise, Defendants respectfully submit that the matter should be transferred to the Southern District of New York, where Defendant Buhl is alleged to reside, Defendant MGT

## II. HONIG FAILS TO STATE A CLAIM AS TO ANY CAUSE OF ACTION.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'" such that it "nudge[s] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts should therefore dismiss implausible claims at the motion-to-dismiss stage, rather than wait to "weed[] out" meritless allegations in a subsequent phase of the litigation. *Twombly*, 550 U.S. at 560. This pleading standard requires that the allegations "'permit the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Elhassan v. Proctor & Gamble Mfg. Co.*, 2014 WL 1281231, at *4 (M.D.N.C. Mar. 27, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### A. The Complaint Fails to Plausibly Allege That Mr. Ladd Made The Allegedly Defamatory Statements to Ms. Buhl

The Complaint fails to allege facts establishing "more than the mere possibility" that Mr. Ladd was Ms. Buhl's source for her September 23, 2016 article, as required by *Twombly*. In defamation cases, the complaint must "provide the who, what, when and where to state a plausible claim for defamation." *Johnson v. Wal-Mart Stores East, L.P.*, 2011 WL 2183155, at *5 (W.D.N.C. June 6, 2011). The Complaint here, however, fails to allege the date on which the Ladd Defamatory Statements were made, the location of the alleged communication between Mr. Ladd and Ms. Buhl, whether that

---

maintains an office, and Honig initially filed his case. As noted, Honig is presently litigating another suit against MGT and Ladd in the Southern District of New York.

15

communication took place in person, by phone, or through some other medium, or the precise substance of what Mr. Ladd allegedly said.[9]  Indeed, the Complaint does not plead facts supporting a plausible inference that Mr. Ladd made the statements at all. The Complaint instead urges this inference based solely on the fact that the Subpoena was served on MGT and that Mr. Ladd was the company's CEO.  But the Complaint does not allege that Mr. Ladd was the only person, inside or outside MGT, who reviewed or was aware of the Subpoena prior to its publication in Ms. Buhl's article,[10] and, based on what is alleged in the Complaint, it is equally possible that the alleged statements were made by someone other than Mr. Ladd.  The Complaint's allegations regarding Mr. Ladd, lacking specificity as to the time, place or content of the supposed statements made by Mr. Ladd, do not nudge plaintiff's "claims across the line from conceivable to plausible." Accordingly, they cannot support Honig's claims.  *See, e.g.*, *Brown v. Ferguson Enters., Inc.*, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012) (granting motion to dismiss where plaintiff's "accusations of defamation contain no specific description of the content of the alleged statements, nor when and how they were communicated."); *Diagnostic Devices, Inc. v. Pharma Supply, Inc.*, 2009 WL 3633888, at *13 (W.D.N.C. Oct. 30, 2009) (dismissing defamation claim as to one defendant where "the Complaint does not allege

---

[9]  The content of the statements attributed to Mr. Ladd in the Complaint are parroted from Ms. Buhl's article (which does not attribute the statements to Mr. Ladd).

[10]  The Complaint in fact alleges that MGT's receipt of the Subpoena was publicly announced by MGT four days prior to publication of Ms. Buhl's article.  Compl. ¶ 20.

that [defendant] made any specific statements to any specific person at any stated time or place.").

Similarly, with regard to Defendant MGT, the Complaint fails to identify facts supporting a plausible inference that the Ladd Defamatory Statements were "authorized and ratified by MGT, and made within the course and scope of Ladd's employment with MGT," as is asserted in the Complaint. Compl. ¶ 40. The Complaint is devoid of any allegation regarding the circumstances under which the alleged statements were made, and does not allege facts indicating that the speaker was acting within the scope of his employment in making them. Nor, aside from the conclusory allegation that it did so, does the Complaint allege how, when or why MGT "ratified" the statements. Accordingly, for this additional reason as to MGT, Honig's claims should be dismissed. *See Riepe v. Sarstedt, Inc.*, 2010 WL 3326691, at *4 (W.D.N.C. Aug. 23, 2010) (dismissing claims against company where "the facts alleged are insufficient to state a claim of ratification that is 'plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570).

## B. The Complaint Fails to State a Claim of Defamation.

The elements of defamation are (1) a false statement; (2) that is published to a third party; (3) without privilege or authorization; and (4) causes harm, unless the statement is *per se* defamatory.[11] *Stepanov v. Dow Jones & Co., Inc.*, 987 N.Y.S.2d 37,

---

[11]  In diversity cases, federal district courts apply the choice-of-law rules of the state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Courts in North Carolina have applied the rule of *lex loci delicti* ("place of the harm"), under which the court applies the substantive law of the state "where the last act occurred giving rise to the injury." *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719,

41-42 (N.Y. App. Div., 1st Dep't 2014). The only statements that may be considered *per se* defamatory are those (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman. *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992). Whether a statement is defamatory is "a legal question to be resolved by the court in the first instance." *Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (N.Y. 1985).

**1. The alleged Ladd Defamatory Statements are mere opinion and hyperbole and therefore not defamatory.**

Under New York law, statements of opinion and statements of hyperbole or exaggeration are not actionable. *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 412, 414 (N.Y. App. Div., 1st Dep't 2011)

---

722-23, 724 (N.C. Ct. App. 2010) (brackets omitted). Under this analysis the applicable law for defamation cases is the state of publication – *i.e.*, the state in which the allegedly defamatory statements "were allegedly made." *See Verona v. U.S. Bancorp*, 2011 WL 1252935, at *10 & n.6 (E.D.N.C. Mar. 29, 2011) (where "the statements forming the basis of the claims were allegedly made" in Minnesota, that state's substantive laws applied for assessing defamation claims). As noted, the Complaint does not allege where Mr. Ladd was when he purportedly made the Ladd Defamatory Statements. However, Ms. Buhl, to whom he is alleged to have made the statements, and who is alleged to have subsequently published the statements, lives in New York. That is also where Honig initially brought suit, alleging that substantial events giving rise to the claims occurred there. Notably, furthermore, New York is home to the New York Stock Exchange (including NYSE MKT, where MGT's stock was listed until October 2017), NASDAQ and other important financial investing institutions; it is in all likelihood the location of any purported harm suffered by Honig, who describes himself as a professional investor. Compl. ¶ 44. Accordingly, it appears that the law of New York applies to Honig's claims. In any event, the elements of defamation under North Carolina law are essentially identical to those under New York law, and would not yield a different result in this case. *See Moore v. Cox*, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004).

New York courts use a four factor test to determine whether a statement is opinion or fact: (1) whether the statement at issue has a precise meaning so as to give rise to clear factual implications; (2) the degree to which the statements are verifiable, *i.e.*, objectively capable of proof or disproof; (3) whether the full context of the communication in which the statement appears signals to the reader its nature as opinion; and (4) whether the broader context of the communication so signals the reader. *Id.* at 412.

Application of these factors demonstrates that the alleged statements that Honig was the "target" of the Subpoena and SEC investigation are mere opinion. In the context of an SEC investigation, the term "target" is not a precise term, and does not have a fixed meaning.[12] It is thus not capable of being proven true or false. Moreover, the context of the communication alleged in the Complaint makes clear that the speaker of the Ladd Defamatory Statements was opining, based upon a review of the Subpoena received by MGT and not exogenous facts, whose conduct he or she believed the SEC was interested in investigating. Compl. ¶ 22. The Subpoena itself, as discussed above, explicitly requests communications with Honig and numerous individuals and entities associated with him in connection with Honig's investment in D-Vasive and Demonsaw. Accordingly, in this context, the only plausible interpretation of the Ladd Defamatory

---

[12] The SEC Enforcement Manual, which is publicly available on the SEC's website, states that the SEC does not publicly identify the targets of its investigations, as is required by the Department of Justice under certain circumstances. Decl., Ex. H at § 3.3.2. *Available at* https://www.sec.gov/divisions/enforce/enforcementmanual.pdf (last accessed June 5, 2017). The Court may consider agency documents of public record at the motion-to-dismiss stage. *See, e.g.*, *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

Statements is that they are merely the speaker's opinion as to whose conduct the Subpoena was targeting and the SEC was investigating, and are therefore not actionable as defamation.

In addition, while the Statement that "90%" of the SEC's "questions" were about Honig is an opinion for the same reasons discussed above, it is also inactionable as defamation because it is mere hyperbole. *See 600 West 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 937-38 (N.Y. 1992) (statement that an agreement "is as fraudulent as you can get and it smells of bribery and corruption" was hyperbole and not actionable as defamation); *see also Daniels v. Metro Magazine Holding Co., L.L.C.*, 634 S.E.2d 586, 591 (N.C. Ct. App. 2006) (dismissing defamation claims based on alleged statements that claims adjuster's "actions were equivalent to the former Soviet security police" and that adjuster tried to "tak[e] me to the gas chamber" on the basis that they are hyperbole). The Subpoena requests communications and documents regarding a proposed transaction in which Honig has admitted his involvement in his breach-of-contract suit filed in New York, as well as communications between MGT and Honig and at least six individuals and entities identified by the lawsuit as co-investors with Honig. Thus, Mr. Ladd's alleged statement that the document requests relating to Honig and his business associates were "90%" about Honig is not defamation, but, at most, an exaggeration or hyperbole.

### 2. The Alleged Ladd Defamatory Statements Are Not Per Se Defamatory and the Complaint Fails to Plead Damages.

The Complaint alleges that the Ladd Defamatory Statements are *per se* defamatory because they "disparage and discredit [Honig] in the way of his profession and trade as

an investor." Compl. ¶ 44. For a statement to be *per se* defamatory on this basis, it must be "incompatible with the proper conduct of the business, trade [or] profession" itself; it is not enough that the statement is "a more general reflection upon the plaintiff's character or qualities." *Liberman*, 605 N.E2d at 348 (dismissing defamation claims by landlord premised on impeachment of his trade, business or profession by defendant who accused him of bribery and threatened murder, noting that "[t]he statements at issue are unrelated to plaintiff's status as a landlord.").

The Ladd Defamatory Statements are not *per se* defamatory, and do not impeach Honig in his profession. First, the alleged statement that "90%" of the SEC's "questions" were about Honig is not on its face defamatory at all. Merely expressing the belief that a regulator is seeking information about an individual during the course of an investigation is not *per se* defamatory, as it does not necessarily follow that the individual has in fact done anything improper, with regard to his profession or otherwise.[13] *See Akpinar v. Moran*, 922 N.Y.S.2d 8, 10 (N.Y. App. Div., 1st Dep't 2011) (dismissing defamation action based on defendant's comment that he "want[ed] to get to the bottom of many questions myself" regarding criminal investigation into mortgage fraud involving plaintiff).

---

[13] As Honig notes in the Complaint, the Subpoena itself states that "[t]his investigation is a non-public, fact-finding inquiry. . . . The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security." Compl. ¶ 19.

Similarly, the alleged statements that Honig was the target of the Subpoena and SEC investigation likewise are not *per se* defamatory because they do not allege actual misconduct, and do not impeach Honig's abilities as an investor. Mere comments about a plaintiff's involvement in an investigation, without any expressed belief about the merits of the investigation, the subject of the investigation, or whether plaintiff actually committed misconduct, are not *per se* defamatory. *See Kolchinsky v. Moody's Corp.*, 2012 WL 639162, at \*5 (S.D.N.Y. Feb. 28, 2012) (dismissing defamation claims based on allegation that plaintiff did not cooperate with internal investigation, noting that such a statement is not *per se* defamatory because it "do[es] not suggest that [plaintiff] was 'unfit[] for his professional role.'") (quoting *Chiavarelli v. Williams*, 681 N.Y.S.2d 276, 277 (N.Y. App. Div., 1st Dep't 1998)).

Because none of the alleged Ladd Defamatory Statements are *per se* defamatory and the Complaint nonetheless fails to plead special damages, the First Cause of Action should be dismissed. For a statement that is not *per se* defamatory to be actionable, plaintiff must plead "the loss of something having economic or pecuniary value." *Liberman*, 605 N.E.2d at 347. Such losses must be "fully and accurately identified with sufficient particularity to identify actual losses." *Matherson v. Marchello*, 473 N.Y.S.2d 998, 1000-01 (N.Y. App. Div., 2d Dep't 1984) (quotation omitted). This "particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010). Honig's conclusory allegation that he

has suffered damage "to his reputation, personal and professional relationships and prospective economic opportunities" (Compl. ¶¶ 46) does not adequately allege special damages. *See Thai*, 726 F. Supp. 2d at 330 ; *Matherson*, 473 N.Y.S.2d at 1001. Therefore, Honig's First Cause of Action should be dismissed with prejudice.

**C.     The Complaint Fails to State A Claim of Conspiracy.**

With regard to the Third Cause of Action, the Complaint alleges that "Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame [Honig], interfere with his prospective economic advantages and to engage in unfair and deception trade practices, by causing false and disparaging statements about [Honig]" to be published in Ms. Buhl's September 23, 2016 article.[14] Compl. ¶ 60.  Honig's conspiracy claim is thus predicated on his defamation, tortious interference and unfair trade practices claims.  For the reasons discussed above (with respect to defamation) and below (with respect to the two other claims) these predicate claims have not been adequately pleaded.  Therefore, as New York law does not recognize a freestanding action for civil conspiracy, Honig's conspiracy claim fails along with his substantive claims.  *See Dickinson v. Igoni*, 908 N.Y.S.2d 85, 88 (N.Y. App. Div., 2d Dep't 2010) ("However, New York does not recognize civil conspiracy to

---

[14]   The conspiracy claim, which is made with respect to all defendants, alleges that the conspiracy also included an agreement to defame Honig in articles published by Ms. Buhl on November 8, 2016 and February 9, 2017.   Other than making this conclusory assertion, Honig pleads no facts alleging (much less plausibly alleging) that Mr. Ladd or MGT were involved in, or even aware of, the statements in these two articles. Accordingly, the Third Cause of Action should be dismissed for failure to state a claim insofar as it is based on the November 8, 2016 and February 9, 2017 articles.

commit a tort . . . as an independent cause of action.") North Carolina law similarly does not recognize civil conspiracy as an independent cause of action. *Henderson v. LeBauer*, 399 S.E.2d 142, 145 (N.C. Ct. App. 1991) ("Defendants have correctly pointed out that there is no action for civil conspiracy recognized in North Carolina.").

Moreover, other than alleging facts intended to establish that Ms. Buhl, a journalist, spoke with Mr. Ladd as a source of information for her articles, Honig has not pleaded any facts supporting the allegation that they entered into an agreement to tortiously harm Honig. Indeed, the sole specific factual allegation made to support the claim of conspiracy concerns an article published by Ms. Buhl more than two years prior to September 2016, about an investor who is not alleged to have any connection to Honig. Compl. ¶ 23.

Accordingly, because the Complaint's allegations regarding conspiracy are purely speculative and not adequately alleged, the Third Cause of Action should be dismissed with prejudice. *See, e.g.*, *Twombly*, 550 U.S. at 557 (finding, in the context of a Sherman Act § 1 conspiracy claim, that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Taylor v. Bettis*, 976 F. Supp. 2d 721, 746 (E.D.N.C. 2013) (dismissing plaintiffs' civil conspiracy claim where plaintiffs failed to make more than conclusory allegations of an agreement between the alleged conspirators).

>    **D.**    **The Complaint Fails to State A Claim of Intentional Interference with Prospective Economic Advantage.**

For multiple reasons, Honig fails to state a claim for intentional interference with prospective economic advantage. *See* Compl. ¶¶ 63-69.

First, Honig's claims for tortious interference here are entirely duplicative of his defamation claims. It is well settled that tort claims arising from alleged defamation should be dismissed as duplicative "where the entire injury complained of by plaintiff flows from the effect on his reputation." *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (affirming dismissal of tort claims as duplicative of defamation claims); *see also Jain v. Sec. Indus. & Fin. Mkts. Ass'n*, 2009 WL 3166684, at *9-10 (S.D.N.Y. Sept. 28, 2009) (dismissing claim for tortious interference with business relations and four other torts as duplicative).

The Complaint here is a paradigmatic example of duplicative pleading. As in *Chao* and other cases, the factual bases for Honig's defamation and tortious interference claims here are at the least "virtually identical," *Chao*, 476 F. App'x at 895; in fact, the allegations underlying the defamation and tort claims are exactly the same. And, like in *Chao*, here Honig's "entire injury" "flows from the effect on his reputation," *id.*, caused by the purported defamation: without any specifics, Honig can only allege that the cause of his tort injury is that "Defendants' unlawful acts" – *i.e.*, the defamation alleged in the First and Second Causes of Action – "have induced third parties not to enter into contracts with [Honig]." Compl. ¶ 65. Duplicative pleading of this sort fails as a matter of law. *See O'Brien v. Alexander*, 898 F. Supp. 162, 173 (S.D.N.Y. 1995) (dismissing general tort cause of action where it was "in reality, one for defamation.").

Second, Honig's claim fails because he does not sufficiently allege, among other things, that Defendants' conduct was intentionally directed at third parties with whom Honig has business relations. To plead intentional interference with prospective economic advantage, a plaintiff must show that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105 (2d Cir. 2012).[15] Importantly, the third party must be more than a mere bystander – it must be *a target* of Defendant's conduct; "that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997). *See also Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1104 (N.Y. 2004) ("[C]onduct constituting tortious interference with business relations is, by definition, *conduct directed not at the plaintiff itself*, but at the party with which the plaintiff has or seeks to have a relationship.") (emphasis added).

---

[15] The elements of this tort are essentially the same under North Carolina law. *See Beverage Systems of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 784 S.E.2d 457, 463 (N.C. 2016) ("[T]ortious interference with prospective economic advantage . . . . arises when a party interferes with a business relationship 'by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, ... if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.'") (quoting *Spartan Equip. Co. v. Air Placement Equip Co.*, 140 S.E.2d 3, 11 (N.C. 1965)).

Honig does not meet this burden. The Complaint does not specifically identify any third parties with whom Honig was engaged in business relations who were affected by Defendants' conduct. Instead, it vaguely alleges that "[o]n information and belief, Defendants' unlawful acts have induced third parties not to enter into contracts with Plaintiff," without describing (i) who the third parties are; (ii) how they were affected by Defendants' alleged actions; or (iii) what contracts they were purportedly contemplating with Honig. Compl. ¶ 65. The Complaint thus does not adequately allege that Mr. Ladd's or MGT's alleged conduct was directed at Honig's business relations with a third party.[16] *See, e.g.*, *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995) (affirming dismissal of tortious interference claim where distributors did not allege manufacturer's conduct was intended "to convince the customers to make contracts with them rather than the distributors").

For these reasons, the Court should dismiss the Fourth Cause of Action with prejudice.

E. **The Complaint Fails to State A Claim of Unfair and Deceptive Trade Practices.**

Honig's Fifth Cause of Action, for unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1, also fails. *See* Compl. ¶¶ 70-74.

---

[16] Indeed, rather than allege facts supporting a plausible inference that Defendants sought to interfere with Honig's business relations, Honig himself claims that Defendants' statements were triggered by a *different* motive: a desire to "divert attention away from MGT as the target of the very SEC scrutiny that the articles falsely allege is directed at [Honig]" and to "deceive the public into believing there were no problems at MGT and that it was safe to purchase MGT's stock." Compl. ¶ 3.

27

As an initial matter, this cause of action should be dismissed because the Complaint does not allege that any conduct occurred in North Carolina; Honig resides in Florida; and the events at issue, as far as can be discerned from the Complaint, took place in New York. Accordingly, under either a "*lex loci*" or "most significant relationship" choice-of-law test, North Carolina law does not apply. *See Guzman v. Diamond Candles, LLC*, 2016 WL 5679451, at *2 (M.D.N.C. Sept. 30, 2016) (discussing choice of law analysis for actions for claims brought under North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA")). Where another state's law governs a NCUDTPA claim, the cause of action should be dismissed. *Id.* at *5 (dismissing cause of action because New York law applied); *Martinez v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 911 F. Supp. 2d 331, 339 (E.D.N.C. 2012) (dismissing because North Carolina law did not apply); *United Dominion Indus., Inc. v. Overhead Door Corp.*, 762 F. Supp. 126, 131 (W.D.N.C. 1991) (dismissing because Texas law applied). The cause of action should therefore be dismissed.

Moreover, the claim fails even if North Carolina law applies to this dispute. Because Honig's injuries only flow from facially insufficient defamation claims, (*see* above, Sections II.A & II.B), dismissal of Honig's NCUDTPA claims necessarily follows. *See Craven v. Cope*, 656 S.E.2d 729, 734 (N.C. Ct. App. 2008) (affirming dismissal of NCUDTPA claims where they were predicated on same facts as dismissed defamation claims).

Finally, to prove a violation of N.C. Gen. Stat. § 75-1.1, a plaintiff must show (1) an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) which proximately caused injury to plaintiff. *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000). Honig does not adequately allege conduct at issue in this case was "in or affecting commerce," as that phrase has been interpreted by the courts in this State.

In enacting §75-1.1, the "Legislature intended to establish an effective private cause of action for aggrieved consumers" in North Carolina. *Marshall v. Miller*, 276 S.E.2d 397, 400 (N.C. 1981); *see also Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 165 (4th Cir. 1985) (purpose behind "§75-1.1 was the protection of the consuming public"). As such, "the Act does not apply to all wrongs in a business setting." *Carcano v. JBSS, LLC*, 684 S.E.2d 41, 50 (N.C. Ct. App. 2009). Instead, the statute only contemplates circumstances where there is "an exchange of some type . . . . in which a participant could be characterized as a seller." *Johnson v. Phoenix Mut. Life Ins. Co.*, 266 S.E.2d 610, 620 (N.C. 1980), *overruled in part on other grounds*, *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (N.C. 1988). At the least, the activities must be "surrounding or affecting a sale, or unfair and deceptive acts involved in the exchange of goods." *United Roasters Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1041, 1046-47 (E.D.N.C. 1979) (internal quotation marks omitted).

Honig has not alleged that any conduct of Defendants "surround[s]" a sale or "exchange of goods." Defendants did not sell anything to Honig, nor vice versa. Crucially, Plaintiff does not allege that either Honig or the Defendants engage in any

29

consumer-facing sales or exchanges of goods; Honig is a "private investor," Compl. ¶ 1, and Defendants are a technology investment firm, its CEO, and a New York-based journalist. Accordingly, Honig has failed to allege a violation of the statute and the cause of action should be dismissed. *See Stephenson v. Warren*, 525 S.E.2d 809, 812-13 (N.C. Ct. App. 2000) (private sale of a residence not "in or affecting commerce"); *Malone v. Topsail Area Jaycees, Inc.*, 439 S.E.2d 192, 194 (N.C. Ct. App. 1994) (payment of entry fee did not qualify golf tournament as a business activity "in or affecting commerce" for purposes of NCUDTPA).

Accordingly, the Court should dismiss the Fifth Cause of Action of the Complaint with prejudice.

## CONCLUSION

The Court should grant Defendants' motion and dismiss the claims against them with prejudice under Rules 12(b)(3) and 12(b)(6).

This 5th Day of June, 2017


/s/ Jonathan C. Krisko                    /s/ John P. Coffey
Jonathan C. Krisko                        John P. Coffey*
N.C. State Bar No. 28625


/s/ Erik R. Zimmerman                     /s/ Darren A. LaVerne
Erik R. Zimmerman                         Darren A. LaVerne*
N.C. State Bar No. 50427


ROBINSON, BRADSHAW & HINSON, P.A.     KRAMER LEVIN NAFTALIS & FRANKEL
1450 Raleigh Road, Suite 100              LLP
Chapel Hill, NC 27517                 1177 Avenue of the Americas
Telephone: (919) 328-8800             New York, NY 10036
Facsimile: (919) 328-8790             Telephone: (212) 715-9100
jkrisko@robinsonbradshaw.com          Facsimile: (212) 715-8000
ezimmerman@robinsonbradshaw.com       scoffey@kramerlevin.com
                                      dlaverne@kramerlevin.com
                                      * LR 83.1(d) Special Appearance


*Attorneys for Defendants Robert Ladd & MGT Capital Investments, Inc.*

## CERTIFICATE OF WORD COUNT

This brief does not exceed the word limit of 9,000 words and complies with LR 7.3(d)(1).

This 5th day of June, 2017.

/s/ Darren A. LaVerne
Darren A. LaVerne*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
dlaverne@kramerlevin.com
* LR 83.1(d) Special Appearance

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> David E. Fox
> N.C. State Bar No. 10332
> MOORE & VAN ALLEN PLLC
> 100 North Tryon Street, Suite 4700.
> Charlotte, NC 28202-4003
> (919) 286-8069
> davidfox@mvalaw.com
>
> Charles J. Harder
> Ryan J. Stonerock
> HARDER, MIRELL & ABRAMS LLP
> 132 S. Rodeo Drive, Fourth Floor
> Beverly Hills, CA 90212
> charder@hmafirm.com
> rstonerock@hmafirm.com
>
> *Attorneys for Plaintiff Barry Honig*

   I hereby certify that on this day, pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) I sent by electronic means the foregoing document to the following.

> Michael Tremonte
> SHER TREMONTE
> 90 Broad Street, 23rd Floor
> New York, NY 10004
> mtremonte@shertremonte.com
>
> *Attorney for Defendant Teri Buhl*

33

This 5th day of June, 2017.

/s/ Darren A. LaVerne
Darren A. LaVerne*


KRAMER LEVIN NAFTALIS & FRANKEL
    LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
dlaverne@kramerlevin.com
* LR 83.1(d) Special Appearance