# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Case No. 1:17-CV-184 (CCE) (LPA)

BARRY HONIG, an individual,

        Plaintiff,

   v.

ROBERT LADD, an individual; MGT
CAPITAL INVESTMENTS, INC., a
Delaware corporation; TERI BUHL,
an individual; and DOES 1-20,

        Defendants.

 

## BRIEF IN SUPPORT OF DEFENDANT TERI BUHL'S
## MOTION TO DISMISS THE COMPLAINT

Eric M. David
Kimberly M. Marston

**BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP**

Michael Tremonte*
Erica A. Wolff*

**SHER TREMONTE LLP**

*LR 83.1(d) Special Appearance

*Attorneys for Defendant Teri Buhl*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

NATURE OF THE MATTER BEFORE THE COURT ..................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

QUESTIONS PRESENTED ........................................................................................... 7

ARGUMENT .................................................................................................................. 7

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER BUHL ........ 7

       A.     Legal Standard .................................................................................. 8

       B.     North Carolina's Long-Arm Statute Provides No Basis for the
              Exercise of Personal Jurisdiction over Buhl ..................................... 9

       C.     Personal Jurisdiction Cannot Be Exercised Over Buhl Consistent
              with Principles of Constitutional Due Process .................................. 9

              1.   The Complaint Fails to Allege Contacts Giving Rise to General
                   Jurisdiction .............................................................................. 10

              2.   The Complaint Fails to Allege Contacts Giving Rise to Specific
                   Jurisdiction .............................................................................. 11

II.    HONIG FAILS TO ADEQUATELY PLEAD VENUE IN THIS
       DISTRICT ............................................................................................... 15

III.   HONIG FAILS TO STATE A CLAIM AS TO ANY CAUSE OF ACTION
       AGAINST BUHL ..................................................................................... 17

       A.     The Complaint Fails to State a Claim for Defamation ..................... 18

              1.   Buhl's Statements About Government Investigations and
                   Honig's Alleged Trading Practices are Substantially Accurate
                   Reports of Government Proceedings ........................................ 19

              2.   The Majority of Buhl's Statements are Either Pure Opinion or
                   Imprecise, Hyperbolic Commentary that Cannot be Actionable

i

.................................................................................................... 23

          3.  The Remaining Statements are Not Susceptible of Defamatory Meaning Because They Are Not Derogatory ............................. 29

  B.    The Complaint Fails to State Claims for Intentional Interference with Prospective Economic Advantage, Violation of the NCUDTPA, or Civil Conspiracy ............................................................................. 30

CONCLUSION ............................................................................................................. 32

# TABLE OF AUTHORITIES

## Cases

*600 W. 115th Street Corp. v. Von Gutfeld,*
   80 N.Y.2d 130 (N.Y. 1992). .................................................................... 24, 28, 30

*Aggarao v. MOL Ship Mgmt. Co., Ltd.,*
   675 F.3d 355 (4th Cir. 2012) ........................................................................ 16

*Associated Press v. Cook,*
   17 S.W.3d 447 (Tex. App. 2000).................................................................. 29

*Bartko v.Wheeler,*
   2014 WL 29441 (M.D.N.C. Jan. 3, 2014) .................................................... 15

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................. 17, 31

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)...................................................................................... 11

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.,*
   334 F.3d 390 (4th Cir. 2003) .......................................................................... 8

*Chao v. Mount Sinai Hosp.,*
   476 F. App'x 892 (2d Cir. 2012) .................................................................. 30

*Chapin v. Greve,*
   787 F. Supp. 557 (E.D. Va. 1992) ............................................................... 30

*Chapin v. Knight-Ridder,*
   993 F.2d 1087 (4th Cir. 1987) ..................................................................... 30

*Craven v. COPE,*
   656 S.E.2d 729 (N.C. Ct. App. 2008)..................................................... 26, 30

*Daniels v. Metro Magazine Holding Co., L.L.C.,*
   634 S.E.2d 586 (N.C. Ct. App. 2006).......................................................... 28

*Design Res., Inc. v. Leather Indus. of Am.*,
 900 F. Supp. 2d 622 (M.D.N.C. 2012) ........................................................ 8, 9, 11, 14, 15

*Desmond v. News & Observer Pub. Co.*,
 241 N.C. App. 10 (N.C. Ct. App. 2015), ............................................................. 19, 21

*Dickinson v. Igoni*,
 908 N.Y.S.2d 85 (N.Y. App. Div., 2d Dep't 2010) ........................................................ 31

*Dillon v. City of New York*,
 261 A.D.2d 34 (N.Y. App. Div., 1st Dep't 1999) .................................................. 18, 26

*Dutcher v. Eastburn*,
 2011 WL 1134666 (E.D.N.C. Mar. 26, 2011) ........................................................ 14, 15

*Ello v. Singh*,
 531 F. Supp. 2d 552 (S.D.N.Y. 2007) ........................................................ 29

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
 957 F. Supp. 477 (S.D.N.Y. 1997) ........................................................ 31

*Gross v. New York Times Company*,
 623 N.E.2d 1163 (N.Y. 1993) ........................................................ 25

*Hall v. Virginia*,
 385 F.3d 421 (4th Cir. 2004) ........................................................ 29

*Harco Nat'l Ins. Co. v. Grant Thornton LLP*,
 698 S.E.2d 719 (N.C. Ct. App. 2010) ........................................................ 18

*Henderson v. LeBauer*,
 399 S.E.2d 142 (N.C. Ct. App. 1991) ........................................................ 31

*Hiwassee Stables, Inc. v. Cunningham*,
 135 N.C.App. 24 (N.C. Ct. App. 1999) ........................................................ 8

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*,
 49 N.Y.2d 63 (N.Y. 1979) ........................................................ 19, 23

*Immuno AG v. Moor-Jankowski*,
 77 N.Y.2d 235 (N.Y. 1991) ........................................................ 24, 25, 26

iv

*In re PEC Solutions, Inc. Sec. Litig.*,
    418 F.3d 379 (4th Cir. 2005) ...................................................................... 16

*Jewell v. NYP Holdings, Inc.*,
    23 F. Supp. 2d 348 (S.D.N.Y. 1998) ........................................................ 22

*Kinloch v. News & Observer Pub. Co.*,
    314 F. Supp. 602 (E.D.N.C. 1969) ............................................................ 23

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ................................................................................... 18

*Lacomb v. Jacksonville Daily News Co.*,
    142 N.C. App. 511 (2001) .......................................................................... 23

*Le Bleu Corp. v. Standard Capital Grp., Inc.*,
    11 F. App'x 377 (4th Cir. 2001) ................................................................. 8

Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.,
    784 F.Supp. 306 (D.S.C.1992).................................................................. 11

*Mann v. Abel*,
    10 N.Y.3d 271 (N.Y. 2008) ........................................................................ 18

*Masselli & Lane, PC v. Miller & Schuh, PA*,
    2000 WL 691100 (4th Cir. May 30, 2000) ................................................. 8

*Mead v. Gaston Cty. Police Dep't*,
    2012 WL 631850 (D.S.C. Feb. 27, 2012)................................................... 16

*Moore v. Cox*,
    341 F. Supp. 2d 570 (M.D.N.C. 2004) ...................................................... 18

*Nanoviricides, Inc. v. Seeking Alpha, Inc.*,
    2014 WL 2930753 (Sup. Ct. N.Y. Cty. June 26, 2014)............................... 21

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*,
    416 F.3d 290 (4th Cir.2005) ....................................................................... 8

*Nichols*, Nichols v. G.D. Searle & Co.,
    991 F.2d 1195 (4th Cir. 1993) .................................................................... 17

v

*Nobles v. Boyd*,
    2015 WL 2165962 (E.D.N.C. May 7, 2015) ................................................................. 31

*Plotzker v. Lamberth*,
    2008 WL 4706255 (W.D. Va. Oct. 22, 2008) .............................................................. 17

*Russian Am. Found., Inc. v. Daily News, L.P.*,
    109 A.D.3d 410 (1st Dep't 2013) .................................................................................. 21

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
    925 N.Y.S.2d 407 (1st Dep't 2011) .............................................................................. 27

*Seldon v. Compass Restaurant*,
    2012 WL 5363518 (Sup. Ct. N.Y. Cty. Oct. 21, 2012) ................................................ 21

*Silvercorp Metals, Inc. v. Anthion Mgmt. LLC*,
    959 N.Y.S.2d 92, 2012 N.Y. Slip Op. 51569 (N.Y. Sup. Ct. Aug. 16, 2012) ......... 25, 27

*Smith v. Aylor*,
    2009 WL 959801 (E.D. Va. Nov. 7, 2008) .................................................................. 17

*Steinhilber v. Alphonse*,
    508 N.Y.S2d 901 (N.Y. 1986) ..................................................................................... 24

*Stepanov v. Dow Jones & Co., Inc.*,
    987 N.Y.S.2d 37 (N.Y. App. Div., 1st Dep't 2014) ..................................................... 18

*Stover v. O'Connell Associates, Inc.*,
    84 F.3d 132 (4th Cir. 1996) .................................................................................... 13, 15

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
    139 F. Supp. 3d 722 (M.D.N.C. 2015) ......................................................... 8, 11, 13, 15

*Verona v. U.S. Bancorp*,
    2011 WL 1252935 (E.D.N.C. Mar. 29, 2011) ............................................................. 18

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ................................................................................. 10, 12, 13, 15

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ...................................................................................................... 10

*Young v. New Haven Advocate*,
  315 F.3d 256 (4th Cir. 2002) ...................................................................................... 8, 15

**Statutes**

*Federal Rules of Civil Procedure 12(b)(2)* ................................................................. 1, 7, 32

*Federal Rules of Civil Procedure 12(b)(3)* ........................................................... 1, 7, 15, 32

*Federal Rules of Civil Procedure 12(b)(6)* ........................................................... 1, 7, 17, 32

*N.C. Gen. Stat. § 1-75.4 et seq* .............................................................................................. 9

*N.C. Gen. Stat. § 75-1 et seq* ...................................................................................... 2, 30-32

*N.Y. Civ. Rights Law § 74* .................................................................................................. 19, 21

*28 U.S.C. § 1406(a)* ........................................................................................................ 7, 15

*28 U.S.C. § 1391(b)(2)* ............................................................................................................ 15

**Rules**
*Local Rule 7.3(d)(1)* ................................................................................................................ 34

## NATURE OF THE MATTER BEFORE THE COURT

Defendant Teri Buhl respectfully submits this memorandum of law in support of her motion to dismiss the Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6).

The Complaint should be dismissed as to Teri Buhl because this Court does not have personal jurisdiction over her and because venue does not lie in this District. Honig, a Florida resident, alleges that Buhl, a journalist who resides in New York, defamed him in a series of articles published on her website about Honig and certain legal proceedings, including a U.S. Securities and Exchange Commission ("SEC") investigation and a related subpoena that was served on Defendant MGT Capital Investments, Inc. ("MGT") (the "Subpoena").

Buhl is a resident of New York. She did not travel to North Carolina or place any telephone calls to any North Carolina phone numbers in connection with the articles that are the subject of this case, nor did she write about any activities that took place in North Carolina. This case has no material connection to North Carolina; indeed, it has no connection at all, save for the fact that MGT and its principal Robert Ladd – Buhl's alleged sources for some of the statements made in her articles – reside and do business in North Carolina. Such facts cannot ground this Court's exercise of personal jurisdiction over Buhl consistent with constitutional principles of due process.

1

Plaintiff filed suit in this unlikely forum only after a judge in the Southern District of New York expressed substantial doubts about the merits of the nearly identical lawsuit that Plaintiff filed there against Buhl. Two days before Buhl was scheduled to file her motion to dismiss that case, Honig withdrew the suit in New York and filed this action approximately three weeks later. This Court should not countenance Plaintiff's transparent forum shopping.

Even assuming the case were properly brought here – and it is not – dismissal with prejudice would be required because the Complaint fails to state any viable claim against Buhl. Every one of the allegedly defamatory statements is protected speech because each is (1) a substantially accurate report of an official proceeding; (2) pure opinion; (3) loose, speculative, or hyperbolic speech that cannot be proven "false"; and/or (4) a statement that is not damaging to Plaintiff's reputation. Accordingly, none of the statements can serve as the basis for a defamation claim. Buhl cannot be held liable for reporting that Honig allegedly engaged in illegal activity when a court document, filed in a criminal proceeding, specifically alleges that Honig engaged in illegal activity. Nor can she be held liable for opining that Honig was the "subject" or "target" of an SEC Division of Enforcement subpoena that required the production of information about Honig, his business associates, and several of the companies with which he has invested. Plaintiff's remaining claims – for intentional interference with prospective economic advantage, violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), and civil conspiracy are all premised on the exact same factual

2

allegations as the infirm defamation claim and therefore are entirely duplicative.  As they are equally incompatible with First Amendment law and the requisite pleading standards, they should likewise be dismissed.

## STATEMENT OF FACTS

### *Honig Previously Brought Essentially Identical Claims Against Buhl in New York*

On September 26, 2016, Plaintiff filed essentially the same lawsuit against Buhl and "Does 1-20" in the U.S. District Court for the Southern District of New York (the "SDNY"), alleging there, as in this case, that Buhl defamed him in a series of articles regarding the "microcap" investment industry.  (Complaint in *Honig v. Buhl*, Case 1:16-cv-07477-PGG (S.D.N.Y. Sept. 26, 2016) (ECF No. 1) ("the New York Complaint"), filed as Ex. A to the Declaration of Darren A. Laverne, Esq. dated June 5, 2017 ("Laverne Decl."), Dkt. 21-1 at ¶¶ 8-15.)  Honig claimed that the defamatory statements appeared in three articles published on a website operated by Buhl, and that "Buhl's articles falsely accuse Plaintiff of serious violations of laws and falsely state that he is under investigation by the government."  (*Id.* at 1.)

In support of venue in the SDNY, Honig's original lawsuit alleged that "a substantial part of the events or omissions giving rise to this complaint occurred" in the SDNY.  (*Id.* at ¶ 7.)  On January 20, 2017, Buhl submitted a letter to the court previewing the legal arguments in support of her motion to dismiss.  *See Honig v. Buhl* (S.D.N.Y), Dkt. No. 23.  At the pre-motion conference, the District Court expressed doubts as to the viability of Honig's defamation claims.  (*See* Transcript of Feb. 1, 2017 proceedings in

*Honig v. Buhl* (S.D.N.Y.) (ECF No. 31), filed as Ex. B to the Laverne Decl., [Dkt. 21-2](.) Specifically, the District Court stated: "it's not entirely clear to me how some of these statements are actionable." (*Id.* at 3:18-22.) In response to Honig's theory as to one of the allegedly defamatory statements, the Court observed: "Well, that frankly sounds like speculation now." (*Id.* at 5:4-5.) As to another allegedly defamatory statement, the court did not "understand the defamatory import." (*Id.* at 6:7-8.) And as to a third statement, the court inquired – rhetorically – why it should not be considered protected "opinion" or "speculation." (*Id.* at 8:22-24, 9:2-5.) Following the pre-motion conference, the District Court stayed discovery "because I'm uncertain whether a number of these alleged defamatory statements are going to survive, [and] I'm reluctant to have the parties spend a lot of time on discovery on it." (*Id.* at 17:7-10.)

On February 8, 2017 – just two days before Buhl's motion to dismiss the complaint was due – Honig entered a notice of voluntary dismissal. See *Honig v. Buhl* (S.D.N.Y.), Dkt. 30.

### Honig Re-Files His Action in This District

Three weeks later, Honig re-filed his Complaint in this Court. As in the New York action, Honig seeks recourse for "a series of false and highly defamatory articles about [Honig]" published on Buhl's website which "contain assertions that [Honig], among other things, is violating securities laws" and is "the 'target' of a" government investigation. (*See* Compl. ¶¶ 1-2.) The Complaint challenges as defamatory the exact same statements that were challenged in the SDNY Complaint, except for one that

Plaintiff did not include in this action.  (*See Id.* ¶ 18; ¶ 24a - ¶ 24j; ¶ 28a - ¶ 28b.)  The

new Complaint adds allegations concerning articles Buhl published on November 8, 2016

and February 9, 2017.  (Compl. ¶¶ 31-36.)  Specifically, Honig alleges that following

statements published by Buhl were defamatory:

1. "[I]t's possible more players in the microcap space will be arrested by the DOJ or charged with an enforcement action by the SEC.  One name that comes to mind is microcap financer Barry Honig."  (*id.* ¶¶ 17-18);

2. Honig is the "target" of an SEC Subpoena issued to MGT (the "Subpoena") and of the SEC's related investigation.  (*id* ¶ 24(a), (b));

3. "90% of the [SEC]'s questions were about Honig."  (*id.* ¶ 24(c));

4. "Honig has been calling SEC enforcement defense lawyers this week looking for representation."  (*id.* ¶ 24(d));

5. Honig "uses other people to run a company he is secretly controlling and pays stock pumpers to tout the company without disclosure."  (*id.* ¶ 24(e));

6. Honig "runs things behind the scene."  (*id.* ¶ 24(f));

7. Honig engages in "tons of questionable pump and dump deals."  (*id.* ¶ 24(g));

8. Honig's counsel "has been able to keep the SEC at bay."  (*id.* ¶ 24(h));

9. Honig "acted as an affiliate in trading MGT stock."  (*id.* ¶ 24(i));

10. "Market participants sit on the side line to see if the SEC can get the goods to finally charge Barry Honig."  (*id.* ¶ 24(j));

11. Honig is the "subject" of the Subpoena.  (*id.* ¶ 27);

12.	"Barry Honig is pulling out the big legal guns apparently worried about what's inside that SEC subpoena." (*id.* ¶ 28(a));

13.	Honig "refused to return a call and email for comment" about Buhl's coverage of the Subpoena. (*id.* ¶ 28(b));

14.	"California DOJ investigating Honig and The Frost Group." (*id.* ¶ 32(a));

15.	"The Northern California DOJ has been sniffing around asking tough question (sic) about the investing and trading activities of a billionaire Phillip Frost, a former boxer turned penny stock investor Barry Honig, and a man Honig has done investing deals with Michael Brauser." (*id.* ¶ 32(b));

16.	"[T]he regulator is looking for evidence that these people [including Barry Honig] traded as a group and therefore became beneficial owners of the stock." (*id.* ¶ 35).

The Subpoena was issued by the New York Regional Office of the SEC Division of Enforcement and addressed to MGT in Harrison, New York. (*See* Complaint Ex. B.) Among other things, the Subpoena requests documents relating to Honig and certain persons and entities affiliated with Honig, including: D-Vasive Inc. ("D-Vasive"); John Stetson; John R. O'Rourke III; Mark Groussman; Joshua Silverman; Demonsaw LLC ("Demonsaw"); GRQ Consultants, Inc.; ATG Capital, LLC; Melechdavid, Inc.; Stetson Capital Investments, Inc.; and Iroquois Capital Management LLC. Honig identified all these persons and entities in a lawsuit he filed with other investors against MGT, Ladd and MGT's directors on April 4, 2017 in the Southern District of New York, alleging breach of contract and related claims in connection with Honig's investment in D-Vasive and Demonsaw. (*See* Wolff Decl., Ex. 1 (Amended Complaint in *ATG Capital LLC, et*

6

*al. v. MGT Capital Investments, Inc., et al.*, 1:17-cv-2440 (S.D.N.Y.)).  Buhl posted the

Subpoena on her website on February 9, 2017.  (*See* Compl. ¶¶ 19, 34.)

The Complaint alleges the following causes of action against Buhl:  libel, civil

conspiracy, intentional interference with prospective economic advantage, and unfair and

deceptive trade practices.

## QUESTIONS PRESENTED

I.      Whether the Complaint should be dismissed as to Buhl for lack of personal

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

II.     Whether the Complaint should be dismissed for improper venue, pursuant

to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

III.    Whether the Complaint should be dismissed as to Buhl for failure to state a

claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

## I.      THIS COURT LACKS PERSONAL JURISDICTION OVER BUHL

Pursuant to Fed. R. Civ. P. 12(b)(2), the Complaint should be dismissed as to Buhl

– a resident of New York who has not directed any activities to North Carolina – for lack

of personal jurisdiction.  A federal court may not exercise personal jurisdiction over an

out-of-state defendant unless:  (1) the forum state's long-arm statute provides a basis for

jurisdiction and (2) federal constitutional due process is satisfied.  *Young v. New Haven*

*Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). Neither basis for personal jurisdiction over Buhl exists here.[1]

## A. Legal Standard

Plaintiff bears the burden of demonstrating, "by a preponderance of the evidence" that a court may properly exercise personal jurisdiction over the defendant. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003) (internal citations omitted). While all jurisdictional allegations are taken in the light most favorable to the plaintiff and all inferences drawn in favor of jurisdiction, *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir. 2005), a court "need not credit conclusory allegations or draw farfetched inferences." *Syngenta Crop Prot., LLC v. Willowood, LLC*, 139 F. Supp. 3d 722, 727 (M.D.N.C. 2015) (J. Eagles) (citing *Masselli & Lane, PC v. Miller & Schuh, PA,* No. 99–2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)). Allegations in the Complaint need not be accepted as true when they are contradicted by a defendant's declaration. *Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 622, 637 (M.D.N.C. 2012).

---

[1] Because North Carolina's long-arm statute, N.C. Gen. Stat. § 1–75.4(5)(c), "has been interpreted to extend to the outer limits allowed by the Due Process Clause," *Le Bleu Corp. v. Standard Capital Grp., Inc.,* 11 F. App'x 377, 379 (4th Cir. 2001) (citing *See Hiwassee Stables, Inc. v. Cunningham,* 135 N.C.App. 24 (N.C. Ct. App. 1999)), the statutory and due process inquiries are generally collapsed into the single question of "whether North Carolina may, consistent with due process, exercise personal jurisdiction over" the defendant. *Le Bleu Corp.*, 11 F. App'x at 379. "Even though the inquiries merge, if jurisdiction is not authorized under the North Carolina Long Arm Statute, the court need not engage in additional due process analysis." *Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 622, 631 (M.D.N.C. 2012).

8

## B. North Carolina's Long-Arm Statute Provides No Basis for the Exercise of Personal Jurisdiction over Buhl

Honig's Complaint fails to identify any provision of the North Carolina long-arm statute that could confer jurisdiction over Buhl, and none exists. Buhl was not served with process while in the State, as required under N.C. Gen. Stat. § 1-75.4(1). No statute at issue in this lawsuit "specifically confer[s] grounds for personal jurisdiction." N.C. Gen. Stat. § 1-75.4(2). The Complaint alleges no "local act or omission" committed by Buhl within the State, as required under N.C. Gen. Stat. § 1-75.4(3). The Complaint alleges no "local injury" suffered by Plaintiff (a Florida resident) within the State, as required under N.C. Gen. Stat. § 1-75.4(4). The Complaint does not allege that Buhl made any promises to Plaintiff concerning any services or goods to be provided to Plaintiff within the State, and it does not allege that Buhl actually provided such goods or services, as required under N.C. Gen. Stat. § 1-75.4(5). Nor does this case involve any of the grounds enumerated in N.C. Gen. Stat. § 1-75.4(6)-(12). As personal jurisdiction is not conferred under any of the statutory bases for jurisdiction, dismissal of the action as against Buhl is required. *See*, *e.g.*, *Design Res., Inc.*, 900 F. Supp. at 631 (M.D.N.C. 2012) ("[I]f jurisdiction is not authorized under the North Carolina Long Arm Statute, the court need not engage in additional due process analysis.").

## C. Personal Jurisdiction Cannot Be Exercised Over Buhl Consistent with Principles of Constitutional Due Process

Principles of constitutional due process likewise preclude the exercise of personal jurisdiction over Buhl in this case. "The Due Process Clause of the Fourteenth

9

Amendment constrains a State's authority to bind a nonresident defendant to a judgment in its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1118 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Thus, a defendant cannot be haled into a court "based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 134 S. Ct. at 1123 (internal citation omitted). Rather, a defendant can only be subject to a forum's jurisdiction "based on his own affiliation with the State." *Id.* As the Complaint fails to allege such an affiliation under principles of either specific or general jurisdiction, this Court cannot exercise personal jurisdiction over Buhl.

1. *The Complaint Fails to Allege Contacts Giving Rise to General Jurisdiction*

The exercise of general personal jurisdiction is improper unless the defendant has "continuous and systematic contacts" with the forum state, and no such contacts are alleged here. *See Walden*, 134 S. Ct. at 1121 n6. Indeed, Honig makes no apparent attempt to argue for general personal jurisdiction over Buhl. Nor could he, as "Buhl resides in and is a citizen and domiciliary of New York, New York." (Compl. ¶ 10.) Buhl does not maintain a residence in North Carolina, does not own property in North Carolina, holds no bank accounts in North Carolina, and does not regularly provide goods or services in North Carolina. (Buhl. Decl. ¶¶ 5-6, 8, 11-13.) In fact, Buhl has never stepped foot in the State of North Carolina except for once changing airplanes in the Raleigh-Durham Airport while taking a vacation to a destination outside of North Carolina. (*Id.* ¶ 14.) Given the complete absence of "continuous and systematic"

10

contacts with North Carolina, general jurisdiction is not available. *See Design Res., Inc.*, 900 F. Supp. 2d at 638-39 (finding that even "nine trips to North Carolina fall short of the quantity and type of continuous and systematic contacts sufficient to establish a basis for the exercise of general jurisdiction").

> 2. *The Complaint Fails to Allege Contacts Giving Rise to Specific Jurisdiction*

Specific jurisdiction is also unavailable, because the Complaint fails to allege that Buhl "has 'purposefully directed [her] activities at residents of the forum and the litigation [then] results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, (1985) (quotations and citations omitted). Plaintiff's attempt to premise personal jurisdiction over Buhl on the unsupported, conclusory allegation that "Defendants . . . have minimum contacts with the State of North Carolina and/or are domiciliaries of the State of North Carolina," (Compl. ¶ 14), falls far short of this standard, as this Court has held. *See Syngenta Crop Prot.*, 139 F. Supp. 3d at 727 (holding that such "[b]lanket conclusory allegations" are insufficient to support the exercise of personal jurisdiction over an out-of-state defendant). "The plaintiff must base its claim for personal jurisdiction "on specific facts set forth in the record." *Id* (quoting *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.,* 784 F.Supp. 306, 310 (D.S.C.1992)). There are no such facts in this record. To the contrary, the record reflects that "Buhl resides in and is a citizen and domiciliary of New York." (Compl. ¶ 10.) All of the statements that give rise to Plaintiff's claims were published on Buhl's website, teribuhl.com, which she operates from New York. (*See* Compl. ¶¶ 2, 17-

11

18, 24, 28, 32, and 35; Buhl Decl. ¶¶ 18, 20.) Buhl performed no work in connection with the so-called "Defamatory Articles" in North Carolina. (Buhl Decl. ¶¶ 18-24.) Buhl never travelled to the state of North Carolina in connection with the investigation or drafting of the so-called "Defamatory Articles," nor did she ever purposefully place a phone call into the State of North Carolina or receive a phone call from a North Carolina phone number in connection with those articles. (*Id.* ¶¶ 20-24)

In addition, *Plaintiff* is not a resident of North Carolina; he "resides in, and is a citizen and domiciliary of Palm Beach County, Florida" (Compl. ¶ 7). Thus, this action's sole, attenuated connection to North Carolina is that some of Buhl's alleged sources reside and do business in North Carolina. (Compl. ¶¶ 8-9.) These allegations do not make up for the otherwise complete absence of a factual basis for the exercise of specific jurisdiction over Buhl. The Supreme Court has "consistently rejected [such] attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state." *Walden*, 134 S. Ct. at 1123 (emphasis added). The "minimum contacts analysis looks to defendant's contacts with the forum State itself, not to the defendant's contacts with persons who reside there." *Id.* (internal citation omitted). That is why, in *Walden*, the Supreme Court held that a court in Nevada lacked personal jurisdiction over a Georgia police officer who allegedly violated the rights of a Nevada couple, who were returning to Nevada, by seizing their property at a Georgia airport. The Supreme Court explained that the Court of Appeals

had improperly focused on defendant's knowledge of plaintiffs' connections to Nevada, instead of assessing *the defendant's* contacts with the forum state. *Id.* at 1125.

Even before *Walden*, the Fourth Circuit (and this Court)[2] found personal jurisdiction lacking where a defendant lacked relevant contacts other than his connection to a party who resided in the forum. For example, in *Stover v. O'Connell Associates, Inc.*, 84 F.3d 132 (4th Cir. 1996), the Fourth Circuit found that a district court in Maryland lacked personal jurisdiction over a New York private investigation firm in an action arising from the firm's investigation of Plaintiff, because the firm's only connection with Maryland was that it had telephoned and received information from a Maryland investigation firm about Maryland subjects, including Plaintiff. The court held that such "occasional telephonic requests for information from Maryland-based" parties and the "consequent receipt of, investigation services from Maryland" – even where such services related to Maryland residents who allegedly suffered harm there – did not establish minimum contacts sufficient to support the exercise of personal jurisdiction. *Stover*, 84 F.3d at 137. Here, similarly, Buhl's only connection with North Carolina is that she allegedly obtained information from a North Carolina resident about a Florida resident's role in an investigation by a New York regulator. The Complaint does not allege that she travelled to North Carolina or that she placed phone calls into the state to

---

[2] *See Syngenta Crop Prot., LLC*, 39 F. Supp. 3d at 731 (finding that personal jurisdiction was lacking over a Chinese company with no physical presence in North Carolina, that did not mention North Carolina on its website, and did not specifically direct its U.S. affiliate to make sales in North Carolina).

13

obtain such information, and her declaration confirms that she did not.  (Buhl Decl. ¶¶ 20-24.)

District courts in this Circuit have dismissed cases for lack of personal jurisdiction where a defendant's forum contacts were more substantial than those present here.  For example, in *Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 622 (M.D.N.C. 2012), personal jurisdiction was held lacking when an out-of-state furniture company sued out-of-state defendants for defamation, tortious interference with business relations, and unfair competition arising from articles and advertisements in a trade magazine that was published in North Carolina.  North Carolina was the state with the second highest circulation of the trade magazine.  Defendants admitted to travelling to the State several times for work.  Notwithstanding these allegations, the District Court found that it lacked personal jurisdiction because defendants had not "purposefully directed" their articles and advertisements to North Carolina. 900 F. Supp. 2d at 635.

Even when the plaintiff in a defamation case resides in the forum *and* the allegedly defamatory statements were published in the forum, those forum connections, standing alone, are not sufficient.  *See, e.g. Dutcher v. Eastburn*, 2011 WL 1134666 (E.D.N.C. Mar. 26, 2011) (no personal jurisdiction over out-of-state author who allegedly defamed a North Carolina resident because publisher did not maintain offices or employees in North Carolina, own property in North Carolina, maintain bank accounts in North Carolina, or direct marketing activities to North Carolina).  A court does not have personal jurisdiction over an out-of-state libel defendant, unless the defendant "manifest[s]t an

14

intent to target and focus on [on the forum state's] readers." *Id.* at *13 (internal citation omitted).

Buhl's forum-contacts are even more deficient than the contacts found insufficient in *Walden*, *Stover*, *Design Res.*, *Dutcher*, *Young, Syngenta Crop Prot.*, and any number of other cases, within and without this Circuit, that have found personal jurisdiction lacking. As noted, the Complaint does not allege that any of the so-called "Defamatory Articles" were investigated or drafted in North Carolina; that Buhl traveled to, or even placed any telephone calls into, North Carolina in connection with her work on the so-called "Defamatory Articles"; that the so-called "Defamatory Articles" concerned activities that took place in North Carolina; that Buhl's website was aimed at North Carolina or had a particularly high volume of readership in North Carolina; or that Plaintiff, a Florida resident, suffered any injury in North Carolina.

As the foregoing demonstrates, this case is not a close call. The Complaint should be dismissed as against Buhl with prejudice for lack of personal jurisdiction.

## II. HONIG FAILS TO ADEQUATELY PLEAD VENUE IN THIS DISTRICT

Because the Complaint does not allege that any event or omission giving rise to the claims took place in this District, much less that a "substantial" portion of such events or omissions occurred here, dismissal is warranted under Fed. R. Civ. P. 12(b)(3). See 28

15

U.S.C. § 1406(a); 28 U.S.C. § 1391(b)(2);[3] *Bartko v.Wheeler*, 2014 WL 29441, at *8

(M.D.N.C. Jan. 3, 2014), *aff'd* 589 F. App'x 181 (4th Cir. 2015). Mere conclusory

allegations as to the propriety of venue, such as those relied on by Plaintiff in this case,

(*see* Compl. ¶ 16), do not suffice. *Id*. Moreover, the record thoroughly undermines

Plaintiff's unsupported, conclusory assertions as to venue. Most of the events giving rise

to Honig's claims occurred in the Southern District of New York, where Honig originally

filed suit. *See Mead v. Gaston Cty. Police Dep't*, 2012 WL 631850, at *2 (D.S.C. Feb.

27, 2012). Buhl is a resident of New York City, (Compl. ¶ 10); she did not travel to

North Carolina or place a telephone call to a North Carolina phone in connection with her

drafting of the articles, (Buhl Decl. ¶¶ 20-24); the Subpoena about which Ladd and MGT

allegedly made statements to Buhl was issued by the New York Reginal Office of the

SEC Division of Enforcement, which is located in New York City, and was directed to

MGT in Harrison, New York, which is also located within the Southern District of New

York, (Complaint Ex. B at 1); and, at the time Ladd and MGT allegedly made such

statements to Buhl, MGT's principal corporate office was in Harrison, New York.[4] *See*

---

[3] Plaintiff appears to allege venue only on the basis of subsection (b)(2) of §1391. (*See* Compl. ¶ 16.) (alleging venue proper because "Ladd and MGT reside here and a substantial part of the events or omissions giving rise to this complaint occurred here."). Subsections (b)(1) and (b)(3) are inapplicable because Buhl is not a resident of North Carolina (*see* Compl. ¶ 10.) and venue is, in fact, proper elsewhere, a fact Honig embraced when he originally brought suit in the Southern District of New York.

[4] The Court may take judicial notice of SEC filings at the motion to dismiss stage. *See In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 390 n. 10 (4th Cir. 2005). Moreover, "[o]n a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365- 66 (4th Cir. 2012).

16

MGT Form 8-K filed Oct. 5, 2016 at cover page, filed as Exhibit D to Laverne Decl.,

Dkt. 21-4.  Moreover, given the complete absence of allegations of any conduct occurring

in this District, and given Honig's obvious forum shopping, Plaintiff should have

foreseen that the forum was improper.  *See Nichols*, *Nichols v. G.D. Searle & Co.*, 991

F.2d 1195, 1201-02 (4th Cir. 1993) (dismissing suit where "plaintiff's attorney could

reasonably have foreseen that the forum in which he filed was improper."); *Plotzker v.*

*Lamberth*, 2008 WL 4706255, at *10 (W.D. Va. Oct. 22, 2008) (citing *Nichols* and

dismissing for improper venue); *Smith v. Aylor*, 2009 WL 959801, at * 2 (E.D. Va. Nov.

7, 2008) (same).  Accordingly, dismissal for lack of venue is warranted.

## III.    HONIG FAILS TO STATE A CLAIM AS TO ANY CAUSE OF ACTION AGAINST BUHL

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, 'to state a claim to relief that is

plausible on its face'" such that it "nudge[s] their claims across the line from conceivable

to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Courts

therefore dismiss implausible claims at the motion-to-dismiss stage, rather than wait to

"weed[] out" meritless allegations in a subsequent phase of the litigation. *Twombly*, 550

U.S. at 560.  Because the Complaint does not contain sufficient factual matter to state any

plausible claim for relief, dismissal is warranted.

## A.     The Complaint Fails to State a Claim for Defamation

To state a claim for defamation under New York law,[5] a plaintiff must plead: (1) a false statement; (2) that is published to a third party; (3) without privilege or authorization; and (4) causes harm, unless the statement is *per se* defamatory. *Stepanov v. Dow Jones & Co., Inc.*, 987 N.Y.S.2d 37, 41-42 (N.Y. App. Div., 1st Dep't 2014).  In addition, a plaintiff must allege that the defendant acted with "fault as judged by, at a minimum, a negligence standard[.]" *Dillon v. City of New York*, 261 A.D.2d 34, 38 (N.Y. App. Div., 1st Dep't 1999).  When analyzing whether statements are defamatory as a matter of law, a court must read them in the "over-all context in which the assertions were made," not the selectively quoted excerpt a plaintiff self-servingly quotes. *Mann v. Abel*, 10 N.Y.3d 271, 276-77 (N.Y. 2008).  Plaintiff has failed to state a claim for defamation based on any of the so-called "Buhl Defamatory Statements" because, the

_____

[5] As set forth in the Brief in Support of Motion of Defendants Robert Ladd and MGT Capital Investments, Inc. to Dismiss the Complaint dated June 5, 2017 (the "MGT Brief") at p. 17 FN 11, in diversity cases, district courts apply the choice-of-law rules of the state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Courts in North Carolina have applied the rule of *lex loci delicti* ("place of the harm"), *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722-23, 724 (N.C. Ct. App. 2010) (brackets omitted) under which the applicable law for defamation cases is the state of publication – *i.e.*, the state in which the allegedly defamatory statements "were allegedly made." *See Verona v. U.S. Bancorp*, 2011 WL 1252935, at *10 & n.6 (E.D.N.C. Mar. 29, 2011). Buhl lives and works in New York. The Subpoena about which she wrote was issued and served in New York. New York is home to the stock exchanges and financial investing institutions that are relevant to Plaintiff's Complaint and it is in all likelihood the location of any purported harm suffered by Honig, who describes himself as a professional investor. Compl. ¶ 44. Accordingly, the law of New York applies to Honig's claims. In any event, the elements of defamation under North Carolina law are essentially identical, and would not yield a different result in this case. *See Moore v. Cox*, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004).

statements, when read in proper context, are either not capable of being construed as "false," are privileged, or are not susceptible to defamatory meaning.

1.    **Buhl's Statements About Government Investigations and Honig's Alleged Trading Practices are Substantially Accurate Reports of Government Proceedings**

Buhl's statements about the government investigations into Honig and about Honig's alleged trading practices (Compl. ¶¶ 24(a)-(c)), (e)-(g), 27, 32(a)-(b)) are not actionable because they are substantially true reports about judicial and regulatory proceedings. A substantially accurate report of judicial, legislative, or other official proceedings falls under the fair report privilege and cannot be the basis for a defamation action. *See* N.Y. Civ. Rights Law § 74 ("A civil action cannot be maintained against any person . . . for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding[.]"); *Desmond v. News & Observer Pub. Co.*, 241 N.C. App. 10, 25 (N.C. Ct. App. 2015), *appeal dismissed, review denied*, 776 S.E.2d 195 (N.C. 2015) ("the press has a privilege to report on such judicial proceedings, provided the reporting offers a substantially accurate account"). In order for the "report to be characterized as 'fair and true' within the meaning of the [N.Y.] statute … it is enough that the substance of the article be substantially accurate." *See Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67 (N.Y. 1979). *See also Desmond*, 241 N.C. App. at 26 ("Under the fair report privilege, '[t]he law does not require absolute accuracy in reporting . . . It is sufficient if it conveys to the persons who read it a substantially correct account of the proceedings.'").

19

Plaintiff claims it was defamatory for Buhl to write that he engages in "tons of questionable pump and dump deals." (Compl. ¶ 24(g).) What Buhl actually wrote in her post was: "Honig has a SEC deal lawyer . . . who has been able to keep the SEC at bay in tons of questionable pump and dump deals Honig invested in." (*Id.* Ex. C.) Honig claims it was defamatory for Buhl to write that he "uses other people to run a company he is secretly controlling and pays stock pumpers to tout the company without disclosure." (*Id.* ¶ 24(e)) What Buhl actually wrote in her post was: "I first reported on Honig's *alleged* illegal actions in my [May 26, 2016 post about Gregg Jaclin]. The central theme of bad behavior is Barry uses other people to run a company that he is secretly controlling and pays stock pumpers to tout the company without disclosure." (*Id.* Ex. C) (emphasis added). Honig claims it was defamatory for Buhl to write that he "runs things behind the scene." (*Id.* ¶ 24(f)). What Buhl actually wrote in her post was that readers could see for themselves "in a DOJ plea deal" made by one of Honig's associates "how Honig *allegedly* runs things behind the scene." (*Id.* Ex. C) (emphasis added).

The statements that Honig allegedly runs things behind the scene, that he is alleged to have used other people to run a company that he secretly controlled, that he is alleged to have paid "stock pumpers," that he invested in questionable "pump and dump deals," and that the California DOJ was interested in Honig's investment activities are substantially true characterizations of allegations made in judicial proceedings. We know they are true because immediately after writing these statements, Buhl provided a link to a plea deal entered into by one of Honig's associates – in an action brought by the

20

Department of Justice, Northern District of California – wherein the associate *alleged* that Honig propped him up as the CEO of a company that was in fact controlled by Honig, that Honig caused him to retain and compensate a third party to pump up the company's stock price, and that the associate essentially engaged in a pump and dump scheme "[a]t Honig's direction." (Complaint Exs. C at p. 3 of 11 and D at p. 2 of 9 (hyperlink to Plea Agreement of Joe Noel in *U.S. v. Noel*, Case 3:14-CR-00264 (N.D. Cal. 2014) (ECF 11), attached as Ex. 2 to Wolff Decl.).

Even if Buhl had not provided a link to the plea deal, her statements about Honig's trading practices and the federal government's interest in those practices – would still be privileged as a fair and accurate report of the judicial proceedings. N.Y. Civ. Rights Law § 74; *Russian Am. Found., Inc. v. Daily News, L.P.*, 109 A.D.3d 410, 413 (1st Dep't 2013) (photograph caption was privileged even where it could inaccurately "imply that [plaintiff] received taxpayer grants for her personal use, rather than on [nonprofit's] behalf."); *Desmond*, 241 N.C. App. at 26 ("Under the fair report privilege, "[t]he law does not require absolute accuracy in reporting"). The fact that she also included a direct link to documents filed in a Northern District of California DOJ action provides an extra layer of protection because New York courts have routinely found that online publications contain protected opinions when they provide readers with the primary sources upon which the publication is based. *See Seldon v. Compass Restaurant*, No. 103050/11, 2012 WL 5363518 (Sup. Ct. N.Y. Cty. Oct. 21, 2012) (email calling plaintiff a "serial suer" with hyperlinks to websites supporting the accusation disclosed underlying

facts and was a nonactionable opinion); *Nanoviricides, Inc. v. Seeking Alpha, Inc.*, No. 151908/2014, 2014 WL 2930753 (Sup. Ct. N.Y. Cty. June 26, 2014) (accusations of corporate misconduct supported by hyperlinks to source material were pure opinion). Buhl's characterizations of Honig's trading practices cannot be construed as defamatory because her website "giv[e] readers the opportunity to review the underlying 'facts' and form their own opinions." *Id*. at *5.

Buhl's statements that Honig was a lead "subject" or "target"[6] of the SEC Subpoena and that "a large portion" or "90%" of the SEC's questions were about Honig (Compl. ¶¶ 24(a)-(c)) are likewise privileged as fair and accurate reports of an official proceeding. Of the nine individuals whose communications were requested by the SEC Subpoena (Complaint Ex. B at p. 8), one is Honig himself and four others are individuals that Honig has identified as people with whom he has co-invested. *See* Wolff Decl. Ex. 1. Of the eleven entities whose communications were sought in the SEC Subpoena (Complaint Ex. B at p. 7), seven are companies Honig has identified as related to his investments. *See* Wolff Decl. Ex 1. Accordingly, Buhl's statement that "a large portion of the SEC's questions are centered on Barry Honig, his company, and people he invests with" and her report that Honig was the "subject" or "target" of this Subpoena are substantially accurate and protected by the fair report privilege. *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 369 (S.D.N.Y. 1998) ("statements that [plaintiff] was

---

[6] The original post was updated the same day it was first posted to change the word "target" to "subject;" Buhl explained, she had *"*spoken with people who have seen the subpoena again and clarified a sentence in the story[.]" (Compl. ¶ 27 & Ex. D.)

the "main" or "prime" suspect are substantially true in light of his admission that he was "a" suspect"). *See also Holy Spirit Ass'n*, 49 N.Y.2d at 66 ("a newspaper article is, by its very nature, a condensed report of events which must, of necessity, reflect to some degree the subjective viewpoint of its author."); *Lacomb v. Jacksonville Daily News Co.*, 142 N.C. App. 511, 512 (2001) ("The law does not require absolute accuracy in reporting. . . . It is sufficient if it conveys to the persons who read it a substantially correct account of the proceedings.") (quoting *Kinloch v. News & Observer Pub. Co.*, 314 F. Supp. 602, 606 (E.D.N.C. 1969), affirmed, 427 F.2d 350 (4th Cir. 1970)). Moreover, what Buhl actually wrote in the challenged post was: "*According to insiders who saw the SEC Subpoena, 90% of the regulator's questions are about Honig.*" Complaint Ex. C. This statement cannot be construed as a false statement of fact because according to Plaintiff's own pleading it is literally true. (*See* Compl. ¶ 22 alleging that "Ladd . . . stated to Buhl that . . . 90% of the SEC's questions were about Plaintiff.")

**2. The Majority of Buhl's Statements are Either Pure Opinion or Imprecise, Hyperbolic Commentary that Cannot be Actionable**

The majority of the so-called "Buhl Defamatory Statements" are opinions or imprecise characterizations that are not capable of being objectively characterized as true or false and thus cannot be defamatory. Statements of pure opinion or statements that are hyperbolic, loose or rhetorical are not susceptible of defamatory import because they

23

cannot be objectively characterized as true or false. *See 600 W. 115th Street Corp. v. Von Gutfeld,* 80 N.Y.2d 130, 138 (N.Y. 1992).

"Under either Federal or State law, the dispositive question is whether a reasonable listener . . . could have concluded that [Defendant] was conveying facts about the plaintiff." *Id.* To determine whether a statement would have been perceived by a reasonable listener as conveying facts about the plaintiff, courts consider: (1) "whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous;" (2) "whether the statement is capable of being objectively characterized as true or false;" (3) whether "the full context of the communication in which the statement appears" suggests it was opinion or fact; and (4) whether "the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Steinhilber v. Alphonse*, 508 N.Y.S.2d 901, 905 (N.Y. 1986).

In other words, when determining whether a statement is one of actionable fact or non-actionable opinion, a court looks at the specific language at issue, "the ***whole communication***, its tone and apparent purpose," as well as the ***broader social context*** in which the statement appeared "to determine whether a reasonable person would view them as expressing or implying any facts." *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 249-54 (N.Y. 1991).

24

Both the specific language at issue and the tone and format of Buhl's website indicate that most of the "Buhl Defamatory Statements" are opinions, characterizing the underlying facts disclosed in her article. Selectively excerpting Buhl's post, Honig claims that Buhl defamed him by writing that "the regulator is looking for evidence that these people [including Honig] traded as a group and therefore became beneficial owners of the stock." (Compl. ¶ 35.) But what Buhl actually wrote in her post was: "It's **my belief** after a decade of proven investigative reporting and based on knowing how to read a SEC subpoena, along with interviews with people involved in the transaction and past investing transactions of Barry Honig, that the regulator is looking for evidence that these people traded as a group and therefore became beneficial owners of the stock." (Complaint Ex. F) (emphasis added). This statement is pure opinion, accompanied by a recitation of the grounds upon which it is based, and therefore cannot be the basis of a defamation claim. *Gross*, 623 N.E.2d 1163 (N.Y. 1993) ("a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as a conjecture."); *Silvercorp Metals, Inc. v. Anthion Mgmt. LLC*, 959 N.Y.S.2d 92, 2012 N.Y. Slip Op. 51569, at *9 (N.Y. Sup. Ct. Aug. 16, 2012) (the use of qualifying words like "believe" further "demonstrate[d] that it was an expression of opinion").

Likewise, Buhl's speculative comments that "it's possible more players in the microcap space will be arrested by the DOJ or charged with an enforcement action by the SEC," that "[o]ne name that comes to mind is microcap financer Barry Honig," and that "[m]arket participants sit on the side line to see if the SEC can get the goods to finally

25

charge Barry Honig" (Compl. ¶¶ 17-18, 24(j)), could not have been construed by any reasonable reader as anything more than Buhl's opinion that Honig *might* be charged by the government. *See Immuno*, 77 N.Y.2d at 255 ("the writer's presumptions and predictions as to what 'appeared to be' or 'might well be' or 'could well happen' . . . would not have been viewed by the average reader of the Journal as conveying actual facts"). This conclusion follows even more easily for the allegedly defamatory statement identified in in paragraph 24(i) of the Complaint. There, Honig complains that Buhl defamed him by writing that he "acted as an affiliate in trading MGT stock" (*id.* ¶ 24(i)), but what Buhl actually wrote in her post was: "***What we don't know*** is whether Barry . . . acted as an affiliate in trading MGT stock[.]" (Complaint Ex. C) (emphasis added). This statement does not come close to stating a fact. It merely poses an unanswered question. As such, it cannot possibly be construed as defamatory. *See Immuno*, 77 N.Y.2d at 255.

Buhl's statements that Honig was the "subject" or "target" of the MGT SEC Subpoena and that "90%" or "a large portion" of the SEC's questions were about Honig, his company, and people who invest with Honig (Compl. ¶¶ 24(a)-(c), Ex. D) are also not actionable because these are "loose" and "hyperbolic" terms that lack fixed meanings and therefore would not be construed by reasonable readers as statements of fact. Language that is imprecise and hyperbolic is not capable of being proven true or false and is thus not actionable. *See, e.g., Dillon*, 261 A.D.2d at 38 ("Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable."); *Craven v. COPE*, 656 S.E.2d 729, 732 (N.C. Ct. App. 2008) ("In determining whether a statement can be

26

reasonably interpreted as stating actual facts about an individual, courts look to the circumstances in which the statement is made. Specifically, we consider whether the language used is loose, figurative, or hyperbolic language, as well as the general tenor of the article.") (internal citation omitted). Because blogs, internet chat rooms, and other places of online dialogue "are often the repository of" such "casual, emotive, and imprecise speech," New York courts have consistently treated statements made in such online fora as presumptive statements of opinion rather than fact. *See Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 414-15 (1st Dep't 2011) (observing that "online recipients of [offensive] statements do not necessarily attribute the same level of credence to the statements [that] they would accord to statements made in other contexts").

For example, in *Silvercorp Metals*, plaintiff sued websites for publishing letters and postings alleging that it had engaged in "massive accounting fraud," had made numerous material misstatements in its regulatory filings, had inflated its earnings, income and production levels, and was trading at an inflated share price. 2012 N.Y. Slip Op. 51569, at *9. Concluding that the challenged statements were protected opinions, the court took into account contextual factors, including: that readers give "less credence" to comments made on the internet and that the use of qualifying words like "potential" and "believe" further "demonstrate[d] that it was an expression of opinion." 2012 N.Y. Slip Op. 51569, at *11 (internal citations omitted). The court held that when viewed "in the

full context of letters and postings in the broader social context in which the letters and posting were published," such allegations would have been understood as opinion.

Here, the allegedly defamatory statements were published on a blog named after the author herself, which styles Buhl as a "smashmouth" journalist and frames the website as a forum for no-holds-barred commentary. The statements Honig challenges appear amongst numerous colloquial and hyperbolic phrases that signal to readers that they are reading reports colored by opinion. For example, the primary article to which Plaintiff objects also observes that the New York Stock Exchange was "kind of a jerk," and that there was "a big clusterf-k of unknowns for the company and shareholders." (*See* Complaint Exs. C, D.)

In such context, no reasonable reader would expect that exactly 90% of the "questions" in the SEC Subpoena were about Honig or that being the "subject" or "target" of an SEC subpoena was some sort of definitive fact. Rather, reasonable readers would understand that Buhl was opining about whose conduct she believed the SEC was investigating and conveying her views with her characteristic rhetorical flair. *See 600 West 115th St. Corp.*, 80 N.Y.2d at 144-45 (statement that an agreement "is as fraudulent as you can get and it smells of bribery and corruption" was hyperbole and not actionable as defamation); *see also Daniels v. Metro Magazine Holding Co., L.L.C.*, 634 S.E.2d 586, 591 (N.C. Ct. App. 2006) (dismissing defamation claims based on hyperbole). Indeed, the

28

term "target" does not have a fixed meaning in the context of an SEC investigation;[7] as the SEC Enforcement Manual explains, the "SEC investigative process does not have targets." (Excerpts from Enforcement Manual of the Securities and Exchange Commission – Division of Enforcement, dated October 28, 2016, filed as Exhibit H to Laverne Decl., Dkt. 21-8 at § 3.3.2.)[8]  And, as set forth above, the Subpoena requests communications and documents concerning Mr. Honig himself as well as six individuals with whom, and seven companies with which, Mr. Honig invests.  Thus, these statements that the document requests relating to Honig and his business associates were "90%" or "a large portion" about Honig and that Honig was the "subject" or "target" of the SEC investigation are not defamation, but, at most, exaggeration or hyperbole.

### 3.    The Remaining Statements are Not Susceptible of Defamatory Meaning Because They Are Not Derogatory

The remaining "Buhl Defamatory Statements" cannot be defamatory because they would not be understood by a reasonable reader as derogatory. A "statement will be found to be defamatory only if it "tend[s] to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to

---

[7] The District Court in the New York Action remarked: "What's interesting to me is that for purposes of the Department of Justice, those are terms of art. And they have very defined meanings. That may not be true for the SEC. I suspect it's not." (Laverne Decl. Ex. B, Dkt. 21-2 at 11:5-8.)

[8] Excerpts from SEC Enforcement Manual, *available at* https://www.sec.gov/divisions/enforce/enforcementmanual.pdf (last accessed July 5, 2017). The Court may consider agency documents of public record at the motion-to-dismiss stage. *See, e.g.*, *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

induce an evil opinion of one." *See Ello v. Singh*, 531 F. Supp. 2d 552, 578 (S.D.N.Y. 2007. It is not derogatory to state that someone "has been calling SEC enforcement defense lawyers . . . looking for representation" or that he has been "pulling out the big legal guns," (Compl. ¶¶ 24(d), 28(a)). *See, e.g. Associated Press v. Cook*, 17 S.W.3d 447, 456 n. 8 (Tex. App. 2000) (statement that plaintiff invoked his Fifth Amendment privilege was not defamatory as a matter of law). It does not expose someone to public shame to say that he "refused to return a call and email for comment" from a reporter. *Chapin v. Greve*, 787 F. Supp. 557, 566 (E.D. Va. 1992), *aff'd*, *Chapin v. Knight-Ridder*, 993 F.2d 1087 (4th Cir. 1987) ("[R]efusing to answer reporters' questions is commonplace and certainly cannot reasonably be said to tarnish one's reputation."). Likewise, that Honig's counsel "has been able to keep the SEC at bay" (*id.* ¶ 24(h)) does not degrade him; it is an "indefinite and ambiguous" statement of "rhetorical hyperbole" that cannot constitute an actionable misstatement and, in any event, actually suggests exculpation. *See 600 W. 115th Street Corp.*, 80 N.Y.2d at 141-42 (statements that lease was "as fraudulent as you can get and . . . smells of bribery and corruption" was too "colloquial and loose" to convey defamatory import). Accordingly the statements identified in paragraphs 24(d),(h), 28(a)-(b) can support a defamation claim.

> **B.** **The Complaint Fails to State Claims for Intentional Interference with Prospective Economic Advantage, Violation of the NCUDTPA, or Civil Conspiracy**

Honig's non-defamation claims cannot survive because they are entirely duplicative of his deficient defamation claim. *Chao v. Mount Sinai Hosp.*, 476 F. App'x

892, 895 (2d Cir. 2012) (affirming dismissal of tort claims as duplicative of defamation claims "where the entire injury complained of by plaintiff flows from the effect on his reputation."); *Craven*, 656 S.E.2d at 734 (affirming dismissal of NCUDTPA claims where they were predicated on same facts as dismissed defamation claims). Even if not duplicative, as set forth in detail in Sections II(C), (D), and (E) (pages 23-30) of the MGT Brief, the non-defamation claims would fail as inadequately pled.

Honig's claim for intentional interference with prospective economic advantage should be dismissed because the Complaint fails to identify any business relationship with which the defendants interfered. *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997) (plaintiff must identify a specific third party with whom he had business relations and plead that Defendant *targeted* that party and caused it to refrain from doing business with plaintiff).

The claim for violation of the NCUDTPA should be dismissed because North Carolina law does not apply to this case, and Plaintiff does not allege he suffered any harm in North Carolina. *See Nobles v. Boyd*, No. 7:14-CV-214-FL, 2015 WL 2165962, at *32 (E.D.N.C. May 7, 2015) ("[P]laintiff suffered injury in California only. Thus, the UDTPA cannot apply to this case.")

And the conspiracy claim should be dismissed because the substantive claims upon which it is based are all deficient and neither New York nor North Carolina law recognizes a freestanding action for civil conspiracy. *Dickinson v. Igoni*, 908 N.Y.S.2d 85, 88 (N.Y. App. Div., 2d Dep't 2010); *Henderson v. LeBauer*, 399 S.E.2d 142, 145

(N.C. Ct. App. 1991).  Moreover, the Complaint's allegations that Buhl conspired with Ladd to harm Honig are purely speculative and conclusory. *See, e.g.*, *Twombly*, 550 U.S. at 557 ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed as to Buhl with prejudice pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6).

[REMAINDER OF PAGE INTENTIONALLY BLANK]

Respectfully submitted this 5th day of July, 2017.


**BROOKS, PIERCE, McLENDON,**              **SHER TREMONTE LLP**
**HUMPHREY & LEONARD, LLP**

By: /s/ Eric M. David                          By: /s/ Michael Tremonte
Eric M. David                                    Michael Tremonte
N.C. Bar No. 38118                          Michael Tremonte*
Email: edavid@brookspierce.com       New York State Bar No. 2929164
1700 Wells Fargo Capitol Center         Email: mtremonte@shertremonte.com
150 Fayetteville Street                   90 Broad Street, 23rd Floor
Raleigh, NC 27601                       New York, New York 10004
Tel: 919.573.6203                        Tel: 212.202.2600
Facsimile: 336.232.9103             Facsimile: 212.202.4156


Kimberly M. Marston                  By: /s/ Erica A. Wolff
N.C. Bar No. 46231                        Erica A. Wolff
Email: kmarston@brookspierce.com     Erica A. Wolff*
2000 Renaissance Plaza               New York State Bar No. 4846424
230 North Elm Street                    Email: ewolff@shertremonte.com
Greensboro, NC 27401               90 Broad Street, 23rd Floor
Tel: 336.373.8850                      New York, New York 10004
Facsimile: 336.378.1001             Tel: 212.202.2600
                                       Facsimile: 212.202.4156

                                       *LR 83.1 (d) Special Appearance

*Attorneys for Defendant Teri Buhl*

33

## CERTIFICATION OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel certifies that the foregoing brief complies with Local Rule 7.3(d)(1) and is no more than 9,000 words, excluding the case caption, table of contents, table of authorities, signature lines, and certificate of service.

:

/s/ Erica A. Wolff
Erica A. Wolff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to the following:

David E. Fox
Moore & Van Allen
P.O. Box 13706
Research Triangle Park, NC 27709
foxd@mvalaw.com

Charles J. Harder
Ryan J. Stonerock
Harder Mirell & Abrams LLP
132 S Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212
charder@hmafirm.com
rstonerock@hmafirm.com

*Attorneys for Plaintiff*

Darren Laverne
Jeffrey W. Davis
John P. Coffey
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
dlaverne@kramerlevin.com
jdavis@kramerlevin.com
scoffey@kramerlevin.com

Erik R. Zimmerman
Robinson, Bradshaw & Hinson, P.A.
1450 Raleigh Road, Ste. 100
Chapel Hill, NC 27517
ezimmerman@robinsonbradshw.com

Jonathan Christopher Krisko
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, NC 28246
jkrisko@rbh.com

*Attorneys for Defendants MGT Capital Investments, Inc. and Robert Ladd*

This the 5th day of July, 2017.

/s/ Erica A. Wolff
Erica A. Wolff
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Phone: (212) 202-2600
Email: ewolff@shertremonte.com

35