# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BARRY HONIG, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-00184-CCE-LPA |
| | ) | |
| ROBERT LADD, an individual; MGT | ) | |
| CAPITAL INVESTMENTS, INC., | ) | |
| a Delaware corporation; TERI BUHL, | ) | |
| an individual; and DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## BRIEF IN OPPOSITION TO DEFENDANTS ROBERT LADD AND MGT CAPITAL INVESTMENTS, INC.'S MOTION TO DISMISS

David E. Fox, Esq.
N.C. State Bar No. 10332
MOORE & VAN ALLEN PLLC
3015 Carrington Mill Blvd., Suite 400
Morrisville, North Carolina 28202-4003
Tel: (704) 331-1000
Fax: (704) 331-1159
Email: davidfox@mvalaw.com

Charles J. Harder, Esq.*
Ryan J. Stonerock, Esq.*
HARDER MIRELL & ABRAMS LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel: (424) 203-1600
Fax: (424) 203-1601
Email: charder@hmafirm.com
        rstonerock@hmafirm.com
*L.R.83.1(d) Special Appearance

*Counsel for Plaintiff*

{00082349;2}

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

SUMMARY OF RELEVANT FACTS .................................................................... 3

ARGUMENT ............................................................................................................. 5

    1.     The motion to dismiss for improper venue should be denied. ..................... 5

        A.     Legal standard for motions to dismiss for improper venue. .............. 5

        B.     Venue is proper in this Court. ........................................................... 6

             i.     The Articles were published in this District. ........................... 7

             ii.    Ladd/MGT were located in this District during the conspiracy. ............................................................................. 8

             iii.   Honig's filing of the prior action is irrelevant. ...................... 10

        C.     The Court should permit discovery. ................................................. 11

        D.     If the Court is inclined to grant the motion, it should transfer this case to Florida. ........................................................................ 12

    2.     Plaintiff's claims are adequately pled. ....................................................... 13

        A.     Standards on motions to dismiss for failure to state a claim. ............ 13

        B.     The Court should apply the substantive law of North Carolina or, alternatively, Florida. .................................................................. 13

        C.     Plaintiff has adequately alleged conduct by Ladd. ........................... 17

        D.     Plaintiff has adequately alleged facts regarding MGT. .................... 20

        E.     Plaintiff has adequately alleged a claim for defamation. ................. 21

             i.     The defamatory statements are not opinion, hyperbole, or exaggeration. ..................................................................... 21

             ii.    The Statements are *per se* defamatory. ................................ 25

        F.     Plaintiff has adequately alleged a conspiracy. .................................. 28

        G.     Plaintiff has adequately alleged a claim for intentional

interference............................................................................................ 30

H.      Plaintiff has adequately alleged a claim for unfair
        competition...................................................................................... 31

I.      Plaintiff should be granted leave to amend, if necessary. ............... 32

CONCLUSION ................................................................................................. 32

CERTIFICATE OF WORD COUNT .............................................................. 34

# TABLE OF AUTHORITIES

Page(s)

## Cases

*600 West 115th St. Corp. v. Von Gutfeld*,
  603 N.E.2d 930 (N.Y. 1992)...............................................................................25

*Aggarao v. MOL Ship Mgmt. Co.*,
  675 F.3d 355 (4th Cir. 2012) ...............................................................................5

*Akpinar v. Moran*,
  922 N.Y.S.2d 8 (N.Y. App. Div., 1st Dep't 2011) .............................................26

*Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*,
  640 F. Supp. 1411 (E.D.N.C. 1986)...................................................................14

*Ausley v. Bishop*,
  133 N.C.App. 210, 515 S.E.2d 72 (1999)...........................................................26

*Badame v. Lampke*,
  242 N.C. 755, 89 S.E.2d 466 (1955)...........................................................25, 26

*Bell v. Rosen*,
  No. CV214-127, 2015 WL 5595806 (S.D. Ga. Sept. 22, 2015).............................7

*Biospherics, Inc. v. Forbes*,
  151 F.3d 180 (4th Cir. 1998) ...............................................................................22

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) .............................................................................13

*Brown v. Ferguson Enters., Inc.*,
  2012 WL 6185310 (D. Md. Dec. 11, 2012).........................................................19

*Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.*,
  No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014 (M.D. Fla. Aug. 27, 2008).................8, 12

*Caster v. Hennessey*,
  781 F.2d 1569 (11th Cir. 1986) ...........................................................................19

*Clark Material Handling, Inc. v. Toyota Material Handling, U.S.A., Inc.*,
  No. 3:12CV510, 2012 WL 6107682 (W.D.N.C. Dec. 10, 2012) ...........................17

*Craven v. Cope*,
   188 N.C.App. 814, 656 S.E.2d 729 (2008)...................................................................24

*Cummings v. Lumbee Tribe of N. Carolina*,
   590 F. Supp. 2d 769 (E.D.N.C. 2008)......................................................................21

*Daniels v. Metro Magazine Holding Co., L.L.C.*,
   634 S.E.2d 586 (N.C. Ct. App. 2006).......................................................................25

*Denning-Boyles v. WCES, Inc.*,
   123 N.C.App. 409, 473 S.E.2d 38 (1996)..................................................................20

*Diagnostic Devices, Inc. v. Pharma Supply, Inc.*,
   2009 WL 3633888 (W.D.N.C. Oct. 30, 2009)...........................................................19

*Doe v. St. John's Episcopal Par. Day Sch., Inc.*,
   997 F.Supp.2d 1279 (M.D. Fla. 2014).......................................................................20

*Eakin v. Rosen*,
   No. CV215-42, 2015 WL 8757062 (S.D. Ga. Dec. 11, 2015)..................7, 8, 12, 15

*Edmondson v. Am. Motorcycle Ass'n, Inc.*,
   No. 99-1290, 2001 WL 91104 (4th Cir. 2001) ..........................................................14

*Eli Glob., LLC v. Heavner*,
   794 S.E.2d 820 (N.C. Ct. App. 2016) .......................................................................24

*Ellis v. N. Star Co.*,
   326 N.C. 219, 388 S.E.2d 127 (1990)..................................................................26, 31

*Erickson v. Pardus*,
   551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) .....................13

*First of Michigan Corp. v. Bramlet*,
   141 F.3d 260 (6th Cir. 1998) ....................................................................................11

*Florida Fern Growers Ass'n v. Concerned Citizens of Putnam County*,
   616 So.2d 562 (Fla. 5th DCA 1993) .........................................................................30

*Ford v. Rowland*,
   562 So. 2d 731 (Fla. 1st DCA 1990) .........................................................................24

*Francesca's Collections, Inc. v. Medina*,
   2011 WL 3925062 (S.D. Tex. Sept. 7, 2011) ..............................................................8

*From v. Tallahassee Democrat, Inc.*,
   400 So.2d 52 (Fla. 1st DCA 1981) ...........................................................................22

*Fuqua Homes, Inc. v. Beattie*,
  388 F.3d 618 (8th Cir. 2004) ...........................................................................16

*Godfredson v. JBC Legal Grp.*,
  P.C., 387 F. Supp. 2d 543 (E.D.N.C. 2005)........................................................5

*Hayashi v. Red Wing Peat Corp.*,
  396 F.2d 13 (9th Cir. 1968) ...............................................................................11

*Henderson v. LeBauer*,
  101 N.C. App. 255, 399 S.E.2d 142 (1991)......................................................30

*Jameson Land Co., LLC v. Mosaic Fertilizer, LLC*,
  No. 815CV00409T27EAJ, 2016 WL 7206122 (M.D. Fla. Feb. 5, 2016) ..............27

*Johnson v. Beverly-Hanks & Associates, Inc.*,
  97 N.C.App. 335, 338 S.E.2d 584 (1990), *disc. review on additional issues*
  *denied*, 326 N.C. 482, 392 S.E.2d 90 (1990)...................................................29

*Johnson v. Bollinger*,
  86 N.C.App. 1, 356 S.E.2d 378 (1987)..............................................................27

*Johnson v. Wal-Mart Stores East, L.P.*,
  2011 WL 2183155 (W.D.N.C. June 6, 2011) ....................................................19

*Kehrer v. Fields*,
  No. 5:11-CV-260-FL, 2011 WL 6965714 (E.D.N.C. Nov. 21, 2011)....................19

*Kolchinsky v. Moody's Corp.*,
  2012 WL 639162 (S.D.N.Y. Feb. 28, 2012)..................................................26, 27

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) .............................................................................13

*Mead v. Gaston Cty. Police Dep't*,
  No. 0:11-CV-3017-JFA, 2012 WL 631850 (D. S.C. Feb. 27, 2012)....................11

*Miller v. Asensio*,
  101 F.Supp. 2d 395 (D.S.C. 2000).......................................................................8

*Mitrano v. Hawes*,
  377 F.3d 402 (4th Cir. 2004) .....................................................................5, 6, 11

*Moore v. Cox*,
  341 F. Supp. 2d 570 (M.D.N.C. 2004) ..............................................................27

*Muse v. Morrison*,
  234 N.C. 195, 66 S.E.2d 783 (1951)..................................................................29

*Mylan Labs, Inc. v. Matkar*,
7 F.3d 1130 (4th Cir. 1993) ...................................................................................13

*Nobles v. Boyd*,
No. 7:14-CV-214-FL, 2015 WL 2165962 (E.D.N.C. May 8, 2015) ......................................22

*Ostrzenski v. Seigel*,
177 F.3d 245 (4th Cir. 1999) .................................................................................32

*Paulson v. Cosmetic Dermatology, Inc.*,
No. CV 17-20094-CIV, 2017 WL 2484197 (S.D. Fla. June 8, 2017) ...................................26

*Pecoraro v. Sky Ranch for Boys, Inc.*,
340 F.3d 558 (8th Cir. 2003) ............................................................................6, 11

*R.J. Reynolds Tobacco Co. v. Mkt. Basket Food Stores, Inc.*,
No. CIV.A.5:05CV253-V, 2006 WL 2417269 (W.D.N.C. Aug. 21, 2006) ...........................7

*RCDI Const., Inc. v. Spaceplan/Architecture, Planning & Interiors, P.A.*,
148 F. Supp. 2d 607 (W.D.N.C.2001) .....................................................................30

*Riepe v. Sarstedt, Inc.*,
2010 WL 3326691 (W.D.N.C. Aug. 23, 2010).............................................................21

*Robertson v. Sea Pines Real Estate Cos., Inc.*,
679 F.3d 278 (4th Cir. 2012) ...........................................................................18, 28

*Santana, Inc. v. Levi Strauss & Co.*,
674 F.2d 269 (4th Cir. 1982) .................................................................................15

*Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC*,
No. 8:09-CV-1885-T-23MAP, 2009 WL 3822773 (M.D. Fla. Nov. 16, 2009) .....................12

*SmithKline Beecham Corp. v. Abbott Labs.*,
No. 1:15CV360, 2017 WL 1051123 (M.D.N.C. Mar. 20, 2017) ...........................................14

*Snyder v. Phelps*,
580 F.3d 206 (4th Cir. 2009) .................................................................................22

*Strickland v. Hedrick*,
194 N.C.App. 1, 669 S.E.2d 61 (2008)......................................................................28

*Terry v. Swift Transportation*,
No. 1:16CV256, 2017 WL 1013074 (M.D.N.C. Mar. 14, 2017), *report and
recommendation adopted sub nom*, 2017 WL 2881141 (M.D.N.C. July 6,
2017) ...........................................................................................................15

*Walter v. Jet Aviation Flight Servs., Inc.*,
  No. 9:16-CV-81238, 2016 WL 7116641 (S.D. Fla. Dec. 7, 2016)..........................................19

*Walters v. Blankenship*,
  931 So. 2d 137 (Fla. 5th DCA 2006) ........................................................................................28

*Wells v. Liddy*,
  186 F.3d 505 (4th Cir. 1999) ....................................................................................................16

**Statutes**

28 U.S.C. § 1406 ............................................................................................................... 12

28 U.S.C.A. § 1391............................................................................................................. 6

Fed. R. Civ. P. Rule 15...................................................................................................... 32

**Other Authorities**

Restatement (Second) of Conflicts of Laws § 145 (1971) ................................................ 14

Restatement (Second) of Conflicts of Laws § 150 (1971) ................................................ 16

# INTRODUCTION

Plaintiff Barry Honig ("Plaintiff" or "Honig") is a private investor who is the victim of a conspiracy between defendants Robert Ladd ("Ladd"), MGT Capital Investments, Inc. ("MGT") (collectively "Ladd/MGT"), and Teri Buhl ("Buhl") (together with Ladd/MGT, "Defendants")[1] to publish a series of false and highly defamatory articles about Plaintiff. The articles, conceived of by Ladd/MGT, authored by Buhl, and published on Buhl's website, contain assertions that Plaintiff, among other things, is violating securities laws, is the "target" of a Securities and Exchange Commission ("SEC") investigation arising out of those violations, and that "90%" of a SEC subpoena served on MGT (the "Subpoena") is about Plaintiff. These statements, and many others, are unequivocally false. Ladd/MGT conspired to defame Honig in order to divert attention away from MGT as the target of the very SEC scrutiny that the articles falsely allege is directed at Honig and to boost the stock price of MGT, which had declined after MGT's disclosure of the Subpoena.

Honig filed this lawsuit to protect his reputation and hold Defendants liable for the damages their conduct has caused. Ladd/MGT now move to dismiss based on the arguments that (1) venue is improper and (2) Honig's claims fail as a matter of law. Both arguments should be rejected.

First, venue in this Court is proper because a substantial part of the events giving rise to Honig's claims occurred in this District. Ladd/MGT reside in this District now

---

[1] Defendant Buhl has filed a separate Motion to Dismiss. Honig's opposition is due on July 26, 2017.

and, contrary to their assertion, resided here during the entirety of their conspiracy to defame Honig.

Ladd/MGT argue that Honig engaged in forum-shopping after the court in his prior action against Buhl (*Honig v. Buhl* (S.D.N.Y.)) "made clear that it was skeptical of Honig's defamation claims." Ladd/MGT are incorrect. Honig dismissed the prior action only after learning of Ladd/MGT's involvement in the conspiracy and filed this action because Ladd/MGT are located here. Ladd/MGT also mischaracterize the court's statements in the prior action. In fact, that court made it clear that it believed Honig's case would survive a motion to dismiss, specifically stating that the "case is replete with legal and factual issues that will occupy all of us for several years."

Second, all of Honig's claims are properly pled. As detailed herein, Honig has adequately pled actionable defamatory statements attributed to Ladd/MGT, as well as his claims for conspiracy, intentional interference with prospective economic advantage, and unfair and deceptive trade practices.

Ladd/MGT's arguments to dismiss Honig's defamation claim should be rejected. Honig has alleged the defamatory statements with requisite particularity to put Ladd/MGT on notice of the claims against them. Honig has alleged the exact defamatory statements, the time frame made, and the parties involved – nothing more is required. Further, the defamatory statements are not opinion or hyperbole because they are assertions of verifiable fact. The statements are also defamatory *per se* because they impugn Honig's conduct within his profession as an investor and accuse him of criminal activity.

Honig has sufficiently alleged a claim for defamation against Ladd/MGT and, Honig's other claims likewise sufficiently allege tortious conduct by Ladd/MGT to impose liability on them. The Court should therefore deny their motion to dismiss in its entirety. Alternatively, Honig requests leave to amend.

## SUMMARY OF RELEVANT FACTS

Ladd is the President and CEO of MGT, a publicly-traded company in which Honig is a shareholder. Dkt. No. 1, Complaint at ¶ 1. Buhl is a self-styled "investigative journalist." *Id*. In an effort to divert attention away from MGT as the target of an SEC investigation, Defendants conspired to publish a series of false and highly defamatory articles about Honig. *See Id.* at ¶¶ 1-4.

On September 15, 2016, MGT was served with a non-public subpoena by the SEC ("Subpoena"). *Id.* at ¶ 19. On September 19, 2016, MGT issued a press release disclosing its receipt of the Subpoena. *Id.* at ¶ 20.

After its disclosure of the Subpoena, MGT's stock price suffered a substantial decline in value. *Id.* at ¶ 21. Thereafter, Defendants conspired to divert attention away from MGT as the target of the SEC investigation by falsely claiming that the investigation was aimed at Honig. *Id*. at ¶ 3. By trying to place the focus on Honig, Ladd/MGT sought to deceive the public into believing MGT was not the focus of the SEC investigation and that it was safe to purchase MGT's stock. *Id*. Ladd/MGT engaged in this distortion campaign in an attempt to boost the share price of MGT. *Id*.

More specifically, after MGT's receipt of the Subpoena, Defendants intentionally conspired to defame Honig in articles, which were published on Buhl's financial "news"

website, teribuhl.com (the "Website"). Dkt. No. 1, Complaint at ¶ 22. As part of this conspiracy, Ladd, for himself and MGT, stated to Buhl that (1) the Subpoena was targeted at Honig, (2) 90% of the SEC's questions were about Honig, and (3) Honig was the target of an SEC investigation into his trading and investing in MGT stock (the "Statements").[2] *Id.*

On or about September 23, 2016, Buhl published an article on the Website entitled "*Investor Barry Honig Target of SEC MGT Capital Subpoena*" (the "September 23, 2016 article"). *Id.* at ¶ 23 and Exhibit C thereto. The September 23, 2016 article contains each of the Statements, among other false and defamatory statements listed in the Complaint. *Id.* at ¶ 24.

The Statements were and are false and highly defamatory. In truth, the Subpoena mentions Honig's name only once in the twenty categories of documents to be produced by MGT, as part of a list that includes numerous other shareholders of MGT. *Id.* at ¶ 26. Honig is **not** the target of the Subpoena or an SEC investigation, nor is he the subject of 90 percent of the regulator's questions to MGT, as falsely stated by Defendants. *Id.*

Honig's counsel sent Buhl a letter demanding a full retraction and apology. Buhl refused, but did change the title of the September 23, 2016 article to "*Investor Barry Honig Subject of SEC MGT Capital Subpoena*" (replacing "Target" with "Subject"), an

_____

[2] Ladd/MGT are liable for all of Buhl's statements because of their conspiracy. However, in their motion, Ladd/MGT address only the three statements defined herein as the "Statements." Accordingly, Honig will focus on those statements in this opposition.

equally false statement misleading readers into the belief that Honig is the sole or primary focus of the Subpoena. *Id.* at ¶ 27 and Exhibit D thereto.

In furtherance of Defendants' conspiracy, on or about February 9, 2017, Buhl published another article on the Website entitled "*Here it is: that MGT Capital SEC Subpoena*" (the "February 9, 2017 article"). *Id.* at ¶ 34 and Exhibit F thereto. In connection with Buhl's publication of the February 9, 2017 article, Ladd/MGT sent a copy of the Subpoena to Buhl, which she then posted along with the article. *Id.*

The February 9, 2017 article republished several of the false and defamatory statements in the September 23, 2016 article. In total, Buhl published four articles defaming Honig, collectively referred to herein as the "Articles."[3]

The Articles have injured Honig in his trade and profession and are continuing to cause him substantial harm. *Id.* at ¶ 6.

## ARGUMENT

### 1. The motion to dismiss for improper venue should be denied.

#### A. Legal standard for motions to dismiss for improper venue.

"To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). "In assessing whether there has been a prima facie venue showing, we view the facts in the light most favorable to the plaintiff." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012); *see also Godfredson v. JBC*

---

[3] The fourth article, entitled "*Microcap Attorney Jaclin's Co-Conspirator Turned DOJ Witness in Shell Factory Scheme*," was published to the Website on May 26, 2016.

*Legal Grp.*, P.C., 387 F. Supp. 2d 543, 547 (E.D.N.C. 2005) (stating that "the court must draw all inferences in favor of the plaintiff").

      B.  <u>Venue is proper in this Court.</u>

A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C.A. § 1391(b)(2). "Under [this] statute, it is possible for venue to be proper in more than one judicial district." *Mitrano*, 377 F.3d at 405 (citations omitted). "In making our determination, we do not ask which district among two or more potential forums is the 'best' venue, rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003).

"Additionally, in determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review 'the entire sequence of events underlying the claim.'" *Mitrano*, 377 F.3d at 405 (citations omitted).

Venue is proper in this District because a substantial part of the events giving rise to Honig's claims occurred here. Defendants conducted their conspiracy from this District and received the benefits of that conspiracy in this District. Ladd resides in, and is a citizen and domiciliary of, Chapel Hill, North Carolina. Dkt. No. 1, Complaint at ¶ 8; Declaration of Ryan Stonerock ("Stonerock Decl."), filed concurrently herewith, Exhibits A and B. MGT is a Delaware corporation with its principal place of business in Durham,

North Carolina. *Id.* at ¶ 9.

Thus, the conspiracy to defame Honig was primarily focused in this District, and Honig's claims are based upon substantial events in this District. Moreover, Buhl's involvement is based upon her direct communications with North Carolina residents, Ladd/MGT. Venue therefore is proper in this Court. *See R.J. Reynolds Tobacco Co. v. Mkt. Basket Food Stores, Inc.*, No. CIV.A.5:05CV253-V, 2006 WL 2417269, at *4 (W.D.N.C. Aug. 21, 2006) (holding that a substantial part of the events giving rise to plaintiff's claims occurred in the forum where plaintiff alleges that a conspiracy is "primarily focused").

### i. The Articles were published in this District.

The Articles, incorporating the Statements made by Ladd/MGT in this District, also were published to people in this District. *Eakin v. Rosen*, No. CV215-42, 2015 WL 8757062 (S.D. Ga. Dec. 11, 2015), involved a similar motion to dismiss for improper venue based on alleged defamatory statements made in news stories published and broadcast on the internet. The court held:

> While Plaintiffs do not specifically state that any particular person in the Southern District of Georgia actually accessed the online article or radio or television shows, the Court can reasonably infer from Plaintiffs' allegations that Defendants' allegedly defamatory statements were communicated, and thus published, to at least one person in the Southern District of Georgia. Because publication is an essential element to both libel and slander claims, Defendants' publication in the Southern District of Georgia constitutes an activity having "a close nexus to the wrong."

*Id.* at *5 (citations omitted); *see also Bell v. Rosen*, No. CV214-127, 2015 WL 5595806,

at *6 (S.D. Ga. Sept. 22, 2015) (same).[4]

Here, the Articles were widely disseminated on the Internet, both on the Website and Buhl's Twitter account. Moreover, numerous individuals and companies, including news organizations in the financial industry, read the Website and subscribe to Buhl's Twitter feed for financial news, and republish her stories to their own readers. Dkt. No. 1 at ¶ 55. Accordingly, the Articles were communicated to people in this district. *See also* Declaration of David E. Fox, filed concurrently herewith, Exhibits A through D. Thus, venue is proper here, regardless of where Defendants assert the Articles were written. *See also Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.*, No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) (holding that "because the harm from an online defamatory statement can occur in any place where the website or forum is viewed, no one forum should be expected to stand out as a particularly strong candidate for venue").

### ii. Ladd/MGT were located in this District during the conspiracy.

Ladd/MGT claim that MGT's principal corporate office was in Harrison, New York when the Statements were first made (September 23, 2016). However, that

---

[4] Ladd/MGT assert that "Honig has failed to allege even that the September 23, 2016 article was accessed and read in this District" and that even if it was alleged, "it would not suffice to establish venue here." Dkt. No. 20 at p. 12. However, that assertion oversimplifies the analysis, especially in defamation cases like this where publication to at least one person in the district can be reasonably inferred, as shown in *Eakin*. Further, the two cases cited by Ladd/MGT are not defamation cases. *Francesca's Collections, Inc. v. Medina*, 2011 WL 3925062 (S.D. Tex. Sept. 7, 2011) (Lanham Act case); *Miller v. Asensio*, 101 F.Supp. 2d 395 (D.S.C. 2000) (Exchange Act case).

assertion is false.

First, MGT's own documents show Ladd/MGT had a presence in this District before Buhl published the September 23, 2016 article. Ladd/MGT readily acknowledge that the MGT offices in this District were procured in August 2016. MGT's Form 10-Q filed with the SEC for the period ending September 30, 2016 states: "On August 9, 2016, the Company entered into a Sublease Agreement for an office lease in Durham, North Carolina." *See* Dkt. No. 21, Laverne Decl., Ex. F. The same Form 10-Q also states that MGT's principal executive offices were in Durham, North Carolina. *Id*.

Second, on July 25, 2016, MGT's own website stated: "Mr. Ladd currently lives in Chapel Hill, North Carolina." Stonerock Declaration, Exhibit 1. This statement is confirmed by public records, which corroborate that Ladd resided in Chapel Hill in June 2016. *Id*., Exhibit 2. Thus, even if MGT had not yet completed its move to this District by the time the September 23, 2016 article was published, Ladd had been living here for several months. Ladd is both an individual Defendant, and also the person who engaged in the conspiracy on behalf of MGT.

Third, Ladd/MGT's assertion fails to acknowledge the events occurring in this District at a time when they were indisputably here. Specifically, Ladd/MGT fail to address the fact that, in furtherance of Defendants' conspiracy, Buhl published the February 9, 2017 article "leaking" the Subpoena and republishing several of the false and defamatory statements in the September 23, 2016 article. Ladd/MGT provided the Subpoena to Buhl several months after MGT moved to this District, and in furtherance of Defendants' conspiracy. Thus, a substantial part of the events giving rise to Honig's

claims occurred in this District.

### iii.  Honig's filing of the prior action is irrelevant.

Ladd/MGT significantly discuss the procedural history wherein Honig filed an earlier case in the Southern District of New York.  However, that case was filed only against Buhl.  When that action was filed, Honig had not yet learned that Ladd/MGT were involved.  Once he learned of their involvement, he filed this case in the district of Ladd/MGT's residence, i.e. the Middle District of North Carolina.[5]

Further, Ladd/MGT incorrectly assert that the New York District Court "made clear that it was skeptical of Honig's defamation claims." (Dkt. No. 20 at p. 6)  While that court did ask questions about whether a few of the alleged defamatory statements could survive a motion to dismiss, the court did not express skepticism of the viability of Honig's claims – just the opposite.  That court made it clear that it believed Honig's case would survive a motion to dismiss.  *See, e.g.*, Dkt. No. 21, Laverne Decl., Ex. B (transcript of Feb. 1, 2017 proceedings in *Honig v. Buhl* (S.D.N.Y.)) at 14:10-12 ("THE COURT: Let me say that today's conference just confirms my view that this case is replete with legal and factual issues that **will occupy all of us for several years**.") (Emphasis added.)

---

[5] Ladd/MGT assert that this case is the exact same as the prior New York case and that this case simply replaces two "Doe Defendants" with Ladd/MGT.  That assertion is incorrect.  This case adds claims for conspiracy and unfair and deceptive trade practices that were not alleged in the New York case.  Additionally, Honig's claims in this case involve the February 9, 2017 article, which was published after the filing and dismissal of the New York case.  Overall, this action greatly expands the allegations, claims, and parties when compared to the prior action.

Ladd/MGT's emphasis on the propriety of venue in New York is misplaced. Venue may be proper in more than one judicial district, and it does not matter which forum may be the "best" venue. Because this District, which Honig has chosen, has a substantial connection to Honig's claims, it is a proper venue. *See First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998) ("The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too….If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so.") (citing David D. Siegel, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivision (a), Clause (2), 28 U.S.C.A. § 1391 (1993)).[6]

C. The Court should permit discovery.

For a motion to dismiss based on improper venue, "[o]f course the trial court may permit discovery on such a motion, and indeed should do so where discovery may be useful in resolving issues of fact presented by the motion, particularly since the necessity of resolving such issues is created by the movant himself and the relevant evidence is peculiarly within the movant's possession." *Hayashi v. Red Wing Peat Corp.*, 396 F.2d

_____

[6] Ladd/MGT's reliance on *Mead v. Gaston Cty. Police Dep't*, No. 0:11-CV-3017-JFA, 2012 WL 631850 (D. S.C. Feb. 27, 2012) is misplaced. There, the District for South Carolina found that venue was improper where all of the defendants resided outside of the venue. *Id.* at *1 ("All of the defendants are residents of North Carolina."). Here, both Ladd and MGT reside in this venue. Further, in finding that the majority of events occurred in North Carolina, even though some occurred in South Carolina, as a basis for improper venue, that court's analysis fails to consider the reasoning of *Mitrano*, *Pecoraro*, or *First of Michigan Corp.* The court also did not cite a single authority for its analysis. *See id.* at *2.

13, 14 (9th Cir. 1968).

Here, if the Court is inclined to grant the motion based on improper venue, it should permit Honig to conduct discovery regarding Defendants' conduct in this District. Such discovery is especially warranted given that the relevant information and documents are in Defendants' exclusive possession, custody and control.

### D. If the Court is inclined to grant the motion, it should transfer this case to Florida.

Instead of dismissing this case for improper venue, the Court may transfer it "in the interests of justice" to another district in which it could have been brought. 28 U.S.C. § 1406(a). Here, if the Court is inclined to grant the motion, it should transfer this case to Florida, where Honig resides and suffered damages.

In the context of defamation and other non-physical torts, courts generally hold that venue under section 1391(a)(2) is proper in the district where the injured party resides and the defamatory statements were published. *Capital Corp. Merch. Banking, Inc.*, 2008 WL 4058014, at *3; *see also Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC*, No. 8:09-CV-1885-T-23MAP, 2009 WL 3822773, at *2–*3 (M.D. Fla. Nov. 16, 2009).

Here, Honig is a resident of Palm Beach County, Florida, in the Federal judicial district for the Southern District of Florida. *See* Dkt. No. 1 at ¶ 7. Because the crux of Honig's claims involve the harm to his personal reputation and business, venue would be proper in that district (as well as in this District). As shown in *Eakin*, *supra*, it is reasonable to infer that the Articles were published in Florida also.

## 2. **Plaintiff's claims are adequately pled.**

A. <u>Standards on motions to dismiss for failure to state a claim.</u>

Courts have viewed with "disfavor" motions to dismiss under Rule 12(b)(6) because of the lesser role pleadings play in federal practice and the liberal policy of amendment. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (stating Rule 12(b)(6) motions "viewed with disfavor and rarely granted"); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (stating Rule 12(b)(6) dismissal with prejudice proper only in "extraordinary" cases).

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* at 93 (alteration and internal quotation marks omitted). Further, the court "should view the complaint in the light most favorable to the Plaintiff." *Mylan Labs, Inc. v. Matkar*, 7 F.3d 1130, 1134 (4th Cir. 1993).

B. <u>The Court should apply the substantive law of North Carolina or, alternatively, Florida.</u>

Ladd/MGT argue that the substantive law of New York should apply based solely on the assertion that the Articles were written there.[7] However, the Court should apply the substantive law of North Carolina to this motion because the most relevant conduct is

---

[7] Ladd/MGT repeatedly assert that the Articles were "published" in New York. That assertion is misleading. As shown above, the Articles were published nationwide, and in fact worldwide, via the Website.

the conspiracy to publish the Statements, which were made by Ladd/MGT while residing in North Carolina. Alternatively, the Court should apply the substantive law of Florida, the state of Honig's residence.

To resolve conflicts of law issues, in certain cases, North Carolina courts apply the "most significant relationship test," which requires the court to examine various factors to determine which state has the most significant relationship to the occurrence giving rise to suit. *See generally Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411 (E.D.N.C. 1986); *see also Edmondson v. Am. Motorcycle Ass'n, Inc.*, No. 99-1290, 2001 WL 91104, at *12 (4th Cir. 2001) (holding that "when the place of injury is open to debate in regard to an unfair trade practices claim, North Carolina choice of law rules require a court to apply the law of the state with the most significant relationship to the transaction").

Because the place of injury is open to debate in this case, as detailed below, the Court should utilize the most significant relationship test. *See SmithKline Beecham Corp. v. Abbott Labs.*, No. 1:15CV360, 2017 WL 1051123, at *8 (M.D.N.C. Mar. 20, 2017) (holding that where "the place of injury is so open to debate" the "application of the significant relationship test is more appropriate").

Under that test, the application of substantive North Carolina law is the most appropriate because North Carolina was the home of Defendants' conspiracy to publish the Defamatory Statements and because Ladd still resides and MGT is still headquartered in North Carolina. *See* Restatement (Second) of Conflicts of Laws § 145(2) (1971) (stating that one factor to consider in tort cases is where the parties reside or are

incorporated and have their places of business); *see also Santana, Inc. v. Levi Strauss & Co.*, 674 F.2d 269, 272-274 (4th Cir. 1982) (applying "a flexible approach to cases other than personal injury and wrongful death cases," including consideration of location of the parties).

North Carolina courts also apply the law of "the situs of the claim," i.e., where the injury occurred, to resolve conflicts of law. *See Terry v. Swift Transportation*, No. 1:16CV256, 2017 WL 1013074, at *7 (M.D.N.C. Mar. 14, 2017), *report and recommendation adopted sub nom*, 2017 WL 2881141 (M.D.N.C. July 6, 2017).

Ladd/MGT assert that the Court should focus on the situs of the claim, and allege it is New York because Buhl resided there when she posted the Defamatory Statements on her website. However, Buhl's residence is irrelevant.

"In the defamation context, 'the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties.'" *Id.*

Accordingly, the focus should be on where the Defamatory Statements were viewed by third parties. As shown in *Eakin*, *supra*, it is reasonable to believe that the Defamatory Statements were published in North Carolina, especially considering they involve a publicly traded company based in North Carolina (MGT).

Further, the Defamatory Statements were first made by Ladd (for himself and MGT) from North Carolina. Ladd resided in North Carolina well before the Defamatory Statements were published on the Website. Accordingly, as it relates specifically to Ladd/MGT, the situs of the claim is North Carolina.

Alternatively, Florida law applies. The Restatement (Second) of Conflicts of Laws, which has been applied by the Fourth Circuit, specifically addresses multistate defamation:

> (1) The rights and liabilities that arise from defamatory matter in any ... broadcast over radio or television ... or similar aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6. (2) When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state.

Restatement (Second) of Conflicts of Laws § 150 (1971); *see Wells v. Liddy*, 186 F.3d 505, 527, 530 (4th Cir. 1999) (in case where defamation claim involved nationally syndicated daily radio show and web site comments, the court held: "publication from a world wide web site is another example of multistate defamation, and, therefore…we apply the law of [plaintiff's] domicile"); *see also Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004) (in a defamation case involving widespread dissemination of defamatory matter via the internet, "the most important consideration in choosing the applicable law is the residence of the party allegedly defamed").

Here, the application of Florida law to Honig's claims prevails over New York, something Ladd/MGT ignore, because Honig resides in Florida, was harmed in Florida, and the Defamatory Statements were published in Florida via the Internet.

At the early stage of this case, however, Honig will defer to North Carolina substantive law. "[T]he better practice is to resolve conflict of laws issues at the **motion for summary judgment stage** and on a fully developed record **after completion of discovery**." *Clark Material Handling, Inc. v. Toyota Material Handling, U.S.A., Inc.*, No. 3:12CV510, 2012 WL 6107682, at *1 (W.D.N.C. Dec. 10, 2012) (Emphasis added.)

Ladd/MGT efforts to apply New York substantive law should be rejected. Rather, the Court should defer to North Carolina substantive law or, alternatively, Florida substantive law. If the Court is inclined to apply New York substantive law, Honig respectfully requests the opportunity to present supplemental briefing to address any conflicts, following an opportunity to conduct venue discovery.

    C. <u>Plaintiff has adequately alleged conduct by Ladd.</u>

Ladd/MGT argue that the Complaint fails to plausibly allege that Ladd made any defamatory statements to Buhl. However, this argument ignores the clear allegations in the Complaint stating that Ladd/MGT made the defamatory statements to Buhl and conspired with her to publish them. The Complaint specifically alleged:

> Between the time of MGT's receipt of the Subpoena on September 15, 2016, and September 23, 2016, Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame Plaintiff in articles published on teribuhl.com. As part of this conspiracy, and during the aforementioned time period, Ladd, acting on his own behalf and on behalf of MGT, stated to Buhl that the Subpoena was targeted at Plaintiff, that 90% of the SEC's questions were about Plaintiff and that Plaintiff was the target of an SEC investigation into his trading and investing in MGT stock (the "Ladd Defamatory Statements"). The Ladd Defamatory Statements were made by Ladd with the intention that they be reduced to writing and published by Buhl.

Dkt. No. 1, Complaint at ¶ 22.

Honig has clearly and definitively alleged that Ladd, acting on his own behalf and on behalf of MGT, made the statements to Buhl. This is "more than mere possibility," Honig has alleged it as a certainty. Even if Ladd/MGT disagree with the allegation, such disagreement is a factual issue inappropriate on a motion to dismiss.

Ladd/MGT attempt to bolster their argument, that Ladd did not make any defamatory statements to Buhl, by arguing that Honig's allegations do not specify the time, place, or content of the statements. As shown above, the content of the alleged statements is clear and definitive.

Honig has alleged sufficient facts regarding the time and place of the defamatory statements to put Defendants on notice of the claims against them. The Complaint sets forth the time frame (September 15-23, 2016) in which Defendants made the Defamatory Statements and engaged in their conspiracy, and has identified the statements themselves. The Complaint also sets forth the locations of Ladd/MGT (North Carolina) and Buhl (New York). *See* Dkt. No. 1 at ¶¶ 8-10.

The fact that Honig does not currently know all of the details of Defendants' conspiracy hardly defeats Honig's claims at this stage, particularly because these facts are solely in Defendants' possession and can be obtained in discovery. The law of defamation does not require such high pleading standards. *See Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) (holding *Twombly/Iqbal* "requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at his disposal at the

outset"); *Kehrer v. Fields*, No. 5:11-CV-260-FL, 2011 WL 6965714, at *8 (E.D.N.C. Nov. 21, 2011), report and recommendation adopted, No. 5:11-CV-260-FL, 2012 WL 38381 (E.D.N.C. Jan. 9, 2012) ("Neither the Federal Rules of Civil Procedure nor the Fourth Circuit imposes a heightened pleading requirement for defamation…."); *see also Walter v. Jet Aviation Flight Servs., Inc.*, No. 9:16-CV-81238, 2016 WL 7116641, at *1 (S.D. Fla. Dec. 7, 2016) ("[A]s Defendants emphasize, a claim for defamation must 'give the defendant fair notice of what the claim is and the grounds upon which it rests' and must contain enough factual allegations to 'raise a right to relief above the speculative level.'") (citations omitted); *Caster v. Hennessey*, 781 F.2d 1569 (11th Cir. 1986).

Ladd/MGT's reliance on *Johnson v. Wal-Mart Stores East, L.P.*, 2011 WL 2183155 (W.D.N.C. June 6, 2011) does not compel a different outcome. There, the plaintiff merely alleged "that an unspecified number of defendants' managers (only one of whom plaintiff identifies in the Amended Complaint) defamed him by stating why he was fired, but does not identify in the Amended Complaint to whom, when, where, or in what context these allegedly defamatory statements were made." *Id.* at *1.

Honig's Complaint goes well above the allegations in *Johnson* in providing Ladd/MGT with notice of the claims against them. As set forth above, Honig has identified three discrete defamatory statements made by Ladd/MGT.[8]

_____

[8] Ladd/MGT's reliance on *Brown v. Ferguson Enters., Inc.*, 2012 WL 6185310 (D. Md. Dec. 11, 2012) and *Diagnostic Devices, Inc. v. Pharma Supply, Inc.*, 2009 WL 3633888 (W.D.N.C. Oct. 30, 2009) is also not persuasive. They involve generic allegations of "statements implying someone" defamed the plaintiff (*Brown*) and statements that "did not even identify the alleged speaker of any statements, much less any recipients" (*Diagnostic Devices, Inc.*). Honig's allegations provide much more specificity.

D.  Plaintiff has adequately alleged facts regarding MGT.

Ladd/MGT argue that the Complaint fails to allege sufficient conduct regarding MGT.  However, this argument again completely ignores the allegations in the Complaint.

Under North Carolina law, an employer may be held liable for the torts of an employee under the doctrine of *respondeat superior* in situations where: (1) the employer expressly authorizes the employee's act, (2) the tort is committed by the employee in the scope of employment and in furtherance of the employer's business, or (3) the employer ratifies the employee's tortious conduct.  *Denning-Boyles v. WCES, Inc.*, 123 N.C.App. 409, 414, 473 S.E.2d 38 (1996); *see also Doe v. St. John's Episcopal Par. Day Sch., Inc.*, 997 F.Supp.2d 1279, 1287 (M.D. Fla. 2014).  Honig's allegations fall under all three categories.

Honig has alleged that Ladd acted on behalf of MGT.  Dkt. No. 1, Complaint at ¶ 22.  That allegation is supported by the allegations that (1) Ladd is, and at all relevant times was, the President, CEO and a Director of MGT (*Id.* at ¶ 8); (2) after MGT received the Subpoena, it issued a press release disclosing its receipt (*Id.* at ¶ 20); (3) subsequent to MGT's public disclosure of the Subpoena, MGT's stock price suffered a substantial decline in value (*Id.* at ¶ 21); (4) thereafter Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame Honig in articles published on teribuhl.com (*Id.* at ¶ 22); and (5) the Defamatory Statements were written and published by Buhl on the Website. *Id.* at ¶ 23.

Ladd/MGT formulated the conspiracy to defame Honig to try to divert attention

away from MGT as the target of the very SEC scrutiny that the articles falsely allege is directed at Plaintiff. *Id.* at ¶ 3. By seeking to place the blame on Honig, Ladd/MGT sought to deceive the public into believing there were no problems at MGT and that it was safe to purchase MGT's stock. *Id.* Ladd/MGT engaged in this market manipulation in an attempt to boost the share price of MGT, which had substantially declined after MGT's disclosure of the Subpoena and other negative events. *Id.*

Therefore, Honig has alleged adequate facts to impose liability on MGT. *See Cummings v. Lumbee Tribe of N. Carolina*, 590 F. Supp. 2d 769, 775 (E.D.N.C. 2008) (holding that allegations sufficient against employer where statements furthered employer's business by discrediting and punishing plaintiff for filing a grievance claiming unfair treatment of women and assisting a co-worker file a similar grievance).[9]

E. Plaintiff has adequately alleged a claim for defamation.

i. **The defamatory statements are not opinion, hyperbole, or exaggeration.**

Ladd/MGT argue that they cannot be liable for defamation because the alleged statements are opinion, hyperbole or exaggeration. That argument, like Defendants' statements about Honig, is false.

The Defamatory Statements by Ladd/MGT are: (1) the Subpoena was targeted at

---

[9] Ladd/MGT's reliance on *Riepe v. Sarstedt, Inc.*, 2010 WL 3326691 (W.D.N.C. Aug. 23, 2010) is unpersuasive. There, in a claim for sexual harassment, the plaintiff alleged ratification by the employer but failed to allege that the employer had any knowledge of the harassment. Here, MGT had to know of the conspiracy to defame Honig because its President and CEO was the architect and the purpose was to deflect attention away from MGT regarding the Subpoena so that MGT's stock price would hopefully rebound.

Honig, (2) 90% of the SEC's questions were about Honig, and (3) Honig was the target of an SEC investigation into his trading and investing in MGT stock.   Dkt. No. 1, Complaint at ¶ 22.  All of these statements were factual in nature, and were false and highly damaging to Honig.

A statement of opinion is one that expresses a subjective view, divorced from implicit assertion of objective fact.  *See Snyder v. Phelps*, 580 F.3d 206, 218 (4th Cir. 2009) ("[T]he First Amendment will fully protect statements that cannot reasonably be interpreted as stating actual facts about an individual.") (internal alterations and citations omitted).  To determine whether a statement is one of fact or opinion, courts consider whether the language used is "loose, figurative, or hyperbolic," as well as the "general tenor of the article."  *Biospherics, Inc. v. Forbes*, 151 F.3d 180, 184 (4th Cir. 1998); *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981).[10]

Whether 90% of the SEC's questions were about Honig is a verifiable fact.  It is not opinion - it is math.

Ladd/MGT further contend that the term "target" is not a precise term and does not have a fixed meaning, therefore constituting opinion.  But, the motion itself contradicts such an assertion.

Ladd/MGT cite the SEC Enforcement Manual for the proposition that the "SEC does not publicly identify the targets of its investigations, as is required by the

---

[10] Regardless of which state's law applies, the Court's "analysis must also include considerations of federal law because the requirement that an alleged defamatory statement be of fact, rather than opinion, flows from the First Amendment."  *Nobles v. Boyd*, No. 7:14-CV-214-FL, 2015 WL 2165962, at *9 (E.D.N.C. May 8, 2015).

Department of Justice under certain circumstances." Dkt. No. 20, Motion at p. 19. If the term "target" is not a precise term and does not have a fixed meaning, how could the Department of Justice be required to identify a "target" under certain circumstances, and why does the SEC make it a point to publish its policy of not identifying "targets"?[11]

Whether the Subpoena was targeted at Honig, and whether Honig was the target of an SEC investigation into his trading and investing in MGT stock, are verifiable facts, not opinion.

The reality is that the Statements are blatantly false. Honig is not the target of the Subpoena or an SEC investigation, and the Subpoena mentions Honig's name only once in the twenty categories of documents to be produced by MGT (and even then only as part of a list that included numerous shareholders of MGT). *Id.* at ¶ 26. Accordingly, the Statements are able to be proven false and therefore constitute statements of fact, not opinion.

Lastly, Ladd/MGT argue that the context shows that the statements are opinion. Again, Ladd/MGT avoid the obvious truth.

As relayed to Buhl and thereafter appearing in print, none of the defamatory statements give any indication they reflect opinion. There are no cautionary words. Rather, Buhl purports to be an "investigative journalist." *Id.* at ¶ 1. Accordingly, any

---

[11] And, as the New York District Court explained, the term "target" is a term of art when at least used by the Department of Justice. See Dkt. No. 21, Laverne Decl., Ex. B (transcript of Feb. 1, 2017 proceedings in *Honig v. Buhl* (S.D.N.Y.)) at 10:19-12:4 ("It is definitely a term of art at the Justice Department, and what it means, generally speaking, is that the prosecutor has sufficient information at that time to charge the person. That's what target means.").

reader of the Articles, which contain the Statements, would reasonably believe them to be conveying facts uncovered by Buhl's investigative journalism, not an opinion piece.

Additionally, under no circumstances do the Statements qualify as hyperbole. A statement is protected as "rhetorical hyperbole" only if it is so exaggerated or outlandish that "no reasonable reader would believe [it] to be literally true." *Craven v. Cope*, 188 N.C.App. 814, 818, 656 S.E.2d 729, 733 (2008); *see also Ford v. Rowland*, 562 So. 2d 731, 735 (Fla. 1st DCA 1990) (calling plaintiff a "hooker" sufficiently factual, and not opinion or hyperbole, to withstand a motion to dismiss).

The statement that "90%" of the SEC's "questions" were about Honig is not hyperbole. By giving such a precise number, and within the tenor of the Articles and Statements portraying Honig as the "target" of the Subpoena, any reasonable reader would believe the statement to be portraying true facts.

In an analogous case, the court held that calling a competitor a "predator" was not an opinion or hyperbole. *Eli Glob., LLC v. Heavner*, 794 S.E.2d 820 (N.C. Ct. App. 2016). In dealing with statements regarding the plaintiff's planned hostile takeover of the defendant, the court held that "Defendant's press release was plainly intended to assuage stakeholders' anxiety after the UD Entities filed for Chapter 11 bankruptcies. Considering defendant's statements in this context, their defamatory tenor is even more evident." *Id.* at 827.

The Statements were intended to assuage MGT's stockholders, and potential stockholders, after MGT received the Subpoena and its stock price declined. Accordingly, the defamatory tenor is even more evident. The statements are simply not

opinion or hyperbole.[12]

The Articles are not written as fanciful opinion pieces. Rather, they purport to be factual insider information regarding Honig uncovered by an "investigative journalist." Accordingly, the Statements do not qualify as opinion, hyperbole, or exaggeration.

### ii. The Statements are *per se* defamatory.

Ladd/MGT contend that the Statements are not *per se* defamatory and that Honig therefore must plead special damages. Ladd/MGT are incorrect.

"It is well settled that false words imputing to a merchant or business man conduct derogatory to his character and standing as a business man and tending to prejudice him in his business are actionable, and words so uttered may be actionable *per se*." *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955). The North Carolina Supreme Court has held:

> [I]n order to be actionable without proof of special damage, the false words (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business…To be actionable per se, they must be uttered of him in his business relation. Defamation of this class ordinarily includes charges made by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct in business.

---

[12] The cases cited by Ladd/MGT only strengthen the contrast of hyperbole compared to the statements at issue here. In *600 West 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 937-38 (N.Y. 1992) the court dealt with the statement that the plaintiff "is as fraudulent as you can get and it smells of bribery and corruption." In *Daniels v. Metro Magazine Holding Co., L.L.C.*, 634 S.E.2d 586, 591 (N.C. Ct. App. 2006) the court dealt with the statements that the plaintiff's "actions were equivalent to the former Soviet security police" and that adjuster tried to "tak[e] me to the gas chamber." These statements are invented, fanciful similes and metaphors. Here, the Statements that the Subpoena was targeted at Honig, that 90% of the SEC's questions were about Honig, and that Honig was the target of an SEC investigation into his trading and investing in MGT stock are concrete assertions without any fanciful imagery.

*Id.* (citations omitted); *see also Ellis*, 326 N.C. at 224, 388 S.E.2d at 130 (letter accusing

plaintiff of committing "an unauthorized act" was libelous *per se* because it "impeache[d

the plaintiff] in its trade as a food broker"); *Ausley v. Bishop*, 133 N.C.App. 210, 215, 515

S.E.2d 72, 76 (1999) (plaintiff's allegations that defendant, a former employee who "was

launching his own business as an appraiser" and had engaged in theft and loan fraud

"undoubtedly had the capacity to harm defendant in his trade or profession"); *Paulson v.

Cosmetic Dermatology, Inc.*, No. CV 17-20094-CIV, 2017 WL 2484197, at \*3 (S.D. Fla.

June 8, 2017).

Honig is an investor by profession. *See* Dkt. No. 1, Complaint at ¶¶ 1, 7.

Obviously, the Statements impugn Honig's conduct within his profession by falsely

claiming the SEC is investigating him for wrongdoing with respect to his trading and

investing activities. Further, the Statements accuse Honig of **criminal activity**. Such

accusations are defamatory *per se*.

The cases cited by Ladd/MGT are unpersuasive. In *Akpinar v. Moran*, 922

N.Y.S.2d 8 (N.Y. App. Div., 1st Dep't 2011), the only alleged defamatory statements

were: "I'm looking forward to getting him under oath," and "I want to get to the bottom

of many questions myself." *Id.* at 9. In *Kolchinsky v. Moody's Corp.*, 2012 WL 639162

(S.D.N.Y. Feb. 28, 2012), that court found that the allegedly defamatory statements do

not suggest the plaintiff was "unfit[ ] for his professional role, that he engaged in any

illegal activity, or why he was suspended from his job; rather, the alleged defamatory

statements indicated only that plaintiff did not wish to cooperate with the company's

investigation and that his claims about the company were unsupported." *Id.* at *5.

In contrast, the Statements, which falsely accuse Honig of being investigated by the SEC, directly impugn Honig's reputation as an investor. Any reasonable reader would view such statements as meaning that the SEC believes Honig engaged in wrongdoing with respect to his trading and investing activities.

Notwithstanding the foregoing, even if the Statements are not *per se* defamatory (which they are), Honig has adequately alleged special damages.

"In order to prove special damages from defamation, plaintiff's allegations must evidence a pecuniary loss rather than simple humiliation." *Johnson v. Bollinger*, 86 N.C.App. 1, 356 S.E.2d 378, 384 (1987).

Honig has alleged that the Statements have more than just humiliated him, alleging "Defendants' conduct has injured Plaintiff in his trade and profession and is continuing to cause him substantial harm." Dkt. No. 1, Complaint at ¶ 6. As just one example, Defendants' conduct has harmed Honig's "prospective economic opportunities," and "Defendants' unlawful acts have induced third parties not to enter into contracts with Plaintiff." *Id.* at ¶¶ 46, 65.

Accordingly, Honig has adequately alleged special damages to overcome the motion to dismiss. *See Moore v. Cox*, 341 F. Supp. 2d 570, 575 (M.D.N.C. 2004) (allegations of "pecuniary damages" and damages "with regard to his profession" resulting from false statements satisfied requirement of pleading special damages); *see also Jameson Land Co., LLC v. Mosaic Fertilizer, LLC*, No. 815CV00409T27EAJ, 2016 WL 7206122, at *3 (M.D. Fla. Feb. 5, 2016) ("With regard to special damages, Jameson

alleges it has incurred expenses, including attorneys' fees, to counteract the false publication. … These expenses are sufficient to allege special damages.").

F. <u>Plaintiff has adequately alleged a conspiracy.</u>

Ladd/MGT contend that Honig has not alleged any facts supporting the allegation of conspiracy with Buhl. Again, Ladd/MGT conveniently avoid the actual allegations.

Under North Carolina law, a civil conspiracy is defined as "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more the conspirators; and (4) pursuant to a common scheme." *Strickland v. Hedrick*, 194 N.C.App. 1, 19, 669 S.E.2d 61, 72 (2008); *see also Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006).

Honig has alleged that "Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame Plaintiff in articles published on teribuhl.com." Dkt. No. 1, Complaint at ¶ 22.

Further, Honig has alleged the rationale for the conspiracy, i.e. to defame Honig to try to divert attention away from MGT as the target of the SEC investigation and boost the share price of MGT, which had substantially declined after MGT's disclosure of the Subpoena and other negative events. *Id.* at ¶ 3. .

Honig's allegations are more than enough to put Defendants on notice of the claims against them. *See Robertson*, 679 F.3d at 289-290 ("Conspiracies are often tacit or unwritten in an effort to escape detection, thus necessitating resort to circumstantial evidence to suggest that an agreement took place.")

Ladd/MGT further contend that North Carolina law does not recognize civil conspiracy as an independent claim. However, Ladd/MGT misrepresent the law.

Courts that have stated there is no action for civil conspiracy recognized in North Carolina have done so in the context of distinguishing a claim for a civil conspiracy alone, as compared to damages resulting therefrom. There is no independent claim for the former, but there is for the latter. In *Johnson v. Beverly-Hanks & Associates, Inc.*, 97 N.C.App. 335, 338 S.E.2d 584 (1990), *disc. review on additional issues denied*, 326 N.C. 482, 392 S.E.2d 90 (1990), the court noted the North Carolina rule:

> Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof-the damage-not the conspiracy or the combination.

*Id.* at 388 (Citations omitted).

Honig has alleged more than a conspiracy being formed. Beyond the formation of the conspiracy, Defendants committed acts resulting in damages to Honig. More specifically, Defendants' conspiracy was effectuated via the publication of the Articles that impugned Honig's reputation and interfered with his business relationships. Therefore, Honig has adequately alleged a claim for conspiracy. *See Muse v. Morrison*, 234 N.C. 195, 198, 66 S.E.2d 783, 785 (1951) (allegations of numerous wrongful acts by conspirators resulting in damage sufficient to plead conspiracy; "Whether plaintiff is able, in his proof, to make good the allegations of his complaint is of no concern now.

But he is entitled to an opportunity to do so-a day in court.").[13]

G. Plaintiff has adequately alleged a claim for intentional interference.

Ladd/MGT first argue that Honig's claim for intentional interference is duplicative of his defamation claim. It is not.

A claim for interference with prospective economic advantage requires a plaintiff to show that the defendant intentionally induced a third party to refrain from entering into a contract with plaintiff without justification and that the contract would have ensued but for the defendant's interference. *See RCDI Const., Inc. v. Spaceplan/Architecture, Planning & Interiors, P.A.*, 148 F. Supp. 2d 607, 617 (W.D.N.C.2001); *see generally Florida Fern Growers Ass'n v. Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. 5th DCA 1993).

Honig has alleged that "Defendants' conduct has injured Plaintiff in his trade and profession and is continuing to cause him substantial harm." Dkt. No. 1, Complaint at ¶ 6. As just one example, Defendants' conduct has harmed Honig's "prospective economic opportunities," and "Defendants' unlawful acts have induced third parties not to enter into contracts with Plaintiff." *Id.* at ¶¶ 46, 65. Therefore, Honig has adequately alleged a

---

[13] The case cited by Ladd/MGT, *Henderson v. LeBauer*, 101 N.C. App. 255, 399 S.E.2d 142 (1991), is not persuasive and easily distinguishable. There, the court noted that the "Defendant is not seeking damages, however, arising out of the alleged conspiracy or combination." *Id.* at 260. Further, the court did not dismiss the claim because North Carolina does not recognize an independent claim for conspiracy. Rather, on summary judgment, the court found that the "Plaintiff has not forecast sufficient evidence that an agreement was reached between any of the defendants to perform the acts she complains of." *Id.* at 261.

claim for intentional interference that differs from his defamation claims.[14]

Ladd/MGT further contend that Honig's claim for intentional interference with prospective economic advantage does not allege conduct directed at third parties.

Again, the intent of the Ladd/MGT's conspiracy to defame Honig was to assuage MGT's stockholders, potential stockholders and the stock market, after MGT received the Subpoena and its stock price declined. The Articles were directed to those third parties, and others with whom Honig has business relationships. Because those relationships were disrupted due to Defendants' conduct, Honig has adequately pled a claim for intentional interference.[15]

H. Plaintiff has adequately alleged a claim for unfair competition.

Ladd/MGT contend that Honig has not adequately alleged conduct "in or affecting commerce." Honig has done so.

"[A] libel *per se* of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce in violation of [N.C. Gen. Stat.] § 75–1.1, which will justify an award of damages ... for injuries proximately caused." *Ellis*, 326 N.C. at 226, 388 S.E.2d at 131 (citation omitted).

Here, Honig is engaged in business as an investor. *See* Dkt. No 1, Complaint at ¶¶ 1, 7. Further, Defendants' conduct has injured him in his trade and profession and is

---

[14] Ladd/MGT only cite opinions from the Second Circuit for the assertion that Honig's intentional interference claim should be dismissed as duplicative of his defamation claims. The Court should not follow that authority.
[15] Ladd/MGT again only cite opinions from the Second Circuit for the assertion that Honig must somehow allege more specificity as to conduct directed to third parties to support his intentional interference claim. The Court should not follow that authority.

continuing to cause him substantial harm.  *Id.* at ¶ 6.  The false statements at issue attribute conduct, characteristics, and conditions incompatible with the proper exercise of Honig's business as an investor.  *Id.* at ¶ 46.  Therefore, Honig has adequately alleged unfair or deceptive acts in or affecting commerce.

Additionally, MGT is a publicly-traded company.  Dkt. No. 1, Complaint at ¶ 6. Defendants conspired to defame Plaintiff in an attempt to manipulate the market for MGT's stock by boosting its priced market manipulation in an attempt to boost the share price of MGT.  *Id.*

Such conduct not only harmed Honig but also harmed the public, especially those consumers in the market to purchase MGT's stock (including Honig as an MGT stock holder (*see id.* at ¶ 1)).  Therefore, Honig's unfair competition claim is adequately pled.

I.   Plaintiff should be granted leave to amend, if necessary.

"The court should freely give leave when justice so requires."  Fed. R. Civ. P. Rule 15(a)(2); *see also Ostrzenski v. Seigel*, 177 F.3d 245, 252 (4th Cir. 1999) ("the district court should not have dismissed the complaint with prejudice without permitting [plaintiff] an opportunity to amend").

If the Court feels that Honig must allege his claims with more specificity, he can do so and therefore requests that the Court grant him leave to amend.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to dismiss in its entirety.  Alternatively, Plaintiff requests leave to amend.

Dated: July 17, 2017                    Respectfully submitted,

**MOORE & VAN ALLEN PLLC**

By: */s/ David E. Fox_____*
David E. Fox, Esq.
N.C. State Bar No. 10332
Moore & Van Allen PLLC
3015 Carrington Mill Blvd., Suite 400
Morrisville, North Carolina 28202-4003
Tel:  (704) 331-1000
Fax: (704) 331-1159
Email: davidfox@mvalaw.com


Charles J. Harder, Esq.*
Ryan J. Stonerock, Esq.*
**HARDER MIRELL & ABRAMS LLP**
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel:  (424) 203-1600
Fax: (424) 203-1601
Email: charder@hmafirm.com
Email: rstonerock@hmafirm.com
* LR 83.1(d) Special Appearance


*Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

This brief does not exceed the word limit of 9,000 words and complies with LR

7.3(d)(1).

Dated: July 17, 2017

Respectfully submitted,

**MOORE & VAN ALLEN PLLC**

By: */s/ David E. Fox*_____
David E. Fox, Esq.
N.C. State Bar No. 10332
Moore & Van Allen PLLC
3015 Carrington Mill Blvd., Suite 400
Morrisville, North Carolina 28202-4003
Tel:  (704) 331-1000
Fax: (704) 331-1159
Email: davidfox@mvalaw.com


Charles J. Harder, Esq.*
Ryan J. Stonerock, Esq.*
**HARDER MIRELL & ABRAMS LLP**
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel:  (424) 203-1600
Fax: (424) 203-1601
Email: charder@hmafirm.com
Email: rstonerock@hmafirm.com
* LR 83.1(d) Special Appearance

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing **BRIEF IN OPPOSITION TO DEFENDANTS ROBERT LADD AND MGT CAPITAL INVESTMENT, INC.'S MOTION TO DISMISS** was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

Jonathan C. Krisko
Erik R. Zimmerman
*Robinson, Bradshaw & Hinson P.A.*
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
jkrisko@robinsonbradshaw.com
ezimmerman@robinsonbradshaw.com

Darren Laverne
Jeffrey W. Davis
John P. Coffey
Kramer, Levin, Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
dlaverne@kramerlevin.com
jdavis@kramerlevin.com
scoffey@kramerlevin.com

*Attorneys for Defendants, Robert Ladd
and MGT Capital Investments, Inc.*

Kimberly M. Marston
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
kmarston@brookspierce.com

Eric M. David
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
1700 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, NC 27601
edavid@brookspierce.com

Michael Tremonte
Erica A. Wolff
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, NY 10004
*mtremonte@shertremonte.com*
*ewolff@shertremonte.com*

*Attorneys for Defendant, Teri Buhl*


This 17th day of July, 2017.


/s/ David E. Fox
David E. Fox