# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Case No. 1:17-CV-184 (CCE) (LPA)

BARRY HONIG, an individual,

        Plaintiff,

   v.

ROBERT LADD, an individual; MGT
CAPITAL INVESTMENTS, INC., a
Delaware corporation; TERI BUHL,
an individual; and DOES 1-20,

        Defendants.

 

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT TERI BUHL'S MOTION TO DISMISS THE COMPLAINT

Eric M. David                            Michael Tremonte*
Kimberly M. Marston               Erica A. Wolff*

**BROOKS, PIERCE, McLENDON,**      **SHER TREMONTE LLP**
**HUMPHREY & LEONARD, LLP**

*Attorneys for Defendant Teri Buhl*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 1

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER BUHL ........ 1

II.     PLAINTIFF FAILS TO STATE ANY VIABLE CLAIMS ........................ 9

       A.    New York Law Governs These Claims ............................................. 9

       B.    Plaintiff Fails to State a Claim for Defamation ................................ 10

              1.    Statements About Regulatory and Judicial Proceedings are Privileged .............................................................................. 10

              2.    Most of Buhl's Statements are Non-Actionable Opinion or Hyperbole ............................................................................ 12

              3.    The Remaining Statements Are Not Derogatory ................. 15

       C.    Plaintiff Fails to State Any Viable Non-Defamation Claims ........... 15

CONCLUSION .............................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., IBI, L.L.C.,*
    2003 WL 21203503 (S.D.N.Y. May 22, 2003) .................................................... 16

*Associated Press v. Cook,*
    17 S.W.3d 447 (Tex. App. 2000) .......................................................................... 15

*BeoCare Crp., Inc. v. Morrissey,*
    124 F. Supp. 3d 696 (W.D.N.C. 2015) ............................................................ 2, 3, 4

*Bortell v. White Mountains Ins. Grp., Ltd.,*
    2 So.3d 1041 (Fla. Dist. Ct. App. 2009) ............................................................ 16

*Buckley v. N.Y. Times Co.,*
    338 F.2d 470 (5th Cir. 1964) ................................................................................ 8

*Burleson v. Toback,*
    391 F. Supp. 2d 401 (M.D.N.C. 2005) ................................................................ 8

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,*
    334 F.3d 390 (4th Cir. 2003) ................................................................................ 5

*Chao v. Mount Sinai Hosp.,*
    476 F. App'x 892 (2d Cir. 2012) ........................................................................ 15

*Chapin v. Knight-Ridder, Inc.,*
    993 F.2d 1087 (4th Cir. 1993) ........................................................ 10, 13, 14, 15

*Craven v. COPE,*
    656 S.E.2d 729 (N.C. Ct. App. 2008) ................................................................ 15

*Crutchfield v. ImmunoScience, Inc.,*
    2012 WL 263396 (M.D.N.C. Jan. 30, 2012) .................................................... 3, 4

*Dickinson v. Igoni,*
    908 N.Y.S.2d 85 (N.Y. App. Div., 2d Dep't 2010) ............................................ 16

*Dowd v. Calabrese*,
   589 F. Supp. 1206 (D.D.C 1984) ...................................................................7, 16

*Downey v. Coal. Against Rape & Abuse, Inc.*,
   2005 WL 984394 (D.N.J. Apr. 27, 2005)..................................................................7

*Eli Glob., LLC v. Heavner*,
   794 S.E.2d 820 (N.C. Ct. App. 2016) ...................................................................14

*Fortson v. Colangelo*,
   434 F. Supp. 2d 1369 (S.D. Fla. 2006)..................................................................14

*Gross v. N.Y. Times Company*,
   623 N.E.2d 1163 (N.Y. 1993) ...............................................................................13

*Harco Nat'l Ins. Co. v. Grant Thornton LLP*,
   698 S.E.2d 719 (N.C. Ct. App. 2010) .....................................................................9

*Henderson v. LeBauer*,
   399 S.E.2d 142 (N.C. Ct. App. 1991) ...................................................................16

*Holy Spirit Assn. for the Unification of World Christianity v. N.Y. Times Co.*,
   49 NY2d 63 (N.Y. 1979)........................................................................................11

*Immuno AG v. Moor-Jankowski*,
   77 N.Y.2d 235 (N.Y. 1991) ...................................................................................13

*Jewell v. NYP Holdings, Inc.*,
   23 F. Supp. 2d 348 (S.D.N.Y. 1998) .....................................................................12

*Kisser v. Coal. for Religious Freedom*,
   1997 WL 83296 (N.D. Ill. Feb. 19, 1997) ...............................................................7

*Komarov v. Advance Magazine Publishers, Inc.*,
   691 N.Y.S.2d 298 (N.Y. Sup. Ct. 1999)................................................................10

*Lacomb v. Jacksonville Daily News Co.*,
   142 N.C. App. 511 (2001) .....................................................................................12

*Lolavar v. de Santibanes*,
   430 F.3d 221 (4th Cir. 2005)...........................................................................3, 4, 6

iii

*Marino v. Cross Country Bank*,
    2003 WL 503257 (D. Del. Feb. 14, 2003) ............................................................7

*McLaughlin v. McPhail*,
    707 F.2d 800 (4th Cir. 1983) ......................................................................3, 4

*M-Tek Kiosk, Inc. v. Clayton*,
    2016 WL 2997505 (M.D.N.C. May 23, 2016)...................................................9

*Nobles v. Boyd*,
    2015 WL 2165962 (E.D.N.C. May 7, 2015) .....................................................16

*Ramunno v. Cawley*,
    705 A.2d 1029 (Del. 1998)........................................................................7

*Rasmussen v. Collier Cty. Pub. Co.*,
    946 So. 2d 567 (Fla. Dist. Ct. App. 2006)........................................................11

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
    925 N.Y.S.2d 407 (App. Div. 1st Dep't 2011).....................................................14

*Stover v. O'Connell Associates, Inc.*,
    84 F.3d 132 (4th Cir. 1996) .......................................................................8

*Superior Performers, Inc. v. Phelps*,
    154 F. Supp. 3d 237 (M.D.N.C. 2016) ...........................................................16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................16

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) .........................................................................2, 9

## Rules

Local Rule 7.3(d)(1) ......................................................................................19

Rules 12(b)(2) and 12(b)(6)...........................................................................17

iv

# INTRODUCTION

The opening Brief in Support of Buhl's Motion to Dismiss the Complaint ("Opening Brief")[1] sets forth the fundamental constitutional principles that preclude this Court from exercising jurisdiction over a New York-based journalist for publishing commentary on her financial news website concerning legal proceedings involving a well-known investor. Because Plaintiff's Brief in Opposition to Buhl's Motion to Dismiss (the "Opposition") ignores those fundamental principles, relies on inapposite case law, and asks this Court to construe Buhl's words as no reasonable reader would do, Buhl's Motion to Dismiss should be granted.[2]

# ARGUMENT

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER BUHL

Buhl demonstrated in her Opening Brief that this Court lacks personal jurisdiction over her because she lives in New York, operates her website from New York, and investigated and drafted the challenged articles (the "Articles") from New York without ever directing any activities towards North Carolina. Opening Brief at 7-15. Buhl's declaration reflected that she never travelled to the state of North Carolina and never placed a telephone call to a North Carolina number in connection with the investigation

---

[1]    Unless otherwise defined herein, capitalized terms have the same meaning ascribed to them in the Opening Brief.

[2]    Buhl hereby withdraws her motion to dismiss on the grounds of improper venue, without waiver of her right to seek dismissal or transfer on that basis at a later time.

1

or drafting of the Articles. (Buhl. Decl. ¶¶ 5-6, 8, 11-13, 20-24.) Plaintiff does not dispute *any* of these facts.

Instead, Plaintiff erroneously argues that this Court may exercise personal jurisdiction over her, notwithstanding the absence of minimum contacts between Buhl and North Carolina, because one of her alleged sources was in North Carolina when Buhl purportedly spoke to him. This is not the law. As the Supreme Court has held, a defendant can only be subject to a forum's jurisdiction based on the "***defendant's contacts*** with the forum State itself, not . . . the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (internal citation omitted) (emphasis added).

Neither the Complaint nor the declarations in Opposition to Buhl's Motion to Dismiss describe any conduct *by Buhl* in, or directed to, the State of North Carolina; they merely claim that *Ladd* and *MGT* were present in North Carolina when Ladd purportedly spoke to Buhl. Dkts 35-36.

Buhl's lack of contact with North Carolina is not remedied, as Plaintiff argues, by Honig's conspiracy allegations. The well-settled protections of the Due Process Clause do not melt away merely because a litigant utters the word "conspiracy." To the extent any of the cases cited by Plaintiff could be read to suggest that the "conspiracy theory" of jurisdiction permits the exercise of personal jurisdiction over Buhl (and they cannot), they have been overruled by (or in the case of *BeoCare Crp., Inc. v. Morrissey*, 124 F. Supp. 3d 696 (W.D.N.C. 2015), are incompatible with) the Supreme Court's decision in

2

*Walden*, a seminal case that Plaintiff fails to address at all. *See In re N. Sea Brent Crude Oil Futures Litig.*, 2017 WL 2535731, at *9 (S.D.N.Y. June 8, 2017) ("there is reason to think that basing specific personal jurisdiction on the acts of a defendant's co-conspirators is questionable after *Walden*"); *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, 2017 WL 2778825, at *7 (D. Md. June 26, 2017) ("applying the conspiracy theory of jurisdiction here does not comport with the Constitution's due process requirements").

Even if the conspiracy theory of jurisdiction survived *Walden*, jurisdiction could not be premised on that theory here, as Honig's own cases demonstrate. Under those cases, a plaintiff attempting to support personal jurisdiction based on the conspiracy theory must: (1) demonstrate the defendant's purposeful availment by pleading facts sufficient to infer the defendant ***knew*** his alleged co-conspirator was in the forum and engaged in conduct to further the conspiracy with this knowledge; and (2) make a "threshold showing" that a conspiracy existed. *See Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005); *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983); *Crutchfield v. ImmunoScience, Inc.,* 2012 WL 263396 (M.D.N.C. Jan. 30, 2012); *BeoCare Grp., Inc. v. Morrissey*, 124 F. Supp. 3d 696, 702 (W.D.N.C. 2015). Honig fails to meet either requirement.

First, Buhl did not know that Ladd was in North Carolina when she purportedly spoke to him. "For the court to exercise jurisdiction under the conspiracy theory, a defendant must have had a 'reasonable expectation, at the time [she] agreed to participate

3

in the conspiracy, that acts to be done in furtherance of the conspiracy by another co-conspirator would be sufficient'" to subject the co-conspirator to jurisdiction in the forum. *Planet Aid,* 2017 WL 2778825, at *6 (citation omitted). In two of the four conspiracy theory cases Honig cites, the Fourth Circuit affirmed *dismissal* for lack of personal jurisdiction because, among other things, the defendants did not engage in any activities purposefully directed to the forum state. *McLaughlin*, 707 F.2d at 807; *Lolavar*, 430 F.3d at 229-30 (dismissal warranted where "uncontested affidavit" reflected that defendant never resided, owned property, derived income or "sent []or received correspondence from the State."). Plaintiff's other two conspiracy cases only underscore how deficient Plaintiff's jurisdictional allegations are here. In *Crutchfield v. ImmunoScience, Inc.*, 2012 WL 263396, at *6 (M.D.N.C. Jan. 30, 2012), an out-of-state defendant sent a letter to the in-state co-conspirator ***at his North Carolina address*** and communicated with him by phone on multiple occasions, ***knowing*** he was in North Carolina. Similarly, in *BeoCare Crp.*, multiple allegations supported the inference that the out-of-state defendant ***knew*** that her alleged co-conspirator was operating from North Carolina, ***knew*** that the medical samples she was misappropriating were distributed from North Carolina, and "repeatedly reached out to" her alleged co-conspirator "in his capacity as a North Carolina BeoCare employee." 124 F. Supp. 3d at 702-703.

In contrast to these cases, Plaintiff does not allege that Buhl ***knew*** Ladd was in North Carolina when she purportedly called him (nor could he); rather, Honig alleges only that Buhl placed a telephone call to a New York cell number which, he claims,

4

happened to be answered in North Carolina. Opp. at 14. Honig has not demonstrated that Buhl had any "reasonable expectation" that her conduct would subject her to personal jurisdiction in North Carolina. Plaintiff misunderstands his burden when he argues that the "only fact Buhl offers to refute having communications with North Carolina residents is the evading statement that she did not telephone a number with a North Carolina area code[.]" Opp. at 14. It is not Buhl's burden to prove she had no contacts with North Carolina. Rather, it is Plaintiff's burden to show that she did. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003). Plaintiff has failed to meet this requirement.

To dispel any potential ambiguity, Buhl has submitted an additional declaration confirming that, in connection with the Articles, she never placed or a received a telephone call, or exchanged an email or any other communication with, any person she knew to be located in North Carolina. (*See* Reply Declaration of Teri Buhl dated August 18, 2017 ("Buhl Reply Decl.") ¶¶ 2-3.) Plaintiff himself alleges that Ladd's cell number had a New York area code. Dkt. 35 ¶ 4. Therefore, even if Buhl did communicate with Ladd about the Articles, she would have had no reason to think he was in North Carolina.

Public documents also show that Buhl had no reason to think Ladd was in North Carolina during the fall of 2016. For example, Ladd's Bloomberg profile from October 2016 and his LinkedIn profile both reflect MGT's address in Harrison, NY. Neither refer to North Carolina. *See* Reply Declaration of Erica A. Wolff dated August 18, 2017 ("Wolff Reply Decl."), Exs. A-B. Honig's complaint against Ladd/MGT in a separate

lawsuit filed in New York pleads that Ladd was frequently present in New York during (and after) this time period. *See* Wolff Decl., Ex. 1 ¶ 17 (Ladd attended a meeting in New York in April 2016); *id.* ¶ 46 (Ladd met with Honig in New York on January 25, 2017); *id.* ¶ 15 ("until recently, Defendant MGT's only office and headquarters was located in Harrison, New York," and they engaged in "substantial" conduct in New York). In addition, on September 8, 2016, MGT held its annual Shareholder's Meeting in New York (Wolff Reply Decl. Ex. C) and MGT's own SEC filing, dated October 5, 2016, locates its principal corporate office in Harrison, NY. Laverne Decl. Ex. D.

In short, there is no basis to infer that Buhl knew Ladd was in North Carolina when she purportedly called him in the fall of 2016. Moreover, even if Buhl *did* know Ladd was in North Carolina, that *still* would not suffice to ground this Court's exercise of jurisdiction over her.

Second, even under the discredited conspiracy theory of jurisdiction, an out-of-state defendant's mere knowledge of an alleged co-conspirator's presence in the forum state is not sufficient. Plaintiff's pleading must also support a "threshold showing" that a conspiracy existed. *Lolavar*, 430 F.3d at 229. "[T]he bare allegation of conspiracy . . . is insufficient to establish personal jurisdiction." *Id*.

Honig's complaint alleges nothing more than a "bare allegation" of conspiracy. It alleges that Ladd served as a source for some of Buhl's Articles and that they collaborated to publish articles about Honig. As numerous courts have recognized, "such collaboration" – *i.e.*, two parties "working together for the same end" – "does not,

6

without more, a conspiracy make." *Dowd v. Calabrese*, 589 F. Supp. 1206 (D.D.C 1984)

(dismissing claim for conspiracy to defame based on allegation that reporter and his

source collaborated to publish disparaging articles about plaintiff). *See also Ramunno v.*

*Cawley*, 705 A.2d 1029, 1039 (Del. 1998); *Marino v. Cross Country Bank*, 2003 WL

503257, at *5 (D. Del. Feb. 14, 2003); *Downey v. Coal. Against Rape & Abuse, Inc.*,

2005 WL 984394, at *8 (D.N.J. Apr. 27, 2005); *Kisser v. Coal. for Religious Freedom*,

1997 WL 83296, at *2 (N.D. Ill. Feb. 19, 1997). As the court observed in *Dowd*, "in this

sensitive First Amendment area" what is required is "proof not merely of separate and

distinct improper purposes by each, proof not merely of a joint purpose to publish, but

specific evidence" of a plausible "joint purpose to defame." 589 F. Supp. at 1214 & n.25

(complaint failed to plead a conspiracy where the joint purposes proffered by plaintiff

lacked "plausibility"). Honig's complaint alleges no plausible "joint purpose." His

theory is that Buhl conspired with Ladd to publish disparaging information about Honig

in order to "deceive the public into believing MGT was not the focus of the SEC

investigation . . . in an attempt to boost the share price of MGT." Opposition at 3-4. Yet,

the Complaint provides no explanation for why Buhl – an investigative reporter who has

never owned stock in MGT (Buhl Reply Decl. ¶ 11) – would have any interest in

boosting the price of MGT stock.[3] And Honig further undermines the plausibility of this

---

[3]     To the extent Honig intends to rely on the speculative observation that "Ladd and
Buhl . . . appeared to be romantically linked" (Dkt. No. 36 ¶ 8), that implausible theory
can be foreclosed now: Buhl has never had any romantic relationship with Ladd. Buhl
Reply Decl. ¶ 4.

alleged joint purpose when, elsewhere, he ascribes to Buhl a wholly distinct, inconsistent, and equally implausible motivation – namely, that Buhl published the articles because she "did not like Honig." Opp. at 9 & n.4.

No authority permits this Court to impute Ladd's North Carolina contacts to Buhl. It is not the law that a reporter is subject to personal jurisdiction in every state in which her sources reside. *See, e.g., Buckley v. N.Y. Times Co.*, 338 F.2d 470, 474-75 (5th Cir. 1964) ("sporadic news gathering" within a state is an insufficient predicate for specific jurisdiction). Knowingly placing a telephone call into a state does not, without more, subject an out-of-state defendant to jurisdiction in that forum under any viable theory of jurisdiction. *Stover v. O'Connell Associates, Inc.*, 84 F.3d 132, 137 (4th Cir. 1996) ("***occasional telephonic requests for information*** from Maryland-based" parties and the "***consequent receipt*** of, investigation services from Maryland" did not establish minimum contacts). *See also Burleson v. Toback*, 391 F. Supp. 2d 401, 422 (M.D.N.C. 2005) (phone call to a North Carolina business was "insufficient to create a showing that" an out-of-state defendant "targeted North Carolina or purposefully availed herself of the laws of the State.").

Honig's claim that personal jurisdiction over Buhl is properly grounded based on "adequate minimum contacts between Buhl and the in-state defendants (Ladd/MGT)," Opposition at 15, misapprehends the law. The Supreme Court has "consistently rejected [such] attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state."

*Walden*, 134 S. Ct. at 1123 (emphasis added). Thus, Honig is required to establish minimum contacts between Buhl *and North Carolina*. Because Plaintiff has failed to meet this requirement, the Complaint must be dismissed.[4]

## II.     PLAINTIFF FAILS TO STATE ANY VIABLE CLAIMS

### A.     New York Law Governs These Claims

Plaintiff erroneously argues that North Carolina (or in the "alternative" Florida) law governs this case "because the most relevant conduct giving rise to this lawsuit" occurred there. Opposition at 19. Choice of law is determined here, under *lex loci delicti*, based on "where the last act occurred giving rise to [the] injury." *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 724 (N.C. Ct. App. 2010); *M-Tek Kiosk, Inc. v. Clayton*, 2016 WL 2997505, at *12 (M.D.N.C. May 23, 2016). As Buhl's publication of the Articles from New York is the last act allegedly giving rise to Honig's injury, New York law governs.

New York is also the place where "the most relevant conduct" occurred. Plaintiff's claims arise from statements published on a website operated from New York, concerning a Subpoena issued and served in New York. Plaintiff admits, moreover, that he frequently conducts business as a professional investor in New York (Wolff Decl. Ex. 1 ¶ 46, 15; Compl. ¶ 44), and is likely the location of any purported harm.

---

[4] The Court should deny Plaintiff's informal request for jurisdictional discovery (Opposition at 17, 31) because he has not made any concrete allegations to dispute Buhl's specific declarations. *Carefirst of Maryland,* 334 F.3d at 402-03.

### B. Plaintiff Fails to State a Claim for Defamation

#### 1. Statements About Regulatory and Judicial Proceedings are Privileged

Eight of the sixteen statements Plaintiff challenges as defamatory (Compl. ¶¶ 24(a)-(c)), (e)-(g), 27, 32(a)-(b)) are not actionable because they are protected by the fair report privilege. *See* Opening Brief at 19-22. Plaintiff fails to counter this argument. His opposition focuses exclusively on the statements concerning the Subpoena, and does not dispute that the other five statements identified in Buhl's Opening Brief (*i.e.*, statements alleged in paragraphs 24(e), 24(f), 24(g), 32(a), and 32(b) of the Complaint) are protected by the fair report privilege. *See* Opp. at 19-23. As Honig fails to oppose that portion of Buhl's Motion to Dismiss, his defamation claim should be dismissed to the extent it is premised on those statements.

The claim must also be dismissed to the extent it is premised on statements concerning the Subpoena. There is no support for Honig's erroneous contention that the fair report privilege does not apply when a regulator "merely issue[s] a subpoena." Substantially true reports of government activities are privileged. *Komarov v. Advance Magazine Publishers, Inc.*, 691 N.Y.S.2d 298 (N.Y. Sup. Ct. 1999), (coverage of an internal FBI report protected by the fair report privilege); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993) (report concerning public remarks of a Congressperson privileged even though the remarks were not part of official action); *Rasmussen v. Collier Cty. Pub. Co.*, 946 So. 2d 567, 571 (Fla. Dist. Ct. App. 2006) (fair reports "on information received from government officials" are privileged).

10

Honig is also wrong in his contentions that the fair report privilege only applies to republication and that the characterizations of the Subpoena are not "substantially true." The fair report privilege contemplates and protects some degree of editorializing. *Holy Spirit Assn. for the Unification of World Christianity v. N.Y. Times Co.*, 49 NY2d 63 (N.Y. 1979) ("newspaper accounts of . . . official proceedings must be accorded some degree of liberality" because "a newspaper article is, by its very nature, a condensed report of events which must, of necessity, reflect to some degree the subjective viewpoint of its author"). Buhl initially reported that "According to insiders who saw the SEC Subpoena, 90% of the regulator's questions are about Honig." Complaint Ex. C. According to Plaintiff's pleading, this statement is not just "substantially" true; it is literally true, because "Ladd . . . stated to Buhl that . . . 90% of the SEC's questions were about Plaintiff." (Compl. ¶ 22.) Moreover, this reference in the Complaint to "90%" was revised, on the very same day it was posted, to state "a large portion." As Buhl explained when she updated the post: "I have spoken with people who have seen the subpoena again and clarified a sentence in the story" to reflect that "a large portion of the SEC's questions are centered on Barry Honig, his company and people he invests with." (Compl. ¶ 27 & Ex. D at 3 of 9.)[5] This statement is substantially true: of the nine individuals and eleven entities whose communications were requested by the Subpoena (Complaint Ex. B at p. 7-8), one is Honig himself, four are individuals with whom Honig

---

[5]     The initial reference to "target" was changed to "subject" in this updated version. *Id.*

has co-invested, and seven are companies related to his investments. (*See* Wolff Decl. Ex. 1.) Because it is substantially true, it is protected. *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 369 (S.D.N.Y. 1998) ("statements that [plaintiff] was the "main" or "prime" suspect are substantially true in light of his admission that he was "a" suspect"); *see also Lacomb v. Jacksonville Daily News Co.*, 142 N.C. App. 511, 512 (2001) ("The law does not require absolute accuracy in reporting").

### 2. Most of Buhl's Statements are Non-Actionable Opinion or Hyperbole

In his Opposition, Honig continues to obscure the context of Buhl's words in an effort to mischaracterize them as statements of fact. For example, Honig argues that Buhl attempts to avoid liability for the statement alleged at paragraph 35 of the Complaint simply by pointing out that it is prefaced by the phrase "[i]t's my belief." Opposition at 25. But in her Opening Brief, Buhl explained that this statement was opinion not only because it was prefaced by that phrase, but also because immediately after that phrase Buhl disclosed the facts upon which this "belief" was based, namely "a decade of proven investigative reporting and based on knowing how to read a SEC subpoena, along with interviews with people involved in the transaction and past investing transactions of Barry Honig[.]" Opening Brief at 25. A "proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as a conjecture." *Gross v. N.Y. Times Company*, 623 N.E.2d 1163 (N.Y. 1993). Accordingly, the defamation claim must be dismissed to the extent it is based on paragraph 35.

12

Likewise, Buhl's speculative comments that "it's possible more players in the microcap space will be arrested by the DOJ or charged with an enforcement action by the SEC," that "[o]ne name that comes to mind is microcap financer Barry Honig," and that "[m]arket participants sit on the side line to see if the SEC can get the goods to finally charge Barry Honig" (Compl. ¶¶ 17-18, 24(j)), could not have been construed by any reasonable reader as anything more than Buhl's opinion that Honig *might* be charged. *See Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 255 (N.Y. 1991) ("presumptions and predictions as to what 'appeared to be' or 'might well be' or 'could well happen' . . . would not have been viewed by the average reader . . . as conveying actual facts"). Nor would readers have viewed as factual the statement identified in paragraph 24(i) of the Complaint which, in its full context, provided: "What we don't know is whether Barry . . . . acted as an affiliate in trading MGT stock[.]" (Complaint Ex. C). This statement merely poses an unanswered question; it cannot be construed as defamatory. *See Id.*

Honig fails to cite any case where such conjecture about future events was held to be actionable; in fact, he cites to contrary authority. In *Chapin v. Knight-Ridder, Inc.*, which is cited in Honig's Opposition, the complaint alleged that an article stating "it is not clear where the rest of the money goes" falsely implied that plaintiff was engaged in impropriety. 993 F.2d 1087. The Fourth Circuit affirmed dismissal of the complaint in that case, reasoning that, because the statement "does not speak in certainties," it could not be defamatory. *Id* (the reporter's speculation "rather than a libel, is the paradigm of a

properly functioning press."). As in *Chapin*, Buhl's speculation about whether charges might be brought against Honig is protected.

Statements about Honig's potential role in the SEC investigation (Compl. ¶¶ 24(a)-(c), Ex. D) are also not actionable because, for the reasons described *supra* pp. 11-12, these statements are, at most, exaggeration or hyperbole. Buhl's statements were particularly likely to be construed as hyperbolic because her website is replete with "casual, emotive, and imprecise speech." *See Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 414-15 (App. Div. 1st Dep't 2011) (statements made in places of online dialogue are presumptively opinion because such online fora "are often the repository of" "casual, emotive, and imprecise speech."); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1381 (S.D. Fla. 2006) ("Because the challenged statements were made through a medium that . . . routinely uses figurative or hyperbolic language, a reasonable reader is more likely to regard its content as opinion and/or rhetorical hyperbole.").

This case bears no resemblance to the sole case Plaintiff cites on this issue – *Eli Glob., LLC v. Heavner*, 794 S.E.2d 820 (N.C. Ct. App. 2016) – which involved comments published in a formal corporate press release.[6] In contrast, the statements Honig challenges in this lawsuit appear amongst numerous colloquial and hyperbolic phrases that signal to readers that they are reading reports colored by opinion. The same article which contains these statements also observes that the New York Stock Exchange

---

[6] The North Carolina Supreme Court granted discretionary review of the decision in *Heavner*, 797 S.E.2d 282 (2017).

14

was "kind of a jerk," and that there was "a big clusterf-k of unknowns for the company and shareholders." (*See* Complaint Exs. C, D.) In such context, no reasonable reader would expect that precisely 90% of the "questions" in the Subpoena were about Honig or that being the "subject" or "target" of an SEC subpoena was some sort of definitive fact.

### 3. The Remaining Statements Are Not Derogatory

Plaintiff fails to identify a single authority holding that comments about retaining counsel, keeping a regulator "at bay," or refusing to respond to the press (Compl. ¶¶ 24(d), (h), 28(a)) can constitute actionable defamation. They cannot. *See, e.g. Chapin*, 993 F.2d at 1095 (statement that plaintiff declined to be interviewed for article was not defamatory because "'No comment' has become such a hackneyed response to media inquiries that it has been reduced to insignificance"); *Associated Press v. Cook*, 17 S.W.3d 447, 456 n. 8 (Tex. App. 2000) (statement that plaintiff invoked his Fifth Amendment privilege was not defamatory as a matter of law).

### C. Plaintiff Fails to State Any Viable Non-Defamation Claims

Honig's non-defamation claims cannot survive because they are entirely duplicative of his deficient defamation claim. *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012); *Craven v. COPE*, 656 S.E.2d 729, 734 (N.C. Ct. App. 2008). Even if not duplicative, the non-defamation claims would fail as inadequately pled.

Honig has not stated a claim for intentional interference with economic advantage because he has failed to identify *any* specific lost business opportunities. *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., IBI, L.L.C.,* 2003 WL 21203503, at *6 (S.D.N.Y.

15

May 22, 2003) ( "[a] properly pleaded complaint ... must allege relationships with specific third parties with which the respondent interfered"); *Superior Performers, Inc. v. Phelps*, 154 F. Supp. 3d 237, 249–50 (M.D.N.C. 2016) (claim dismissed because "failed to allege facts showing that Defendants induced a third-party not to enter into a contract . . . that would have ensued but for Defendants' actions"); *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So.3d 1041, 1048–49 (Fla. Dist. Ct. App. 2009) (claim dismissed because plaintiff failed to identify "any actual clients with whom he had an agreement which in all likelihood would have been completed but for the defendants' interference").

Buhl's Opening Brief demonstrated that the claim for violation of the NCUDTPA should be dismissed because, among other reasons, Plaintiff does not allege he suffered any harm in North Carolina. *See Nobles v. Boyd*, 2015 WL 2165962, at *32 (E.D.N.C. May 7, 2015). Honig fails to address this argument. Accordingly, this ground for dismissal is uncontested and the NCUDTPA claim should be dismissed.

Because the predicate claims upon which Honig's conspiracy claim are based are all deficient, the Third Cause of Action must also be dismissed. *Dickinson v. Igoni*, 908 N.Y.S.2d 85, 88 (N.Y. App. Div., 2d Dep't 2010); *Henderson v. LeBauer*, 399 S.E.2d 142, 145 (N.C. Ct. App. 1991). Moreover, as set forth *supra* Section I, Honig has not adequately pled a conspiracy because he has not alleged any plausible "joint purpose" shared by Ladd and Buhl. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Dowd*, 589 F. Supp. at 1213-14 & n.25.

16

## CONCLUSION

For the foregoing reasons and the reasons set forth in Buhl's Opening Brief, the

Complaint should be dismissed as to Buhl with prejudice pursuant to Rules 12(b)(2) and

12(b)(6).[7]

Respectfully submitted this 18th day of August, 2017.

| | |
|---|---|
| BROOKS, PIERCE, McLENDON, HUMPHREY & LEONARD, LLP | SHER TREMONTE LLP |
| By: /s/ Eric M. David<br>Eric M. David<br>N.C. Bar No. 38118<br>Email: edavid@brookspierce.com<br>1700 Wells Fargo Capitol Center<br>150 Fayetteville Street<br>Raleigh, NC 27601<br>Tel: 919.573.6203<br>Facsimile: 336.232.9103 | By: /s/ Michael Tremonte<br>    Michael Tremonte<br>Michael Tremonte*<br>New York State Bar No. 2929164<br>Email: mtremonte@shertremonte.com<br><br>By: /s/ Erica A. Wolff<br>    Erica A. Wolff<br>Erica A. Wolff*<br>New York State Bar No. 4846424<br>Email: ewolff@shertremonte.com |
| Kimberly M. Marston<br>N.C. Bar No. 46231<br>Email: kmarston@brookspierce.com<br>2000 Renaissance Plaza<br>230 North Elm Street<br>Greensboro, NC 27401<br>Tel: 336.373.8850<br>Facsimile: 336.378.1001 | 90 Broad Street, 23rd Floor<br>New York, New York 10004<br>Tel: 212.202.2600<br>Facsimile: 212.202.4156<br>*LR 83.1 (d) Special Appearance |

*Attorneys for Defendant Teri Buhl*

---

[7]Plaintiff's alternative request for leave to amend should be denied because this Complaint already represents Honig's second attempt to state claims against Buhl, the first having been filed and voluntarily withdrawn in the Southern District of New York.

17

## CERTIFICATION OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel certifies that the foregoing reply brief complies with Local Rule 7.3(d)(1) and is no more than 4,500 words, excluding the case caption, table of contents, table of authorities, signature lines, and certificate of service.

:

/s/ Erica A. Wolff
Erica A. Wolff

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to the following:

David E. Fox
Moore & Van Allen
P.O. Box 13706
Research Triangle Park, NC 27709
foxd@mvalaw.com

Charles J. Harder
Ryan J. Stonerock
Harder Mirell & Abrams LLP
132 S Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212
charder@hmafirm.com
rstonerock@hmafirm.com

*Attorneys for Plaintiff*

Darren Laverne
Jeffrey W. Davis
John P. Coffey
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
dlaverne@kramerlevin.com
jdavis@kramerlevin.com
scoffey@kramerlevin.com

Erik R. Zimmerman
Robinson, Bradshaw & Hinson, P.A.
1450 Raleigh Road, Ste. 100
Chapel Hill, NC 27517
ezimmerman@robinsonbradshw.com

Jonathan Christopher Krisko
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, NC 28246
jkrisko@rbh.com

*Attorneys for Defendants MGT Capital Investments, Inc. and Robert Ladd*

This the 18th day of August, 2017.

/s/ Erica A. Wolff
Erica A. Wolff
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Phone: (212) 202-2600
Email: ewolff@shertremonte.com

19