# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **BARRY HONIG**, an individual,<br><br>                    *Plaintiff*,<br><br>**v.**<br><br>**ROBERT LADD**, an individual; **MGT CAPITAL INVESTMENTS, INC.**, a Delaware corporation; **TERI BUHL**, an individual; and **DOES 1-20**,<br><br>                    *Defendants*. | **Case No. 1:17-cv-00184-CCE-LPA** |

## REPLY BRIEF IN FURTHER SUPPORT OF MOTION OF DEFENDANTS ROBERT LADD AND MGT CAPITAL INVESTMENTS, INC. TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Jonathan C. Krisko
N.C. State Bar. No. 28625
Erik R. Zimmerman
N.C. State Bar. No. 50247

**ROBINSON, BRADSHAW & HINSON, P.A.**
1450 Raleigh Road, Suite 100
Chapel Hill, NC 27517
Telephone: (919) 328-8800
Facsimile:  (919) 328-8790
jkrisko@robinsonbradshaw.com
ezimmerman@robinsonbradshaw.com

John P. Coffey*
Darren A. LaVerne*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
scoffey@kramerlevin.com
dlaverne@kramerlevin.com
* LR 83.1(d) Special Appearance

*Attorneys for Defendants Robert Ladd & MGT Capital Investments, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 3

I.      The Complaint Fails to State a Claim As To Any Cause of Action ........................ 3

        A.      New York Law Governs ................................................................................. 3

        B.      Mr. Honig Fails to Rehabilitate His Claim of Defamation .......................... 4

        C.      The Complaint Fails to State a Claim of Conspiracy .................................. 11

        D.      The Complaint Fails to State a Claim of Intentional Interference with
                Prospective Economic Advantage ............................................................... 12

        E.      The Complaint Fails to State a Claim of Unfair and Deceptive Trade
                Practices ....................................................................................................... 14

        F.      Leave to Amend Should Not Be Granted .................................................... 15

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aecom Tech. Corp. v. Keating*,
  2012 WL 370296 (N.C. Super. Ct. 2012) .................................................. 13

*Akpinar v. Moran*,
  922 N.Y.S.2d 8 (N.Y. App. Div. 1st Dep't 2011) ....................................... 7

*Alston v. Becton, Dickinson and Co.*,
  2013 WL 4539634 (M.D.N.C. Aug. 27, 2013) ........................................... 15

*Badame v. Lampke*,
  89 S.E.2d 466 (N.C. 1955) ......................................................................... 7

*Biospherics, Inc. v. Forbes, Inc.*,
  151 F.3d 180 (4th Cir. 1998) ................................................................. 4, 6

*Buie v. Daniel Int'l Corp.*,
  289 S.E.2d 118 (N.C. Ct. App. 1982) ....................................................... 14

*Byrd v. Hopson*,
  265 F. Supp. 2d 594 (W.D.N.C. 2003), *aff'd*
  108 F. App'x 749 (4th Cir. 2004) ............................................................. 11

*Daniels v. Metro Magazine Holding Co., L.L.C.*,
  634 S.E.2d 586 (N.C. Ct. App. 2006) ......................................................... 5

*Dickinson v. Igoni*,
  908 N.Y.S.2d 85 (N.Y. App. Div. 2d Dep't 2010) ................................... 12

*Donnelly v. McConnell*,
  2012 WL 2402803 (M.D. Fla. June 26, 2012) ........................................... 5

*Ellis v. Northern Star Co.*,
  388 S.E.2d 127 (N.C. 1990) ..................................................................... 14

*Fortson v. Colangelo*,
  434 F. Supp. 2d 1369 (S.D. Fla. 2006) ....................................................... 4

9885216v1

*HAJMM Co. v. House of Raeforrd Farms, Inc.*,
403 S.E.2d 483 (N.C. 1991) ................................................................ 15

*Harco Nat'l Ins. Co. v. Grant Thornton LLP*,
698 S.E.2d 719 (N.C. Ct. App. 2010) ...................................................... 3

*Hill Dermaceuticals, Inc. v. Anthem, Inc.*,
228 F. Supp. 3d 1292 (M.D. Fla. 2017) ............................................. 12, 13

*Jameson Land Co., LLC v. Mosaic Fertilizer, LLC*,
2016 WL 7206122 (M.D. Fla. Feb. 5, 2016) ............................................. 9

*Johnson v. Beverly-Hanks & Assocs., Inc.*,
388 S.E.2d 584 (N.C. 1990) ............................................................ 12 n.6

*Johnson v. Bollinger*,
356 S.E.2d 378 (N.C. Ct. App. 1987) ...................................................... 9

*Kehrer v. Fields*,
2011 WL 6965714 (E.D.N.C. Nov. 21, 2011) .......................................... 10

*Laterza v. JPMorgan Chase Bank, N.A.*,
221 F. Supp. 3d 1347 (S.D. Fla. 2016) .................................................. 12

*Martinez v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
911 F. Supp. 2d 331 (E.D.N.C 2012) ..................................................... 14

*Merck & Co. v. Lyon*,
941 F. Supp. 1443 (M.D.N.C. 1996) ...................................................... 14

*Montgomery v. Maryland*,
72 F. App'x 17 (4th Cir. 2003) ............................................................ 15

*Moore v. Cox*,
341 F. Supp. 2d 570 (M.D.N.C. 2004) ..................................................... 9

*Murray v. Dobyns*,
2013 WL 3326661 (M.D.N.C. July 1, 2013), *adopted by*
Dkt. No. 38, *Murray v. Dobyns*, 1:12-cv-214 (M.D.N.C. Jan. 4, 2014) ...................... 11

*Muse v. Morrison*,
66 S.E.2d 783 (N.C. 1951) .............................................................. 12 n.6

9885216v1

*Paulson v. Cosmetic Dermatology, Inc.*,
2017 WL 2484197 (S.D. Fla. June 8, 2017) ................................................. 7

*Pierce v. Atlantic Grp., Inc.*,
724 S.E.2d 568 (N.C. Ct. App. 2012) ..................................................... 8, 9

*Privette v. University of North Carolina at Chapel Hill*,
385 S.E.2d 185 (N.C. Ct. App. 1989) ..................................................... 12

*Robertson v. Sea Pines Real Estate Cos.*,
679 F.3d 278 (4th Cir. 2012) .............................................................. 11

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
925 N.Y.S.2d 407 (N.Y. App. Div. 1st Dep't 2011) ..................................... 5

*Skinner v. E.F. Hutton & Co., Inc.*,
333 S.E.2d 236 (N.C. 1985) ................................................................ 15

*Verona v. U.S. Bancorp*,
2011 WL 1252935 (E.D.N.C. Mar. 29, 2011) ............................................ 3

*Walter v. Jet Aviation Flight Servs., Inc.*,
2016 WL 7116641 (S.D. Fla. Dec. 7, 2016) ............................................. 10

*Woodhull v. Mascarella*,
2009 WL 1790383 (N.D. Fla. June 24, 2009) ............................................. 8

## Other Authorities

Restatement (Second) of Conflicts of Laws § 150 ......................................... 3

9885216v1

# PRELIMINARY STATEMENT

Defendants Robert Ladd and MGT Capital Investments, Inc. respectfully submit this reply memorandum in further support of their motion to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).[1]

Defendants established in their opening brief that Mr. Honig has engaged in forum-shopping, withdrawing the New York action shortly after that court had questioned whether his pleading would survive a motion to dismiss (and indeed had stayed discovery pending that prospective motion).  (Br. at 4-9).  In his opposition papers, Mr. Honig assures the Court that he withdrew his New York complaint in order to file in this District (where Ladd and MGT now reside) "only after learning of Ladd/MGT's involvement in the conspiracy".  (Honig Br. at 2).  But that is not true.  For in an effort to shore up other holes in his Complaint, Mr. Honig has incongruously filed a sworn declaration asserting that he became aware of Mr. Ladd's alleged involvement as the source of Teri Buhl's article on October 11, 2016, *four months before* he withdrew the New York complaint and, indeed, three days before he had even served that pleading on Ms. Buhl in New York.  (Dkt. No. 35, at ¶¶ 5-6.  *See also* Dkt. Nos. 7, 30, *Honig v. Buhl*, Case 1:16-cv-07477-PGG (S.D.N.Y.)).  If Mr. Honig's declaration is to be credited, his stated reason for withdrawing the case in New York and filing it in this District is false.

---

[1] Defined terms used herein shall have the same definition as in Defendants' opening brief in support of their motion to dismiss ("Br.").  Honig's brief in opposition to Defendants' motion, (Dkt. No. 31), shall be referred to with the abbreviation "Honig Br."  Honig's "Supplemental Brief in Opposition to Defendants Robert Ladd and MGT Capital Investments, Inc.'s Motion to Dismiss," filed on July 28 without leave of the Court, (Dkt. No. 37), shall be referred to with the abbreviation "Honig Supp. Br."

Forum-shopping aside, Mr. Honig cannot change the fact that his claims are without merit wherever they may be brought. As noted in Defendants' opening memorandum, the allegedly defamatory statements merely reflect an opinion – or at most hyperbole, published on the blog of a self-described "smashmouth journalist" – as to the focus of the SEC subpoena served on MGT and the associated investigation. Among other things, Mr. Honig's opposition brief fails to address the fact that the subpoena requested information not only about Mr. Honig, but also about many persons and entities associated with Mr. Honig, including two companies in which he has invested (and which are the subject of a separate lawsuit Mr. Honig has filed against MGT, Mr. Ladd, and others – in the Southern District of New York). The extent to which the investigation was focused on Mr. Honig was a matter of reasonable interpretation based on, among other things, those requests in the subpoena. As he has declined to address this argument, it is apparent that Mr. Honig has no answer to it. In addition, Mr. Honig does not identify any harm he has suffered, any business relationship that has been interfered with, or any basis for his remaining claims.

The case should be dismissed and leave to amend should be denied.[2]

---

[2] As noted in Defendants' Notice of Withdrawal of Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3), which has been filed simultaneously with this reply brief, Defendants initially moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(3), arguing that Honig, in his Complaint, had not met his burden for pleading venue. *See* Br. at 11-14. Defendants have now withdrawn that part of their motion in light of additional venue allegations made by Honig after the filing of Defendants' motion.

9885216v1

## ARGUMENT

### I.    THE COMPLAINT FAILS TO STATE A CLAIM AS TO ANY CAUSE OF ACTION

#### A.    New York Law Governs

Defendants demonstrated in their opening brief that New York law applies to the substantive allegations in this dispute.  Br. at 17 n.11; *see also Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722-23, 724 (N.C. Ct. App. 2010); *Verona v. U.S. Bancorp*, 2011 WL 1252935, at *10 & n.6 (E.D.N.C. Mar. 29, 2011).  Mr. Honig argues that the *lex loci* (or "place of harm") test should "focus" on where the statement was "viewed by third parties," Honig Br. at 15, but that approach offers no guidance for statements published to the Internet, which can be viewed nationwide.  Instead, New York is the alleged "place of harm."  *See* Br. at 17 n.11.  New York law also applies under the "most significant relationship test."   New York is where Mr. Honig, a professional investor (Compl. ¶ 44), is likely to have suffered "the greatest injury to his reputation."  Restatement (Second) of Conflicts of Laws § 150 cmt. e ("A state, which is not the state of the plaintiff's domicil[e], may be that of most significant relationship if it is the state where the defamatory communication caused plaintiff the greatest injury to his reputation.")  In addition, Ms. Buhl "drafted, researched, and investigated" her blog posts from New York, where MGT still retains an office.  Dkt. No. 29 at ¶ 21 (Buhl declaration); *see also* Restatement (Second) of Conflicts of Laws § 150 cmt. e (courts should also consider, among other things, "the state or states where the defendant did his acts or acts of communication, such as assembling, printing and distributing a magazine or book").

9885216v1

Accordingly, New York law applies.  However, as set forth below, the Complaint should be dismissed under application of New York, North Carolina or Florida law.

### B.      Mr. Honig Fails to Rehabilitate His Claim of Defamation

#### 1.   The Alleged Ladd Defamatory Statements are Opinion or Hyperbole

As Mr. Honig appears to acknowledge, courts will find statements to be non-defamatory opinion when the "language used" and "the context and general tenor of the article" "negate the impression that the writer" was stating a fact.  *See Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (affirming dismissal of complaint); Honig Br. 22 (citing *Biospherics.*)); *see also* Br. at 18-20 (citing cases applying New York law); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378-79 (S.D. Fla. 2006) (applying Florida law and dismissing complaint).  Defendants argued as much in their opening memorandum, emphasizing New York law, Br. at 19, and the same result obtains under the law of North Carolina and Florida.  Ms. Buhl's initial September 23 article indicated that her conclusion that Mr. Honig was the "target" of an SEC investigation was based on "insiders who saw the subpoena," and who told her that "90% of the regulator's questions are about Honig."[3]  Compl., Ex. C at 2.  This statement does not suggest that Ms. Buhl's source had claimed to have spoken with the SEC or obtained other information regarding the investigation.  Hours later that same day, after receiving a letter from Mr. Honig's attorney, Ms. Buhl amended the article so that it said Mr. Honig was the "subject" (rather

---

[3]  Ms. Buhl also noted that "Honig has been calling SEC enforcement defense lawyers this week looking for representation," a statement that Honig does not attribute to Mr. Ladd or MGT.  *See* Compl., Ex. D at 2.

than target) of the investigation. Ms. Buhl further explained that she had "spoken with people who have seen the subpoena again" and clarified that "a large portion of the questions are centered on Barry Honig, his company (GRQ Consultants), and the people who invest with him." Compl., Ex. D. at 3.

Thus, with regard to two of the three statements attributed to Mr. Ladd – that the "Subpoena was targeted at" Mr. Honig and that Mr. Honig was the "target of an SEC investigation into his trading and investing in MGT stock" – it is abundantly clear from Ms. Buhl's blogpost that these alleged statements were based on opinion and inference drawn from the content of the Subpoena itself. Accordingly, they are not defamatory, whether under New York, North Carolina or Florida law. *See Donnelly v. McConnell*, 2012 WL 2402803, at *4 (M.D. Fla. June 26, 2012) (applying Florida law) ("assessments, opinions, and characterizations" based on defendant's experiences are inactionable); *Daniels v. Metro Magazine Holding Co., L.L.C.*, 634 S.E.2d 586, 591 (N.C. Ct. App. 2006) (statement was inactionable where it was "a matter of personal interpretation and opinion which the average reader is free to reject"); *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 412, 415 (N.Y. App. Div. 1st Dep't 2011) (inactionable opinion where "a reasonable reader would understand [a statement] as an allegation to be investigated, rather than as a fact").

The third statement – that "90% of the SEC's questions were about" Mr. Honig – if not also mere opinion, is at most hyperbole, *i.e.*, an exaggeration not to be taken literally. Given the language used and the tenor and context of Ms. Buhl's blog, no reasonable reader would have concluded that the use of the term "90%" was intended to

9885216v1

denote mathematical certainty. Ms. Buhl, who terms herself a "smashmouth" journalist (*see* Compl., Exs. A, C-G), often uses "loose" and "hyperbolic" language, establishing a tenor of subjective opinion, and not facts. *See Biospherics*, 151 F.3d at 184; Compl., Ex. A at 4 (discussing "puppet CEOs"); Ex. C. at 2 ("The national stock exchange was kind of a jerk. . . . . it's a big clusterf—k of unknowns . . . .").

And in fact, the Subpoena did request information about Mr. Honig, many persons and entities associated with him, and MGT (in which Hong has been a substantial investor).[4] The Subpoena requested that MGT produce any communications with Mr. Honig and many individuals and entities that invested with him in two other companies, D-Vasive, Inc. and Demonsaw LLC (entities also referenced in the Subpoena), several of whom are now co-plaintiffs with Mr. Honig in a lawsuit against MGT, Mr. Ladd, and others in the Southern District of New York. The use of the term "90%" (which Ms. Buhl changed hours later to "large portion of") is thus at most a loose, exaggerated way of stating that there were many requests in the Subpoena which appeared to be focused on obtaining information about Mr. Honig and those associated with him. In his Opposition, Mr. Honig declines to address this argument, presumably because he has no colorable answer to it.

---

[4] On February 11, 2016, Honig (along with affiliated entities GRQ Consultants, Inc. 401K and GRQ Consultants, Inc. Roth 401K FBO Barry Honig) filed a Form 13G reporting that Honig beneficially owned 9.1% of MGT's common stock. *See* Declaration of Darren A. LaVerne dated August 18, 2017, Ex. A. On September 29, 2016, Honig filed a Form 13G reporting that he no longer held any of those shares. LaVerne Decl., Dkt. No. 21, Ex. E.

9885216v1

2. **The Alleged Ladd Defamatory Statements Are Not Per Se Defamatory and the Complaint Fails to Plead Damages**

The alleged Ladd Defamatory Statements are not actionable as *per se* defamation. *See* Br. at 20-23. None of the statements "contain[s] an imputation necessarily hurtful in [its] effect on [Mr. Honig]'s business." *See Badame v. Lampke*, 89 S.E.2d 466, 468 (N.C. 1955) (cited at Honig Br. at 25-26). Although Mr. Honig claims he is a "professional investor," (Compl. ¶ 44), he is not "necessarily hurt" by the statement that he is the subject of an SEC investigation or subpoena. Indeed, the cover letter accompanying the Subpoena itself, consistent with SEC practice, notes: "The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security." Compl., Ex. B at 4. Accordingly, the alleged Ladd Defamatory Statements are not analogous to having accused Mr. Honig of "an unauthorized act" or having "engaged in theft and loan fraud." *See* Honig Br. at 26.[5] This case is far more similar to a situation where a defendant expressed his desire to "get to the bottom" of his concerns about an investigation involving a plaintiff. *See Akpinar v. Moran*, 922 N.Y.S.2d 8, 10 (N.Y. App. Div. 1st Dep't 2011) (affirming dismissal of complaint). Mr. Honig cites *Paulson v. Cosmetic Dermatology, Inc.*, 2017 WL 2484197, at *3 (S.D. Fla. June 8, 2017) (Honig Br. at 26), but that case held that a company-wide e-mail informing all employees of

---

[5] Confusingly, Mr. Honig claims that Ladd and/or MGT "accused Honig of criminal activity." (Honig Br. at 26) (emphasis removed). This is incorrect because, as Mr. Honig concedes, the only defamatory statements "by Ladd/MGT" were statements regarding an SEC investigation and an SEC subpoena. *See* Honig Br. 21-22; Compl. ¶ 22. The SEC, of course, has no criminal-prosecutorial authority.

9885216v1

plaintiff's termination was *not* libel *per se* because "informing them of that termination would not necessarily tend to injure" plaintiff. The Court should reach the same result here.

As Mr. Honig has not alleged statements actionable as *per se* defamatory, he must plead special damages. *See* Br. at 22-23. In response, Mr. Honig points to vague allegations that he was "injured," suffered "substantial harm," and was denied "prospective economic opportunities," in an amount to be determined at trial. Honig Br. at 27 (citing Compl. ¶¶ 6, 46). But Mr. Honig fails to identify a single "prospective economic opportunity" that he lost, or any other economic harm he sustained.

This is fatal to his claim. As set forth in Defendants' opening brief, the law requires that Mr. Honig plead damages with more specificity. Br. at 22. The same rule applies under Florida and North Carolina law. For example, in *Woodhull v. Mascarella*, 2009 WL 1790383, at *3 (N.D. Fla. June 24, 2009), the court held that plaintiff "alleged no actual damages" where, in her complaint, the plaintiff alleged that she had "suffered a loss of reputation, mental pain and emotional suffering, loss of time and effort, and general damages." *See* Dkt. No. 5, Compl. at 4, *Woodhull v. Mascarella*, Case 1:08-cv-00151-SPM-AK (N.D. Fla. July 16, 2008). And in *Pierce v. Atlantic Grp., Inc.*, 724 S.E.2d 568, 579 (N.C. Ct. App. 2012), the court affirmed the dismissal of the complaint, holding that "[w]e do not believe that Plaintiff's allegation that the alleged defamation 'damaged . . . Plaintiff's economic circumstances' fairly informs Defendant of the scope of Plaintiff's demand." *Id.* (brackets omitted) .

8

The cases Mr. Honig cites do not demonstrate otherwise. In *Moore v. Cox*, 341 F. Supp. 2d 570 (M.D.N.C. 2004), the plaintiff's claims arose from allegations of "wrongful termination and race discrimination," where, unlike here, the claim of pecuniary loss was obvious given that the plaintiff alleged that defendants' acts resulted in the loss of his employment. *Id.* at 572; *see also Johnson v. Bollinger*, 356 S.E.2d 378, 384 (N.C. Ct. App. 1987). In *Jameson Land Co., LLC v. Mosaic Fertilizer, LLC*, 2016 WL 7206122 (M.D. Fla. Feb. 5, 2016), the plaintiff's complaint was significantly more specific than Mr. Honig's. There, in a dispute alleging improper use of the defendant's land, the plaintiff explained it had "expended attorneys' fees to counteract [a demand letter from the defendant served on a predecessor in title] and further investigate its rights in and to the Jameson Property . . . ." Dkt. No. 24, Compl., at ¶ 29, *Jameson Land*, Case 8:15-cv-00409-JDW-AAS (M.D. Fla. July 7, 2015); *see also Jameson Land*, 2016 WL 7206122 at *3 (citing complaint paragraphs 29 and 138). By contrast, here Mr. Honig has not alleged a similarly specific pecuniary loss.

### 3. Mr. Honig Does Not Plausibly Allege That Ladd Made the Allegedly Defamatory Statements to Ms. Buhl

In their opening memorandum, Defendants argued that the Complaint fails to establish more than a mere possibility that Mr. Ladd made the statements attributed to him in Ms. Buhl's September 23 article. Br. at 15-17. The Complaint does not allege the date on which the statements were made, the manner in which the communications were made, or the precise substance of what Mr. Ladd purportedly said to Ms. Buhl (other than simply quoting verbatim what Ms. Buhl said in her article without attributing the

9885216v1

statements to Mr. Ladd). Contrary to Mr. Honig's claim, MGT and Ladd do not suggest that a "heightened pleading requirement" applies (Honig Br. at 18-19; *see* Fed. R. Civ. P. 9(b)), and none of the cases cited in MGT and Ladd's opening brief relies on this standard. The relevant standard is set forth in *Twombly* and the other cases cited by Defendants. *See* Br. at 15-17.

Authorities cited by Mr. Honig claiming his pleadings are sufficiently specific do not support his position. The Eleventh Circuit's opinion in *Caster v.* Hennessy, 781 F.2d 1569 (11th Cir. 1986), was decided twenty years before *Twombly* and accordingly provides no guidance here. In *Kehrer v. Fields*, 2011 WL 6965714 (E.D.N.C. Nov. 21, 2011), the plaintiffs presented to the court an e-mail in which the defendant clearly "accus[ed] Plaintiffs of being dishonest in their business and of violating a nondisclosure agreement," in lurid terms. *Id.* at *8-9. *See* Dkt. No. 13-10, Kehrer Aff. Ex. D, *Kehrer v. Fields*, Civil Action No. 5:11-cv-260 (E.D.N.C. July 11, 2011). And in *Walter v. Jet Aviation Flight Servs., Inc.*, 2016 WL 7116641 (S.D. Fla. Dec. 7, 2016), the complaint, in contrast to Mr. Honig's complaint here, set out in lengthy detail reason to believe that the defendants had defamed the plaintiff pilot to his long-time employer. Dkt. No. 1, Compl. ¶¶ 15-48, *Walter v. Jet Aviation Flight Servs., Inc.*, Case 9:16-cv-81238-RLR (S.D. Fla. July 11, 2016). *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278 (4th Cir. 2012), concerned a putative class action related to a Sherman Act violations by a real estate service and did not allege defamation. *See* Honig Br. at 18.

The allegations contained in the declarations of Messrs. Honig and Anderson recently filed with Mr. Honig's Supplemental Memorandum do not patch the holes in the

9885216v1

Complaint. New allegations contained in declarations filed in response to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) cannot save an otherwise deficient complaint. *See Murray v. Dobyns*, 2013 WL 3326661, at *3 (M.D.N.C. July 1, 2013) (holding that document "Plaintiff submitted[] as an exhibit to his brief" in opposition was "not properly before this court on a motion to dismiss") (Webster, M.J.), *adopted by* Dkt. No. 38, *Murray v. Dobyns*, 1:12-cv-214 (M.D.N.C. Jan. 4, 2014). In addition, the substantive allegations in the declarations are not credible on their face, as they transparently parrot the precise language of the Complaint in a manner suggesting that they were fashioned to suit the needs of Mr. Honig's case. *See, e.g.*, Anderson Decl., ¶ 6 ("***Ladd told me . . . that he conspired*** and coordinated with Teri Buhl . . . to publish an article on Buhl's website, www.teribuhl.com, falsely stating that Barry Honig is violating securities laws, is the 'target' of an [SEC] investigation, and that '90%' of the 'questions' in an SEC subpoena served on MGT are about Mr. Honig. . . Ladd further stated, in-person at the MGT Offices, that he wanted Buhl to publish the article to divert attention away from MGT, and toward Mr. Honig, as the target of the Subpoena and corresponding SEC scrutiny.") (emphasis added).

### C. The Complaint Fails to State a Claim of Conspiracy

Mr. Honig suggests that, whether or not his underlying claims survive, he may make an "independent claim for" "damages resulting" from civil conspiracy. Honig Br. at 29. This is not an accurate statement of the law. "[W]here the underlying claim has been dismissed, the civil conspiracy claim must also be dismissed." *Byrd v. Hopson*, 265 F. Supp. 2d 594, 599 (W.D.N.C. 2003) (applying North Carolina law), *aff'd* 108 F. App'x

9885216v1

749 (4th Cir. 2004). Mr. Honig's brief concedes that the conspiracy for which he is seeking damages "was effectuated via the publication of the Articles that impugned Honig's reputation and interfered with his business relationships" – that is, the same acts on which his defamation and interference with prospective economic advantage claims are predicated. Honig Br. at 29. Because Mr. Honig's civil conspiracy claim is solely predicated on substantive claims that should be dismissed, the civil conspiracy claim must also be dismissed. *See Privette v. University of North Carolina at Chapel Hill*, 385 S.E.2d 185, 193 (N.C. Ct. App. 1989); *Dickinson v. Igoni*, 908 N.Y.S.2d 85, 88 (N.Y. App. Div. 2d Dep't 2010) ("[A] claim alleging conspiracy to commit a tort stands or falls with the underlying tort."); *see also Laterza v. JPMorgan Chase Bank, N.A.*, 221 F. Supp. 3d 1347, 1352-53 (S.D. Fla. 2016).[6]

### D. The Complaint Fails to State a Claim of Intentional Interference with Prospective Economic Advantage

As set forth in Defendants' opening memorandum, Mr. Honig has not identified any specific economic relationship that Defendants' action purportedly harmed, as he is required to do. Br. at 24-27. While Mr. Honig suggests that this deficiency only dooms his claims within the Second Circuit, the outcome is the same under North Carolina and Florida law. *See Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1301 (M.D. Fla. 2017) (dismissing claim for tortious interference with business relationship for failure to plead "facts indicating the existence of a protected business relationship");

---

[6] *Johnson v. Beverly-Hanks & Assocs., Inc.*, 388 S.E.2d 584 (N.C. 1990) and *Muse v. Morrison*, 66 S.E.2d 783 (N.C. 1951), cited by Honig, are not to the contrary. *See* Honig Br. at 29. In neither case did the court address a circumstance in which civil conspiracy was the sole remaining cause of action.

9885216v1

*Aecom Tech. Corp. v. Keating*, 2012 WL 370296, at *5 (N.C. Super. Ct. 2012) (dismissing claim for "interference with contract and/or advantageous economic relationship" due to "Plaintiffs' failure sufficiently to allege or identify contracts or customers with which Plaintiffs contend Defendants interfered . . . ."). Mr. Honig's identification of "MGT's stockholders, potential stockholders and the stock market" as targets of MGT and Ladd's conspiracy (Honig Br. at 31) is a theory not alleged anywhere in the Complaint. In any event, it does not meet his burden of identifying with specificity those third-parties and/or contracts with whom Defendants are alleged to have interfered. *See Hill Dermaceuticals*, 228 F. Supp. 3d at 1301-02 (allegations that product "sells, and has sold , . . . to consumers in this State and throughout the United States" insufficient to meet burden of "identify[ing] any current or prospective consumer with whom Hill has an actual and identifiable understanding" regarding sale of product) (internal quotation marks omitted); *Aecom Tech.*, 2012 WL 370296, at *5 (allegation that defendants "solicited Plaintiffs' customers," "encouraged them to terminate and/or breach their contracts with Plaintiff" and "attempted to transition [plaintiff's] customers and projects to [defendant]" insufficient because "Plaintiffs fail to allege that Defendants actually interfered with existing or prospective contracts, and Plaintiffs do not identify any specific contracts or customers that were lost.") (internal brackets omitted). Accordingly, this claim should also be dismissed. *See* Br. at 25-27.

13

### E. The Complaint Fails to State a Claim of Unfair and Deceptive Trade Practices

If New York or Florida law applies, the NCUDTP claim must be dismissed. *See Martinez v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 911 F. Supp. 2d 331, 339 (E.D.N.C 2012). The NCUDTP claim must also be dismissed if the Court dismisses the defamation claims. *See* Br. at 27-28. But even if the Court does not dismiss the defamation claims, the NCUDTP claim should nonetheless be dismissed because the alleged activities here are not "in or affecting commerce." As noted in Defendants' opening memorandum, this phrase has a specific meaning in the context of the NCUDTP and "does not apply to all wrongs in a business setting." *See* Br. at 29-30. In his opposition, Mr. Honig cites *Ellis v. Northern Star Co.*, 388 S.E.2d 127 (N.C. 1990), claiming that a libel *per se* impeaching a party in its business activities is a violation of the NCUDTP. Honig Br. at 31. But Mr. Honig cannot establish libel *per se*, *see* Section I.B.2, above, and thus *Ellis* does not apply. In any event, in *Ellis* there was little question (and indeed, the court did not specifically assess) whether the plaintiff's "business activities" were "in or affecting commerce" in North Carolina because the dispute arose after the defendant potato processor sent a letter to the plaintiff food broker's customers, stating it "did not authorize" plaintiff's price list. 388 S.E.2d at 129. Contrarily, here Mr. Honig has not alleged conduct that is: (i) surrounding a sale of some sort, or an exchange of goods, *see* Br. at 29; (ii) related to "dealings between buyers and sellers" within North Carolina, *see Buie v. Daniel Int'l Corp.*, 289 S.E.2d 118, 119 (N.C. Ct. App. 1982); or (iii) affecting the conduct of his business in North Carolina, *see Merck & Co. v. Lyon*, 941 F. Supp.

9885216v1

1443, 1463 (M.D.N.C. 1996) ("[P]laintiffs have failed to allege a substantial effect on any in-state business operations and therefore . . . their claims fall outside the reach of the [NCUDTP]").  *See also Skinner v. E.F. Hutton & Co., Inc.*, 333 S.E.2d 236, 241 (N.C. 1985) (affirming dismissal of NCUDTP claim where defendant brokers fraudulently induced plaintiffs to purchase third-party securities; "We hold that securities transactions are beyond the scope of [the NCUDTP].").  Mr. Honig's allegation of purported harm to "consumers in the market to purchase MGT's stock" (Honig Br. at 32) does not appear in the Complaint.  Yet even if this claim had been made in the Complaint it would be insufficient because "the legislature simply did not intend for the trade, issuance and redemption of corporate securities or similar financial instruments" to fall within the statute.  *See HAJMM Co. v. House of Raeforrd Farms, Inc.*, 403 S.E.2d 483, 493 (N.C. 1991).

### F.     Leave to Amend Should Not Be Granted

Mr. Honig's request to "be granted leave to amend, if necessary" (Honig Br. at 32) is procedurally improper and should be denied.  Instead of a motion, Mr. Honig offers no more than a single sentence to explain why he should be granted leave or to describe the form any potential amendment would take.  This is insufficient.  *See Alston v. Becton, Dickinson and Co.*, 2013 WL 4539634, at *5 (M.D.N.C. Aug. 27, 2013) (where plaintiff included one-sentence request for leave to amend at conclusion of response to motion to dismiss and "offer[ed] no indication of what form any such amendments might take . . . . the Court declines to permit amendment in lieu of dismissal."); *see also Montgomery v. Maryland*, 72 F. App'x 17, 20 (4th Cir. 2003) ("Montgomery failed to make a written

9885216v1

motion to amend in the district court; her sentence at the end of a memorandum opposing a motion to dismiss does not satisfy the requirements of Fed.R.Civ.P. 7(b), governing the form of motions. . . . Therefore, the district court did not err in failing to act on such a motion.")  This is effectively the second time Mr. Honig has filed these allegations (after the court in New York questioned the viability of his claims against Ms. Buhl and Mr. Honig withdrew his suit), he has already filed two post-Complaint declarations seeking to shore up his current pleading, and he should not be permitted yet another chance to salvage a meritless case.

## CONCLUSION

For the reasons stated above and in Defendants' opening brief, the Court should dismiss the claims against Mr. Ladd and MGT with prejudice under Rule 12(b)(6).

9885216v1

This 18th Day of August, 2017

/s/ Jonathan C. Krisko
Jonathan C. Krisko
N.C. State Bar No. 28625

/s/ John P. Coffey
John P. Coffey*

/s/ Erik R. Zimmerman
Erik R. Zimmerman
N.C. State Bar No. 50427

/s/ Darren A. LaVerne
Darren A. LaVerne*

ROBINSON, BRADSHAW & HINSON, P.A.
1450 Raleigh Road, Suite 100
Chapel Hill, NC 27517
Telephone: (919) 328-8800
Facsimile: (919) 328-8790
jkrisko@robinsonbradshaw.com
ezimmerman@robinsonbradshaw.com

KRAMER LEVIN NAFTALIS & FRANKEL
  LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
scoffey@kramerlevin.com
dlaverne@kramerlevin.com
* LR 83.1(d) Special Appearance

*Attorneys for Defendants Robert Ladd & MGT Capital Investments, Inc.*

17

9885216v1

# CERTIFICATE OF WORD COUNT

This brief does not exceed the word limit of 5,500 words set by Magistrate Auld's order on August 3, 2017. *See* Dkt. No. 40. This brief otherwise complies with LR 7.3(d)(1).

This 18th day of August, 2017.

/s/ Darren A. LaVerne
Darren A. LaVerne*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
dlaverne@kramerlevin.com
* LR 83.1(d) Special Appearance

18

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David E. Fox
N.C. State Bar No. 10332
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700.
Charlotte, NC 28202-4003
(919) 286-8069
davidfox@mvalaw.com

Charles J. Harder
Ryan J. Stonerock
HARDER, MIRELL & ABRAMS LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212
charder@hmafirm.com
rstonerock@hmafirm.com

*Attorneys for Plaintiff Barry Honig*

Eric M. David
N.C. State Bar No. 38118
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD LLP
1700 Wells Fargo Capital Center
150 Fayatteville Street
Raleigh, NC 27601
edavid@brookspierce.com

Kimberly M. Marston
N.C. State Bar No. 46231
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD LLP
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
kmarston@brookspierece.com

Michael Tremonte

9885216v1

Erica A. Wolff
SHER TREMONTE
90 Broad Street, 23rd Floor
New York, NY 10004
mtremonte@shertremonte.com
ewolff@shertremonte.com

*Attorneys for Defendant Teri Buhl*

This 18th day of August, 2017.

/s/ Darren A. LaVerne
Darren A. LaVerne*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
dlaverne@kramerlevin.com
* LR 83.1(d) Special Appearance

20