# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:17-CV-184 (CCE) (LPA)

BARRY HONIG, an individual,

               Plaintiff,

     v.

ROBERT LADD, an individual; MGT
CAPITAL INVESTMENTS, INC., a
Delaware corporation; TERI BUHL,
an individual; and DOES 1-20,

               Defendants.

---

## BRIEF IN SUPPORT OF DEFENDANT TERI BUHL'S
## MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
## CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL

Eric M. David
Kimberly M. Marston

**BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP**

Michael Tremonte*
Erica A. Wolff*

**SHER TREMONTE LLP**

*LR 83.1(d) Special Appearance


*Attorneys for Defendant Teri Buhl*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

NATURE OF THE MATTER BEFORE THE COURT .................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

QUESTIONS PRESENTED ........................................................................................... 4

ARGUMENT ................................................................................................................. 4

    I.    THE COURT SHOULD RECONSIDER ITS DECISION TO ASSERT
        PERSONAL JURISDICTION OVER BUHL ............................................. 4

        A.    The Assertion of Jurisdiction Over Buhl is Based on a Clear Error of
               Law ................................................................................................ 5

        B.    The Assertion of Jurisdiction Over Buhl is Based on a Clear Error of
               Fact ............................................................................................. 10

    II.    ALTERNATIVELY, THE COURT SHOULD CERTIFY THE
        INTERLOCUTORY DECISION FOR APPEAL ..................................... 12

        A.    The Decision Involves a Controlling Issue of Law ......................... 12

        B.    There is Substantial Ground for Difference of Opinion .................. 13

        C.    Appeal would Materially Advance the Ultimate Termination of the
               Litigation ..................................................................................... 16

CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
  326 F.3d 505 (4th Cir. 2003) ........................................................................................4

*BeoCare Grp., Inc. v. Morrissey*,
  124 F. Supp. 3d 696 (W.D.N.C. 2015)........................................................................9

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462  (1985) ...................................................................................................5

*Crutchfield v. ImmunoScience, Inc.*,
  2012 WL 263396 (M.D.N.C. Jan. 30, 2012) ...............................................................9

*Dailey v. Popma*,
  191 N.C. App. 64, 662 S.E.2d 12 (2008) ...................................................................5

*Dowd v. Calabrese*
  589 F. Supp. 1206 (D.D.C. 1984) .............................................................................15

*Hanna v. Blanchette*,
  No. H-13-3119, 2014 WL 4185816 (S.D. Tex. Aug. 21, 2014)...............................14

*Hart v. Salois*,
  605 F. App'x 694 (10th Cir.), *cert. denied,* 136 S. Ct. 544, 193 L. Ed. 2d 436 (2015).............15

*In re Aluminum Warehousing Antitrust Litig.*,
  90 F. Supp. 3d 219 (S.D.N.Y. 2015)........................................................................14

*In re Auto. Parts Antitrust Litig.*,
  No. 12-md-02311; 2:12-cv-00501, 2015 WL 4508938 (E.D. Mich. July 24, 2015)................14

*In re Dental Supplies Antitrust Litig;*
  No. 16 Civ. 696, 2017 WL 4217115 ..........................................................................14

*In re N. Sea Brent Crude Oil Futures Litig.*,
  2017 WL 2535731 (S.D.N.Y. June 8, 2017)..............................................................14

*Kennedy v. St. Joseph's Ministries, Inc.*,
  657 F.3d 189 (4th Cir.2011) .....................................................................................12

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,*
 921 F.2d 21 (2d Cir. 1990) ...................................................................13

*Lolavar v. de Santibanes,*
 430 F.3d 221 (4th Cir. 2005) ...........................................................6, 9

*Martin v. Eide Bailly LLP,*
 No. 1:15-cv-1202, 2016 WL 4496570 (S.D. Ind. Aug. 26, 2016)..................6, 14, 16

*McLaughlin v. McPhail,*
 707 F.2d 800 (4th Cir. 1983) ...........................................................7, 10

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,*
 460 U.S. 1, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983) ..............................4

*Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting,*
 2017 WL 2778825 (D. Md. June 26, 2017)...........................................8

*Price v. Hagar Fin. Corp.,*
 163 N.C. App. 204, 592 S.E.2d 620 (2004) .........................................5

*Sonoco Prods. Co. v. Physicians Health Plan, Inc.,*
 338 F.3d 366 (4th Cir. 2003) ..............................................................13

*Stetser v. TAP Pharm. Prods.,*
 162 N.C. App. 518, 591 S.E.2d 572 (2004) .........................................5

*Syngenta Crop Prot., LLC v. Willowood, LLC,*
 139 F. Supp. 3d 722 (M.D.N.C. 2015)..................................................7

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.,*
 682 F.3d 292 (4th Cir. 2012) ...........................................................6, 9

*Unspam Techs., Inc. v. Chernuk,*
 716 F.3d 322 (4th Cir. 2013) ........................................................6, 8, 9

*Walden v. Fiore,*
 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)....................................5, 8, 14

*Weisman v. Blue Mountain Organics Distribution, LLC,*
 Case No. 13-CVS-3490, 2014 WL 4403105 (N.C. Super. Ct. Sept. 5, 2014)...........6

*White v. Nix,*
 43 F.3d 374 (8th Cir. 1994). ...............................................................13

iii

*Worley v. Moore*,
Case No. 15-CVS-1316, 2017 WL 871198 (N.C. Super. Ct. Feb. 28, 2017)............................5

*Young v. New Haven Advocate,*
315 F.3d 256 (4th Cir.2002), *cert. denied,* 538 U.S. 1035, 123 S.Ct. 2092, 155 L.Ed.2d 1065
(2003) .................................................................................................................................7

**Rules**

Fed. Rule Civ. P. 4(k)(1)(A)........................................................................................................6

28 U. S. C. § 1292(b) ................................................................................................................12

## NATURE OF THE MATTER BEFORE THE COURT

Defendant Teri Buhl respectfully submits this memorandum of law in support of her motion for this Court to reconsider, or in the alternative, certify for interlocutory appeal, the portion of its decision dated September 7, 2017 (the "Decision"), which denied Buhl's motion to dismiss the Complaint for lack of personal jurisdiction.[1]

The Court's determination that it could exercise personal jurisdiction over Buhl—a New York-based journalist who is not alleged to have ever traveled to North Carolina or knowingly directed any communications or activities to the state of North Carolina—is either based on a mistake of fact, a mistake of law, or involves a legal question of first impression that should be resolved by the Fourth Circuit.

Due Process precludes a court from exercising personal jurisdiction over a defendant who lacks minimum contacts with the forum state. The minimum contacts analysis focuses on the defendant's contacts with the forum state and not on the defendant's contacts *with another party* who happens to have contacts with the forum state. The so-called "conspiracy theory" of jurisdiction is not an exception to the traditional minimum contacts analysis. Rather, this theory—to the extent it remains good law, which is very much in doubt—permits a plaintiff to satisfy the constitutional minimum contacts requirement by demonstrating that an out-of-state defendant purposefully availed herself of the privileges of a state by intentionally engaging in

---

[1] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in Buhl's opening brief and reply brief in support of her Motion to Dismiss the Complaint.

1

illegal conduct with a person she knew to be located in the state. Neither the Plaintiff nor the Court has identified a case applying the conspiracy theory of jurisdiction to an out-of-state defendant who did not know that her alleged co-conspirator was in the forum state. To apply the conspiracy theory of jurisdiction in that way would undermine the long-held protections of the Due Process clause, render meaningless a robust body of minimum contacts jurisprudence, and subject journalists to personal jurisdiction in any state where any source happened to be located, regardless of whether the journalist knew the source's location. That is perhaps why North Carolina state courts have declined to adopt the conspiracy theory.

In this case, the Plaintiff does not allege anywhere that Buhl knowingly directed activities into the state of North Carolina. He only alleges that a source for some of the articles challenged in this lawsuit happened to be in North Carolina at some of the times relevant to this lawsuit. He does not allege anywhere that Buhl knew her alleged co-conspirator was in North Carolina. Such allegations fail to meet the minimum contacts standards consistent with Due Process, particularly in light of recent Supreme Court precedent.

## STATEMENT OF FACTS

Plaintiff, a private investor who lives in Florida, alleges that Buhl, an investigative reporter who lives in New York, defamed him in a series of articles published on her website (the "Articles"). Compl. ¶ 1 (Dkt. No. 1). Some of the statements challenged by

Plaintiff are alleged to have been provided to Buhl by Robert Ladd ("Ladd"), the CEO of MGT Capital Investments, Inc. ("MGT").

In this action, Plaintiff identifies sixteen statements published by Buhl that Plaintiff claims are defamatory. Complaint ¶¶ 17-18, 24(a)-(j), 27, 28(a)-(b), 32(a)-(b), 35. Of those sixteen statements, only two (*i.e.* that 90% of the SEC's "questions" in a Subpoena issued to MGT were about Plaintiff and that Plaintiff was the "target" of an SEC investigation) are alleged to be statements given to Buhl by Ladd. *Id.* ¶ 22.

Plaintiff alleges that Ladd was in North Carolina during the time he communicated with Buhl about Plaintiff. Dkts. 35, 36. Plaintiff has not alleged that Buhl knew Ladd was in North Carolina at any time when she purportedly spoke to him. Plaintiff concedes that Ladd has a New York cell phone number. Buhl has confirmed that she lives in New York, operates her website from New York, and investigated and drafted the Articles from New York without ever travelling to the state of North Carolina, placing or receiving a telephone call with any person she knew to be located in North Carolina, or exchanging an email or any other type of communication with any person she knew to be located in North Carolina. Buhl Decl. ¶¶ 23-24 (Dkt. No. 30); Buhl Reply Decl. ¶¶ 2-3 (Dkt. No. 43).

On these facts, this Court held on September 7, 2017 that it could exercise personal jurisdiction over Buhl.

I.      Whether a court may, consistent with constitutional Due Process, exercise personal jurisdiction over an out-of-state defendant who is not alleged to have knowingly directed any conduct into the forum state?

II.     Whether the factual record supported the Court's conclusion that Plaintiff had demonstrated by a preponderance of the evidence that Buhl knew Ladd was in North Carolina?

III.    In the alternative, whether the Court should certify an interlocutory appeal on the question of personal jurisdiction?

## ARGUMENT

## I.   THE COURT SHOULD RECONSIDER ITS DECISION TO ASSERT PERSONAL JURISDICTION OVER BUHL

Under Fed. R. Civ. P. 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). A judgment may be altered or amended if the party seeking reconsideration demonstrates "the need to correct [a] clear or manifest error in law or fact, to prevent manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 514.

4

### a. The Assertion of Jurisdiction Over Buhl is Based on a Clear Error of Law

The Court's reliance on the conspiracy theory of jurisdiction to exercise jurisdiction over Buhl (Decision at 2-3) is based on a clear error of law. The Due Process Clause precludes a court from exercising jurisdiction over a non-domiciliary unless the defendant has "'purposefully directed [her] activities at residents of the forum and the litigation [then] results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 (1985). In order to satisfy Due Process, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1126, 188 L. Ed. 2d 12 (2014).

Mindful of these constraints, the state of "North Carolina . . . has not adopted a conspiracy theory of personal jurisdiction." *Worley v. Moore*, Case No. 15-CVS-1316, 2017 WL 871198, at *10 (N.C. Super. Ct. Feb. 28, 2017). Indeed, the North Carolina Court of Appeals has expressly rejected the conspiracy theory, observing "reticence in implementing the theory" and noting that "it does not appear that our Supreme Court has ever adopted this theory and has instead relied on a more traditional analysis." *Stetser v. TAP Pharm. Prods.*, 162 N.C. App. 518, 521, 591 S.E.2d 572, 575 (2004). *See also Dailey v. Popma*, 191 N.C. App. 64, 71, 662 S.E.2d 12, 17–18 (2008) ("plaintiff has failed to cite any authority that a conspiracy with a North Carolina resident is sufficient to establish minimum contacts"); *Price v. Hagar Fin. Corp.*, 163 N.C. App. 204, 592 S.E.2d 620 (2004) ("we have found no North Carolina case law recognizing a conspiracy theory argument as a ground for establishing personal jurisdiction over a party and thus, decline

5

to do so in this case."); *Weisman v. Blue Mountain Organics Distribution, LLC*, Case No. 13-CVS-3490, 2014 WL 4403105, at *7 (N.C. Super. Ct. Sept. 5, 2014) (declining "any invitation to adopt the theory that appellate courts have not yet embraced").

Where, as here, there is no federal statute providing for nationwide service of process, a federal district court sitting in North Carolina may only exercise jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction" in the state of North Carolina. Fed. Rule Civ. P. 4(k)(1)(A) (a federal district court only has jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). Because North Carolina courts have not adopted the conspiracy theory of jurisdiction, federal courts sitting in North Carolina should not do so. *See Martin v. Eide Bailly LLP*, No. 1:15-cv-1202, 2016 WL 4496570, at *4 (S.D. Ind. Aug. 26, 2016) (declining to recognize the conspiracy theory of jurisdiction because, among other reasons, neither the Indiana Supreme Court nor the Indiana Court of Appeals had ever done so).

In concluding that it could exercise personal jurisdiction over Buhl, this Court relied on Fourth Circuit cases that applied the law of <u>Virginia</u>. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012) (cited by Decision at 3) (applying Virginia law); *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013) (cited by Decision at 3) (same). The Fourth Circuit cases cited by Plaintiff applied the laws of Virginia and Maryland. *See Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005) (cited by Plaintiff's Opposition Brief at 12-

6

13) (applying Virginia law); *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983)

(Plaintiff's Opposition Brief at 12-13) (applying Maryland law). Buhl is not aware,

however, of any decision from the Fourth Circuit that applies the conspiracy theory under

North Carolina law.

Even if a federal court sitting in North Carolina could apply the conspiracy theory

of jurisdiction, it would still be clear error to apply that theory to this case. The Decision

appears to assert that the Court may exercise personal jurisdiction over Buhl based

exclusively on contacts that Ladd and MGT (not Buhl) created with the state of North

Carolina. *See* Decision at 2 (finding "evidence sufficient to support specific jurisdiction"

based on allegations that Ladd and MGT resided in North Carolina and that "some of the

[alleged] co-conspirators' conversations took place by phone while Mr. Ladd was in

North Carolina).[2] Moreover, the Decision authorizes the Court to exercise personal

jurisdiction over Buhl based on Ladd's contacts even though fourteen of the sixteen

statements Plaintiff challenges in this lawsuit (*i.e.* more than 87%) were NOT statements

---

[2] The Decision also observes that "Buhl published the defamatory statements online
where they were widely and easily available, including in North Carolina" (Decision at
2), but it is settled law that the mere availability of information over the internet in a
particular state is not sufficient to constitute purposeful availment. *Young v. New Haven
Advocate,* 315 F.3d 256, 263 (4th Cir.2002), *cert. denied,* 538 U.S. 1035, 123 S.Ct. 2092,
155 L.Ed.2d 1065 (2003) ("the fact that the newspapers' websites could be accessed
anywhere, including Virginia, does not by itself demonstrate that the newspapers were
intentionally directing their website content to a Virginia audience."). *See also Syngenta
Crop Prot., LLC v. Willowood, LLC,* 139 F. Supp. 3d 722, 727 (M.D.N.C. 2015) (J.
Eagles) ("its website is available worldwide, but it does not target any specific customer
or location in North Carolina").

alleged to have been provided by Ladd (*see* Compl. ¶¶ 17-18, 24(d), 24(e), 24(f), 24(g),

24(h), 24(i), 24(j), 27, 28(a), 28(b), 32(a), 32(b), 35) and roughly half of the challenged

statements do not even concern the Subpoena, the SEC investigation, or MGT in any

way. *See id.* ¶¶ 24(e), 24(f), 24(g), 24(i), 28(b), 32(a), 32(b).

Even if Plaintiff's claims arose primarily from the alleged conspiracy between

Ladd and Buhl (and they do not), permitting a court to exercise jurisdiction over an out-

of-state defendant based exclusively on the forum contacts of her alleged co-conspirator

is inconsistent with the Supreme Court's mandate in *Walden* that "it is the defendant, not

the plaintiff or third parties, who must create contacts with the forum State." *Walden*, 134

S. Ct. at 1126. Indeed, the very case upon which the Decision relies in applying the

"conspiracy theory" of jurisdiction (Decision at 3) rejected the application of the

conspiracy theory and acknowledged that "a defendant outside the forum State **must**

**have at least 'aimed' its challenged conduct at the forum State**." *Unspam Techs., Inc.*

*v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013) (emphasis added). A defendant cannot be

said to have "aimed" her conduct at the forum State based only on an alleged conspiracy

if she had no knowledge that her co-conspirator was in the forum State. "For the court to

exercise jurisdiction under the conspiracy theory, a defendant must have had a

'reasonable expectation, at the time [she] agreed to participate in the conspiracy, that acts

to be done in furtherance of the conspiracy by another coconspirator would be

sufficient'" to subject the co-conspirator to jurisdiction in the forum. *See Planet Aid, Inc.*

*v. Reveal, Ctr. for Investigative Reporting*, 2017 WL 2778825, at *6 (D. Md. June 26,

8

2017) (citation omitted). No such expectation can exist where the defendant did not know that her purported co-conspirator was in the forum state.

Buhl is not aware of any case upholding the conspiracy theory of jurisdiction where there are no allegations supporting the inference that the out-of-state defendant knew her alleged co-conspirators were located in the forum, and none of the cases relied on by Plaintiff or the Court so hold. *See, e.g.*, *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012) (cited by Decision at 3) (defendant's CEO knowingly attended meeting in the forum state where conspiracy was first entered and defendant furthered the conspiracy through its employees who traveled to and worked in an office in the forum state); *Crutchfield v. ImmunoScience, Inc.*, 2012 WL 263396 (M.D.N.C. Jan. 30, 2012) (cited by Plaintiff's Opposition Brief at 13) (out-of-state defendant sent a letter to the in-state co-conspirator at his North Carolina address and communicated with him by phone on multiple occasions, *knowing* he was in North Carolina); *BeoCare Grp., Inc. v. Morrissey*, 124 F. Supp. 3d 696, 702-03 (W.D.N.C. 2015) (cited by Plaintiff's Opposition Brief at 13) (out-of-state defendant *knew* that her alleged co-conspirator was operating from North Carolina and *knew* that the medical samples she was misappropriating were distributed from North Carolina); *Unspam*, 716 F.3d at 328 (cited by Decision at 3) (finding that conspiracy theory of jurisdiction did *not* provide a basis for haling foreign defendants into forum state)*; Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005) (cited by Plaintiff's

9

Opposition Brief at 12-13) (same); *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983) (Plaintiff's Opposition Brief at 12-13) (same).

Accordingly, to the extent the Decision holds that the Court can exercise jurisdiction over Buhl even absent allegations that Buhl knew Ladd was in North Carolina, it is based on a clear error of law.

### b. The Assertion of Jurisdiction Over Buhl is Based on a Clear Error of Fact

To the extent the Decision concluded that Honig had demonstrated by a preponderance of the evidence that Buhl knew Ladd was in North Carolina when she allegedly conspired with him, it is based on a clear error of fact. Neither the Complaint nor any of the declarations submitted in opposition to Buhl's motion to dismiss allege— *even in conclusory terms*—that Buhl knew Ladd was in North Carolina when she purportedly communicated with him. *See* Dkt. Nos. 1, 34-36. The Court's conclusion that "Honig's evidence supports the inference that Ms. Buhl knew her co-conspirators were in North Carolina" is not supported by the record. The Court reasoned that this conclusion was based on the allegations that (1) MGT "was moving its operations to North Carolina just before and during the [alleged] conspiracy" and (2) that Buhl and Ladd "appear to have been in regular contact at that time, including at least one personal meeting[.]" Decision at 5. But neither of these allegations allege (even by conclusion) that Buhl knew Ladd was in North Carolina when she purportedly conspired with him. Nor do they create a reasonable inference that she knew or should have known.

10

As set forth in Buhl's Reply Brief, the public SEC filings and public announcements to which Buhl would have had access "just before and during the [alleged] conspiracy" represented to the public that MGT was operating in New York. For example, MGT's website announced that on September 8, 2016, MGT held its annual Shareholder's Meeting in New York (Wolff Reply Decl. Ex. C, Dkt. No. 43-4) and MGT's own SEC filing, dated October 5, 2016, locates its principal corporate office in Harrison, NY. Laverne Decl. Ex. D (Dkt. No. 21).

The public records to which Buhl would have had access during the relevant time frame also indicated that Ladd lived in New York. For example, Ladd's Bloomberg profile from October 2016 and his LinkedIn profile both reflect MGT's address in Harrison, NY. Neither refer to North Carolina. *See* Wolff Reply Decl., Exs. A-B (Dkt. Nos. 43-1, 43-2). In addition, Honig himself has alleged in a separate lawsuit that Ladd was regularly in New York during the relevant time period. *See* Wolff Decl., Ex. 1 ¶ 17 (Ladd attended a meeting in New York in April 2016); *id.* ¶ 46 (Ladd met with Honig in New York on January 25, 2017); *id.* ¶ 15 ("until recently, Defendant MGT's only office and headquarters was located in Harrison, New York," and they engaged in "substantial" conduct in New York).

Plaintiff's allegations about purportedly "regular contact" between Buhl and Ladd do not support the inference that Buhl knew Ladd was in North Carolina. The one in-person meeting cited in the Decision is <u>not</u> alleged to have occurred in North Carolina (and in all likelihood occurred in New York, if it occurred at all). Anderson Decl. ¶ 8

11

(Dkt. No. 36). The other "contacts" upon which the Court relied are calls placed to or from Ladd's cell phone, which has a New York area code. Honig Decl. ¶ 4 (Dkt. No. 35). It would be unreasonable to infer that Buhl knew that Ladd was living in North Carolina based on the allegation that she met with him in person somewhere outside of North Carolina and spoke to him on the phone with his New York cell phone. To the contrary, the fair inference would be that Buhl did not know Ladd was in North Carolina when she allegedly communicated with him. Thus, the Court should reconsider its conclusion that "Honig's evidence supports the inference that Ms. Buhl knew her co-conspirators were in North Carolina."

## II.     ALTERNATIVELY, THE COURT SHOULD CERTIFY THE INTERLOCUTORY DECISION FOR APPEAL

Section 1292(b) of Title 28 permits a district court to include language in an interlocutory order permitting that order, subject to the discretion of the appeals court, to be appealed when such order (1) "involves a controlling question of law as to which there is (2) a substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U. S. C. § 1292(b). Here, all three requirements are met.

### a.  The Decision Involves a Controlling Issue of Law

The question of whether this Court has personal jurisdiction over Buhl is a "controlling question of law." For purposes of a certifying an interlocutory order, a question is "controlling" if reversal on that question would dispose of the action. *See, e.g.*, *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 191 (4th Cir.2011) (§ 1292(b)

12

certification granted where reversal on controlling question would result in matter being terminated). Decisions based upon a finding that a court has jurisdiction, either subject matter or personal, are paradigmatic examples of decisions where reversal would dispose of the action. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.,* 338 F.3d 366, 368 (4th Cir. 2003) (certification granted on the controlling question of subject matter jurisdiction); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (certification granted, *inter alia*, on the issue of personal jurisdiction).

The question of whether this Court has personal jurisdiction over Buhl is thus "controlling" because a different determination would dispose of the action as to Buhl completely and quickly, avoiding unnecessary and possibly protracted litigation before an appeal is taken.

### b. There is Substantial Ground for Difference of Opinion

Substantial ground for difference of opinion exists on the question of whether this Court has personal jurisdiction over Buhl. "[S]ubstantial ground for disagreement" may be demonstrated when there is no binding precedent and courts have reached a "number of conflicting and contradictory opinions" on a controlling legal question. *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994).

In its Decision, this Court concluded that the conspiracy theory of jurisdiction remains good law. Decision at 2-3. However, North Carolina state courts have not adopted the conspiracy theory of jurisdiction and to the extent the Fourth Circuit has

13

adopted it while applying the laws of other states, it has not yet decided whether the conspiracy theory of jurisdiction survived the Supreme Court's decision in *Walden*.

Moreover, many other federal courts have held that it did not. For example, after this Court's Decision was entered, the district court in *In re Dental Supplies Antitrust Litig.* held that "it is highly unlikely that any concept of conspiracy jurisdiction survived the Supreme Court's ruling in *Walden*." No. 16 Civ. 696, 2017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017). Similarly, in *In re N. Sea Brent Crude Oil Futures Litig.*, the district court observed "there is reason to think that basing specific personal jurisdiction on the acts of a defendant's co-conspirators is questionable after *Walden*." 2017 WL 2535731, at *9 (S.D.N.Y. June 8, 2017). Likewise, in *Martin v. Eide Bailly LLP*, the district court held that "Plaintiffs' reliance on the conspiracy theory of personal jurisdiction is misplaced, as courts are moving away from the theory as a basis for establishing personal jurisdiction." 2016 WL 4496570, at *4 (S.D. Ind. Aug. 26, 2016). *See also In re Auto. Parts Antitrust Litig.*, No. 12-md-02311; 2:12-cv-00501, 2015 WL 4508938, at *4 (E.D. Mich. July 24, 2015) (rejecting conspiracy jurisdiction and noting "[t]he Court has no basis for imputing the actions of one defendant to another in analyzing jurisdiction"); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting the "'conspiracy jurisdiction' doctrine"); *Hanna v. Blanchette*, No. H-13-3119, 2014 WL 4185816, at *5 (S.D. Tex. Aug. 21, 2014) (same).

Even if the conspiracy theory of jurisdiction is available in this jurisdiction, there is substantial ground for disagreement as to what must be pled to sustain a case based on

14

this theory. In its Decision, this Court concluded that, under the conspiracy theory, a plaintiff could demonstrate that a "defendant purposefully availed itself of the privilege of conducting activities in the forum state" simply by offering evidence "that a conspiracy existed" with a co-conspirator who had sufficient contacts with the forum state without demonstrating that the defendant knew the alleged co-conspirator was in the forum state. Decision at 3. But other federal courts have reached opposite conclusions (and the Fourth Circuit has not expressly addressed the issue). For example, the Tenth Circuit held (and the Supreme Court declined to overrule) that "in addition to pleading a prima facie conspiracy, due process requires that a defendant also have minimum contacts with the forum." *Hart v. Salois*, 605 F. App'x 694, 700 (10th Cir.), *cert. denied,* 136 S. Ct. 544, 193 L. Ed. 2d 436 (2015).

In its Decision, this Court also rejected Buhl's argument (Reply Brief at 6-8) that using the conspiracy theory to hale a reporter into a foreign jurisdiction based only on the forum contacts of her alleged source violated the free speech protections of the First Amendment. But in *Dowd v. Calabrese*, a district court found that the First Amendment precluded a finding that a reporter and his source conspired to defame the plaintiff because there, as here, there was no plausible "joint purpose to defame." 589 F. Supp. 1206, 1214 & n.25 (D.D.C. 1984) (joint purposes proffered by plaintiff lacked "plausibility"). The court observed that finding a conspiracy absent such joint purpose would result in the "chilling" of "the traditionally-recognized relationships between

sources and reporters" and "the detriment of the values inherent in the First Amendment."
*Id.*

While courts have long been split on the legal theory of "conspiracy jurisdiction," the law in this area is more unsettled than ever after *Walden*. *See Martin* 2016 WL 4496570, at * 3 (noting that "[e]ven before *Walden*, courts were split on the question of whether conspiracy jurisdiction comports with due process," but that "[r]ecent case law reveals a strong trend that something more than an attenuated link is necessary to establish a defendant's personal jurisdiction"). Furthermore, recent decisions show that courts are "moving away" from the "[conspiracy] theory as a basis for establishing personal jurisdiction." *Id* at *4. Because of the split of authority on this issue and its trend since *Walden*, an opinion from the Fourth Circuit is needed to resolve this question of law.

### c. Appeal would Materially Advance the Ultimate Termination of the Litigation

An interlocutory appeal of this Decision would materially advance the ultimate termination of this litigation. Should the Fourth Circuit conclude—as so many other courts have now done—that an alleged conspiracy with a North Carolina resident is insufficient to establish minimum contacts, the entire action would be dismissed as to Buhl. The Fourth Circuit should be asked to make a determination at this interlocutory stage, so that Buhl and the Court may be spared the time and expense of Buhl defending herself in a far-flung forum if it is ultimately determined that the Court lacks personal jurisdiction over her.

16

## CONCLUSION

For the foregoing reasons, Defendant Teri Buhl respectfully requests that the Court reconsider its Decision and dismiss the Complaint as to Buhl for lack of personal jurisdiction, or, in the alternative, amend the Decision to certify it for interlocutory appeal.

Respectfully submitted this 29th day of September, 2017.

**BROOKS, PIERCE, McLENDON, HUMPHREY & LEONARD, LLP**

By: /s/ Eric M. David
Eric M. David
N.C. Bar No. 38118
Email: edavid@brookspierce.com
1700 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, NC 27601
Tel: 919.573.6203
Facsimile: 336.232.9103


Kimberly M. Marston
N.C. Bar No. 46231
Email: kmarston@brookspierce.com
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
Tel: 336.373.8850
Facsimile: 336.378.1001

**SHER TREMONTE LLP**

By: /s/ Michael Tremonte
        Michael Tremonte
Michael Tremonte*
New York State Bar No. 2929164
Email: mtremonte@shertremonte.com
90 Broad Street, 23rd Floor
New York, New York 10004
Tel: 212.202.2600
Facsimile: 212.202.4156


By: /s/ Erica A. Wolff
        Erica A. Wolff
Erica A. Wolff*
New York State Bar No. 4846424
Email: ewolff@shertremonte.com
90 Broad Street, 23rd Floor
New York, New York 10004
Tel: 212.202.2600
Facsimile: 212.202.4156

*LR 83.1 (d) Special Appearance

*Attorneys for Defendant Teri Buhl*

17

## CERTIFICATION OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel certifies that the foregoing brief complies with Local Rule 7.3(d)(1) and is no more than 9,000 words, excluding the case caption, table of contents, table of authorities, signature lines, and certificate of service.

:

/s/ Erica A. Wolff

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to the following:

David E. Fox
Moore & Van Allen
P.O. Box 13706
Research Triangle Park, NC 27709
foxd@mvalaw.com

Charles J. Harder
Ryan J. Stonerock
Harder Mirell & Abrams LLP
132 S Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212
charder@hmafirm.com
rstonerock@hmafirm.com

*Attorneys for Plaintiff*

Darren Laverne
Jeffrey W. Davis
John P. Coffey
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
dlaverne@kramerlevin.com
jdavis@kramerlevin.com
scoffey@kramerlevin.com

Erik R. Zimmerman
Robinson, Bradshaw & Hinson, P.A.
1450 Raleigh Road, Ste. 100
Chapel Hill, NC 27517
ezimmerman@robinsonbradshw.com

Jonathan Christopher Krisko
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, NC 28246
jkrisko@rbh.com

*Attorneys for Defendants MGT Capital Investments, Inc. and Robert Ladd*

This the 29th day of September, 2017.

/s/      Erica A. Wolff