# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BARRY HONIG, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-00184-CCE-LPA |
| | ) | |
| ROBERT LADD, an individual; MGT | ) | |
| CAPITAL INVESTMENTS, INC., | ) | |
| a Delaware corporation; TERI BUHL, | ) | |
| an individual; and DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## BRIEF IN OPPOSITION TO DEFENDANT TERRI BUHL'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL

David E. Fox, Esq.
N.C. State Bar No. 10332
MOORE & VAN ALLEN PLLC
3015 Carrington Mill Blvd., Suite 400
Morrisville, North Carolina 28202-4003
Tel:  (704) 331-1000
Fax: (704) 331-1159
Email: davidfox@mvalaw.com

Charles J. Harder, Esq.*
Ryan J. Stonerock, Esq.*
HARDER MIRELL & ABRAMS LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel:  (424) 203-1600
Fax: (424) 203-1601
Email: charder@hmafirm.com
          rstonerock@hmafirm.com
*L.R.83.1(d) Special Appearance

*Counsel for Plaintiff*

# TABLE OF CONTENTS

NATURE OF THE MATTER BEFORE THE COURT .................................................... 1

CONCISE STATEMENT OF FACTS .............................................................. 2

ARGUMENT .............................................................................. 3

    1.    Standards on motion for reconsideration ....................................... 3

    2.    There was no error of law ...................................................... 4

        A.    Buhl's attempt to relitigate her legal arguments should be ignored ............................................................... 4

        B.    The Court correctly ruled that Buhl is subject to personal jurisdiction based on her conspiracy with North Carolina residents ........................................................ 5

        C.    Buhl's own acts reached into North Carolina, subjecting her to personal jurisdiction ..................................... 9

    3.    There was no error of fact ..................................................... 12

        A.    Buhl's attempt to relitigate her factual arguments should be ignored ............................................................... 12

        B.    Buhl conveniently ignores the standards on a motion to dismiss. ......................................................... 12

        C.    There is more than enough evidence to infer Buhl knew that Ladd/MGT were in North Carolina ................................. 13

    4.    Interlocutory appeal is improper in this case ............................... 16

        A.    Standards for interlocutory appeal .................................... 16

        B.    Buhl has not presented a controlling issue of law ........................... 17

        C.    Buhl has not presented a substantial ground for difference of opinion ............................................................. 19

        D.    Interlocutory appeal in this case would cause more problems than it would potentially solve ..................................... 23

CONCLUSION ............................................................................ 24

CERTIFICATE OF WORD COUNT ................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc.*,
   750 F. Supp. 184 (W.D.N.C. 1990) ............................................................. 13

*BeoCare Grp., Inc. v. Morrissey*,
   124 F.Supp.3d 696 (W.D.N.C. 2015) ........................................................7, 9-10, 16

*Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*,
   259 F.3d 209 (4th Cir. 2001) ............................................................. 6

*Combs v. Bakker*,
   886 F.2d 673 (4th Cir. 1989) ............................................................. 13

*Cooke-Bates v. Bayer Corp.*,
   No. 3:10BCVB261, 2010 WL 4789838 (E.D. Va. Nov. 16, 2010)............................ 20

*Cross v. Suffolk City Sch. Bd.*,
   No. 2:11CV88, 2011 WL 2838180 (E.D. Va. July 14, 2011) ................................... 20

*Crutchfield v. ImmunoScience, Inc.*,
   No. 1:08CV561, 2012 WL 263396 (M.D.N.C. Jan. 30, 2012)..........................7, 12-13

*Directv, Inc. v. Hart*,
   366 F.Supp.2d 315 (E.D.N.C. 2004)............................................................. 4

*Eakin v. Rosen*,
   No. CV215-42, 2015 WL 8757062 (S.D. Ga. Dec. 11, 2015)................................... 11

*Fannin v. CSX Transp., Inc.*,
   873 F.2d 1438, 1989 WL 42583 (4th Cir. 1989) ................................... 18, 24

*Hanna v. Blanchette*,
   No. H-13-3119, 2014 WL 4185816 (S.D. Tex. Aug. 21, 2014)................................. 21

*Hart v. Salois*,
   605 F. App'x 694 (10th Cir. 2015).........................................................20-22

*Hinton v. Henderson*,
   No. 3:10cv505, 2011 WL 2142799 (W.D.N.C. May 31, 2011) ................................... 4

*In re Aluminum Warehousing Antitrust Litig.*,
90 F.Supp.3d 219 (S.D.N.Y. 2015)........................................................................20-21

*In re Auto. Parts Antitrust Litig.*,
No. 12-md-02311, 2:12-cv-00501, 2015 WL 4508938 (E.D. Mich. July
24, 2015) .................................................................................................................. 20

*In re Dental Supplies Antitrust Litig.*,
No. 16 Civ. 696, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017)................................ 20

*In re Jemsek Clinic, P.A.*,
Nos. 06–31766, 06–319866, 07–03006, 07–03008, 2011 WL 3841608
(W.D.N.C. Aug. 30, 2011)....................................................................................... 18

*In re LIBOR-Based Fin. Instruments Antitrust Litigation*,
2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) .............................................................. 8

*In re N. Sea Brent Crude Oil Futures Litig.*,
2017 WL 2535731 (S.D.N.Y. June 8, 2017) ............................................................ 20

*In re Va. Elec. & Power Co.*,
539 F.2d 357 (4th Cir. 1976) .................................................................................. 24

*Lineberger, v. CBS Corporation, et al.*,
No. 1:16-CV-00390-MR-DLH, 2017 WL 4448241 (W.D.N.C. Oct. 5,
2017) ...................................................................................................................... 25

*Long v. CPI Sec. Sys., Inc.*,
No. 3:12-CV-396-RJC-DSC, 2013 WL 3761078 (W.D.N.C. July 16,
2013) ...................................................................................................................18-19

*Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*,
148 F.3d 396 (4th Cir. 1998) .................................................................................... 3

*Pender v. Bank of Am. Corp.*,
No. 3:05-CV-238-MU, 2011 WL 62115 (W.D.N.C. Jan. 7, 2011) ............................ 12

*Manion v. Spectrum Healthcare Res.*,
966 F.Supp.2d 561 (E.D.N.C. 2013)........................................................................ 17

*Martin v. Eide Bailly LLP*,
No. 1:15-cv-1202, 2016 WL 4496570 (S.D. Ind. Aug. 26, 2016)......................... 7, 20

*Myles v. Laffitte*,
881 F.2d 125 (4th Cir. 1989) ................................................................................... 17

*Nix v. Holbrook*, No. 5:13-CV-02173-JMC,
    2015 WL 1958745 (D.S.C. Apr. 30, 2015) ..................................................................... 3

*Paschall v. Kansas City Star Co.*,
    605 F.2d 403 (8th Cir. 1979) ........................................................................... 17-18

*Quilling v. Cristell*,
    No. 3:04 CV 252, 2006 WL 1889155 (W.D.N.C. July 7, 2006) ................................. 21

*Schwartz v. Rent a Wreck of Am., Inc.*,
    603 Fed.Appx. 142, No. 13–2189, 2015 WL 1020647 (4th Cir. Mar. 10,
    2015) ...................................................................................................................... 18

*Shoe Show, Inc. v. One-Gateway Assocs., LLC*,
    No. 1:14CV434, 2015 WL 1128016 (M.D.N.C. Mar. 12, 2015) ................................. 13

*Speizman Knitting Mach. Co. v. Terrot Strickmaschinen GmBH*,
    505 F. Supp. 200 (W.D.N.C. 1981) ........................................................................... 19

*State ex rel. Howes v. Peele*,
    889 F. Supp. 849 (E.D.N.C. 1995) ........................................................................... 17

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
    139 F.Supp.3d 722 (M.D.N.C. 2015) ........................................................................ 11

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*,
    682 F.3d 292 (4th Cir. 2012) .............................................................................. 6-7

*United States v. Duke Energy Corp.*,
    218 F.R.D. 468 (M.D.N.C. 2003) ............................................................................... 4

*Universal Leather, LLC v. Koro AR, S.A.*,
    773 F.3d 553 (4th Cir. 2014) ......................................................................... 6, 13

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ................................................................................................ 5

*White v. United States*,
    No. 3:03CR181, 2010 WL 5258061 (W.D.N.C. Dec. 17, 2010) .................................. 4

*Wyeth v. Sandoz, Inc.*,
    703 F.Supp.2d 508 (E.D.N.C. 2010) ................................................................... 18, 20

*Xoom, Inc. v. Imageline, Inc.*,
    No. CIV. A. 3:98CV542, 1999 WL 1611444 (E.D. Va. Sept. 3, 1999) ............... 18, 24

*Young v. New Haven Advocate*,
 315 F.3d 256 (4th Cir. 2002) ..................................................................................... 11

**Statutes**

28 U.S.C. § 1292 ..................................................................................................... 17

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiff Barry Honig ("Plaintiff" or "Honig") hereby opposes the motion of Teri Buhl ("Buhl") for reconsideration or, in the alternative, certification for interlocutory appeal regarding the Court's Order denying her motion to dismiss on personal jurisdiction grounds. Buhl's motion does nothing more than rehash her misstatements of law and fact that the Court fully considered and rejected. The Court's ruling does not contain any errors of law or fact, and therefore Buhl's motion should be denied in its entirety.

First, on the purported error of law, Buhl does nothing more than repeat her previously rejected argument that the conspiracy theory of specific personal jurisdiction should not apply. Reconsideration is not meant as another bite at the apple on the same argument because Buhl disagrees with the Court's conclusion.

Additionally, **Buhl's own conduct** of reaching into North Carolina to conspire with defendants Robert Ladd ("Ladd"), MGT Capital Investments, Inc. ("MGT") (collectively "Ladd/MGT"), (together with Ladd/MGT, "Defendants"), subjects her to personal jurisdiction in this Court. Buhl conveniently ignores the undisputed fact that she reached into North Carolina to communicate with a resident in furtherance of her creation of the defamatory articles at issue. Therefore, despite her preaching to the contrary, requiring her to litigate here is comfortably within due process.

Second, on the purported error of fact, Buhl again greatly overstates the facts that may be in her favor and completely ignores the evidence showing that she conspired with Ladd/MGT while they were located in this State. Buhl effectively argues that the Court should have blindly and fully accepted her self-serving, "I didn't do it" declarations. It did

not need to, and correctly did not. Rather, by considering all of the evidence submitted by both sides, including the overwhelming contrary facts and evidence submitted by Honig, the Court made no clear error of fact.

In the end, the Court properly considered all of the evidence submitted on both sides and the extensive briefing, including supplemental briefing specifically requested by the Court. It then presented a well-reasoned ruling. There was no error in the Court's decision, Buhl simply disagrees with it. That does not justify reconsideration.

Third, an interlocutory appeal is improper in this case. Even if the appellate court reversed this Court's decision, it would not end this litigation, and it would not end any litigation against Buhl. Instead, it would create two separate cases resulting in the possibility of different rulings and outcomes. Overall, Buhl cannot avoid litigation of this case on the merits, and the Court should not indulge her attempts to further do so.

## CONCISE STATEMENT OF FACTS

Honig has alleged that Buhl and Ladd/MGT conspired to publish a series of false and highly defamatory articles about Honig. The articles, conceived of by Ladd/MGT, authored by Buhl, and published on Buhl's website, contain assertions that Honig, among other things, is violating securities laws, is the "target" of a Securities and Exchange Commission ("SEC") investigation arising out of those violations, and that "90%" of a SEC subpoena served on MGT (the "Subpoena") is about Honig. Defendants conspired to defame Honig in order to divert attention away from MGT as the target of the very SEC scrutiny that the articles falsely allege is directed at Honig, and also to boost the stock price of MGT, which had declined after MGT's disclosure of the Subpoena.

Ladd/MGT initially moved to dismiss this case on the grounds that venue is improper and that Honig's claims fail as a matter of law. Ladd/MGT's venue argument was primarily based on the assertion that any interaction between Ladd/MGT and Buhl concerning the defamatory articles was while Ladd/MGT were located in New York. Buhl moved to dismiss, including for lack of personal jurisdiction, on the same grounds.

However, when Honig submitted declarations and evidence establishing that Ladd/MGT were in North Carolina when they conspired and communicated with Buhl to create and publish the defamatory articles, Ladd/MGT promptly withdrew their venue argument. Undeterred, Buhl proceeded with her personal jurisdiction, even though it echoed Ladd/MGT's knowingly frivolous venue argument.

With the exception of Honig's business interference claims, the Court denied Buhl's motion to dismiss in its entirety.

## ARGUMENT

### 1. Standards on motion for reconsideration

Reconsideration "is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Nix v. Holbrook*, No. 5:13-CV-02173-JMC, 2015 WL 1958745, at *2 (D.S.C. Apr. 30, 2015) (noting that "Fourth Circuit has offered little guidance on the standard for evaluating a Fed. R. Civ. P. 54(b)" and consequently "district courts in the Fourth Circuit, in analyzing the merits of a Fed. R. Civ. P. 54 motion, look to the standards of motions under Fed. R. Civ. P. 59 for guidance").

"A motion to reconsider is appropriate when the court has obviously

misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003).

Conversely, "a motion to reconsider is not proper where it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter." *Hinton v. Henderson*, No. 3:10cv505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011) (unpublished) (internal citations and quotation marks omitted); *see also Directv, Inc. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (holding that motion to reconsider is not proper to "merely ask[ ] the court 'to rethink what the Court had already thought through—rightly or wrongly'" (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)); *White v. United States*, No. 3:03CR181, 2010 WL 5258061, at *1 (W.D.N.C. Dec. 17, 2010) ("A party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motion should not be used to rehash arguments previously presented or to submit evidence which should have been previously submitted.").

## 2. There was no error of law

### A. Buhl's attempt to relitigate her legal arguments should be ignored

Buhl argues that the "Court's reliance on the conspiracy theory of jurisdiction to exercise jurisdiction over Buhl (Decision at 2-3) is based on a clear error of law." Doc. 54 at p. 5. It was not.

As an initial matter, Buhl already argued against the conspiracy theory of jurisdiction on her motion, including relying on *Walden v. Fiore*, 134 S. Ct. 1115 (2014) to

argue that *Walden* somehow overturned or precluded the application of conspiracy personal jurisdiction. *See, e.g.,* Doc. 41 at p. 2 ("Buhl's lack of contact with North Carolina is not remedied, as Plaintiff argues, by Honig's conspiracy allegations."). And, the Court accepted additional briefing on the issue. In the end, the Court disagreed with Buhl and found that *Walden* did not require dismissal in this case for lack of personal jurisdiction. *See* Doc. 49 at p. 4.

While her argument on reconsideration may have slightly different angles, the fundamental argument is the same – the Court should not apply a conspiracy theory analysis regarding personal jurisdiction. Therefore, reconsideration is inappropriate because Buhl is simply "attempting to re-litigate the same issues that have already been decided . . . . The Court did not misapprehend [Buhl's] arguments; [Buhl's] arguments . . . were heard, considered and rejected." *Pender v. Bank of Am. Corp.*, No. 3:05-CV-238-MU, 2011 WL 62115, at *1 (W.D.N.C. Jan. 7, 2011).

B.  The Court correctly ruled that Buhl is subject to personal jurisdiction based on her conspiracy with North Carolina residents

The Court's reliance on the conspiracy theory of jurisdiction is not a clear error of law.

First, Buhl claims that this Court should not have followed Fourth Circuit precedent because those cases originated from district courts in other states and that North Carolina state courts have rejected the conspiracy theory of jurisdiction. However, state law is irrelevant because the Court's analysis is guided by Due Process principles.

The historical two-step process for determining personal jurisdiction – considering

whether the North Carolina long-arm statute authorizes the exercise of jurisdiction and then inquiring as to whether the exercise of personal jurisdiction comports with the requirements of the Due Process clause – is no longer necessary because the North Carolina long-arm statute has been construed "as extending jurisdiction to the full extent permitted by the Fourteenth Amendment." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) ("The North Carolina Supreme Court has held that N.C.G.S. § 1–75.4(1)(d) permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process."). Instead, the Court need solely determine whether the exercise of personal jurisdiction comports with the Due Process clause of the 14th Amendment. *See Christian Sci. Bd. of Dirs.*, 259 F.3d at 215; *Universal Leather*, 773 F.3d at 558–59 (holding that two-prong test "merges into [a] single question," allowing the court to proceed directly to the constitutional analysis).

Accordingly, the law of the underlying state is irrelevant, and the Court's following of Fourth Circuit precedent was proper. For example, the court's analysis of personal jurisdiction pursuant to a conspiracy in *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292 (4th Cir. 2012) was pursuant to Due Process principles, not under Virginia law. "Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when Virginia is the forum state. A Virginia court thus has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Id.* at 301 (citations omitted).

The same analysis applies in North Carolina federal courts such as this Court. Accordingly, Buhl's reliance on North Carolina state court decisions, and denouncement of Fourth Circuit authority originating from other states, is inapplicable.[1]

Further, Buhl conveniently ignores that federal district courts in North Carolina have adopted the conspiracy theory of jurisdiction. For example, the Western District recently recognized the Fourth Circuit's use of the conspiracy theory of jurisdiction and applied it to North Carolina state law claims in *BeoCare Grp., Inc. v. Morrissey*, 124 F. Supp. 3d 696 (W.D.N.C. 2015). Additionally, this Court previously did the same in *Crutchfield v. ImmunoScience, Inc.*, No. 1:08CV561, 2012 WL 263396 (M.D.N.C. Jan. 30, 2012), *report and recommendation adopted*, No. 1:08CV561, 2012 WL 1077450 (M.D.N.C. Mar. 30, 2012) (P. TREVOR SHARP, United States Magistrate Judge; N. CARLTON TILLEY, JR., Senior District Judge).

Therefore, there was no clear error of law, especially where the Court's ruling followed valid Fourth Circuit precedent and prior rulings in North Carolina district courts.

---

[1] Buhl's reliance on *Martin v. Eide Bailly LLP*, No. 1:15-cv-1202, 2016 WL 4496570 (S.D. Ind. Aug. 26, 2016) is therefore inapplicable because, there, the court analyzed the conspiracy theory of jurisdiction only under Indiana law because the Seventh Circuit had not accepted the conspiracy theory of jurisdiction. *See id.* at *2. Here, the Fourth Circuit, and federal district courts in North Carolina have adopted the conspiracy theory of jurisdiction. Further, in *Martin*, the court noted that the rejection of the conspiracy theory of jurisdiction by other courts was when the participation in the conspiracy was the "standalone basis for jurisdiction" and that the defendant must have undertaken some affirmative act – "through actions for itself or in service of a conspiracy, but in either case through its own affirmative acts –may that defendant potentially be subject to jurisdiction." *Id.* at *3. As detailed herein, Honig has shown Buhl engaged in affirmative acts and is not attempting to subject Buhl to personal jurisdiction here based solely and exclusively on the fact she was in a conspiracy.

Second, as the Court correctly noted, *Walden* does not change the analysis because it has no application in this case, especially considering that **no contacts** occurred in the forum state at all in that case. *See* Doc. 40 at p. 4 ("*Walden*, however, was a case where all of the contacts between the plaintiff and the defendant happened in Georgia, not in Nevada where the plaintiff sued the defendant."). Here, it is undisputed that at least some contacts involving Buhl, namely phone calls and emails, occurred with Ladd/MGT in North Carolina. "Moreover, the Supreme Court has repeatedly recognized that agency relationships 'may be relevant to the existence of specific jurisdiction,' *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014) (collecting cases) (emphasis in original), and the conspiracy theory is simply a species of agency." Doc. 49 at p. 4.

Notwithstanding, Buhl again argues that other courts have questioned the propriety of conspiracy jurisdiction after *Walden*. However, as discussed in Section 4.C. below, those cases involve mere speculation – certainly nothing to show that the Court's ruling was a "clear" error of law. *See also In re LIBOR-Based Fin. Instruments Antitrust Litigation*, 2015 WL 6243526, at *36 (S.D.N.Y. Oct. 20, 2015) (holding it was "unpersuaded that the Supreme Court's decision in *Walden* dramatically revised the law of specific personal jurisdiction") (completely ignored by Buhl even though she cites other cases from S.D.N.Y.).

Overall, Buhl has not shown how the Court's ruling is a clear error of law – Buhl simply disagrees with it. That does not justify reconsideration.

C. Buhl's own acts reached into North Carolina, subjecting her to personal jurisdiction

Regardless of whether personal jurisdiction exists over Buhl on conspiracy principles, the Court can properly exercise personal jurisdiction over Buhl because of **her own acts** that reached North Carolina. Therein, personal jurisdiction over Buhl does not **solely** rely on the acts of Ladd/MGT, then imputed them to Buhl, to subject her to personal jurisdiction here. Rather, the clear evidence shows that Buhl, herself, committed affirmative acts that reached into North Carolina.

As shown in the similar case of *BeoCare*, *supra*, an out-of-state defendant's conspiracy with forum residents may subject the defendant to personal jurisdiction based on the conspiracy with the residents or her own acts reaching into the forum state as part of that conspiracy. After finding personal jurisdiction was proper via the conspiracy theory of jurisdiction, the court found personal jurisdiction was proper on the separate basis of the defendant's own conduct:

> With that in mind, the preceding sections of this opinion tend to show Alliance knew BeoCare was a North Carolina corporation, Morrissey was a vice president at BeoCare, and Morrissey often worked for BeoCare in North Carolina. Further, Alliance repeatedly reached out to Morrissey in his capacity as a North Carolina BeoCare employee when Powers asked him, through multiple email chains, to send Alliance additional samples of Flamozil and Tixocin, two products for which BeoCare holds exclusive distributorship and licensing agreements with the manufacturer. Given the reach of this contact with North Carolina, Alliance's conduct relevant to the suit bears "such a connection with the forum state that it is fair for the defendant to defend itself in that state." Therefore, Alliance purposefully availed itself of the privilege of conducting activities in North Carolina via Alliance's own actions targeted at the forum state.

*BeoCare Grp., Inc. v. Morrissey*, 124 F. Supp. 3d at 704 (citation omitted).

Here, Buhl's own conduct subjects her to personal jurisdiction in this State, regardless of whether the conspiracy theory applies. As detailed Section 3.C. below, the evidence shows that Buhl must have known that Ladd/MGT were in North Carolina, and Buhl repeatedly reached out to Ladd in his capacity of President and CEO of MGT (through multiple emails and phone calls) to obtain information for her articles to defame Honig. Given her own conduct of reaching into North Carolina, it is more than fair to require Buhl to defend herself here.

Additionally, Buhl's own conduct of publishing the defamatory articles and making them available to North Carolina residents subjects her to personal jurisdiction here. Buhl downplays the Court's reliance on that fact that she published the defamatory articles online where they were widely and easily available, including in North Carolina. Buhl again argues in a footnote that "it is settled law that the mere availability of information over the internet in a particular state is not sufficient to constitute purposeful availment." Doc. 54 at p. 7. However, Buhl's argument severely distorts the law and facts.

As shown by Buhl's own case citation (which Buhl had also previously relied upon in her motion), the publication on the internet may not be sufficient to constitute purposeful availment only when that act is the **sole and exclusive** one at issue. *See Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002), *cert. denied*, 538 U.S. 1035, 123 S.Ct. 2092, 155 L.Ed.2d 1065 (2003) ("[T]he fact that the newspapers' websites could be accessed anywhere, including Virginia, does not **by itself** demonstrate that the newspapers were intentionally directing their website content to a Virginia audience.") (emphasis

added).[2]

Here, the publication of the defamatory articles on the internet, reaching North Carolina consumers, was coupled with the evidence of Buhl's conspiracy with North Carolina residents and Buhl's own conduct reaching into North Carolina. Further, Buhl also conveniently ignores that the North Carolina and its residents had a strong interest in the defamatory articles. Ladd and MGT were located and doing business in North Carolina when the defamatory articles were published. Accordingly, North Carolina and its residents would have a superior interest to the involvement of a North Carolina business in an SEC investigation.

Overall, it is quite fair for the Court to exercise personal jurisdiction over Buhl based on her own conduct of reaching into North Carolina to create defamatory articles, about a North Carolina business, available to North Carolina residents. Buhl's connection with North Carolina is far from attenuated.

---

[2] Buhl also again relies upon *Syngenta Crop Prot., LLC v. Willowood, LLC*, 139 F. Supp. 3d 722 (M.D.N.C. 2015). However, that case is completely inapplicable. Aside from the Court finding that personal jurisdiction was appropriate, that case dealt with the stream-of-commerce theory of patent cases and personal jurisdiction under Federal Rules of Civil Procedure Section 4(k)(2). In fact, the portion cited by Buhl ("its website is available worldwide, but it does not target any specific customer or location in North Carolina") is not part of the Court's analysis; rather, it was merely the recital of the movant's declaration. *Id.* at 727. On the other hand, Buhl completely ignores the cases cited by Honig that are more on point, i.e. dealing with online defamation, such as *Eakin v. Rosen*, No. CV215-42, 2015 WL 8757062, *4-5 (S.D. Ga. Dec. 11, 2015) (finding venue proper based on defamatory website available in the forum; recognizing venue analysis requires a greater level of relevant activities by defendants than "minimum contacts" analysis for personal jurisdiction).

### 3. There was no error of fact

#### A. Buhl's attempt to relitigate her factual arguments should be ignored

Buhl argues that the Court made an error of fact in ruling that "Honig's evidence supports the inference that Ms. Buhl knew her co-conspirators were in North Carolina." Doc. 49 at pp. 4-5. It did not.

As an initial matter, Buhl already extensively argued this issue. *See, e.g.,* Doc. 41 at pp. 3-6. In the end, the Court disagreed with Buhl. Therefore, reconsideration is inappropriate because Buhl is simply "attempting to re-litigate the same issues that have already been decided . . . . The Court did not misapprehend [Buhl's] arguments; [Buhl's] arguments . . . were heard, considered and rejected." *Pender v. Bank of Am. Corp.*, *supra*, 2011 WL 62115, at *1.

#### B. Buhl conveniently ignores the standards on a motion to dismiss

As an initial matter, Buhl conveniently ignores the standards on motions to dismiss for lack of personal jurisdiction – namely, that the Court was required to draw all reasonable inferences in favor of Honig and finding the existence of jurisdiction.

Therein, when determining whether a plaintiff has proved the existence of the court's jurisdiction over the defendant the court must "construe[] all relevant pleading allegations in the light most favorable to the plaintiff, assume[] credibility, and draw[] the most favorable inferences in favor of jurisdiction." *Crutchfield, supra*, 2012 WL 263396, at *4 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)) (holding that "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of

jurisdiction"); *see also Universal Leather, supra*, 773 F.3d at 558; *Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990).[3]

C. <u>There is more than enough evidence to infer Buhl knew that Ladd/MGT were in North Carolina</u>

Buhl argues that the law requires her to have known Ladd/MGT were in North Carolina and that the only fact the Court should have accepted is her conclusory, self-serving declaration statement that she did not know.[4] That is simply not true. In the end, the Court assessed all of the evidence and made the correct finding that Honig had presented enough evidence to support the reasonable inference that Buhl did know. Buhl has not presented anything new or additional with her motion for reconsideration to change that ruling. Therefore, it must stand.

---

[3] While the Court referenced the preponderance of evidence standard, to which Buhl seems to rely upon, that standard only applies when the Court engages in an evidentiary hearing; however, like here, when the Court rules on the papers, Honig was only required to make a prima facie showing of jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) ("When the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge."); *Shoe Show, Inc. v. One-Gateway Assocs.*, LLC, No. 1:14CV434, 2015 WL 1128016, at *3 (M.D.N.C. Mar. 12, 2015) ("The plaintiff has the burden of making a prima facie showing of personal jurisdiction.").

[4] As a reminder, Buhl made no such statements in her declaration submitted with her motion, even though the issue was obvious at the time of her motion. Rather, Buhl strategically waited until her reply to file a second declaration stating in conclusory fashion that she did not communicate or correspond with "any person I knew to be located in North Carolina." Doc. 42 at pp. 1-2 (¶¶ 2-3). Buhl obviously hoped that the Court would accept her second declaration because she was able to get the last word.

Again, regardless of whether or not the law requires Buhl to have known Ladd/MGT were in North Carolina,[5] the declarations of Barry Honig and Eric Anderson (Docs. 35, 36) unequivocally establish that Buhl communicated and conspired with Ladd/MGT in writing the defamatory articles about Honig while Ladd/MGT were residing in North Carolina. Buhl did so because of her dislike of Honig, her long-term personal relationship with Ladd, and her desire to drive internet traffic to her website.

In her motion for reconsideration, Buhl again focuses only on certain pieces of evidence and completely ignores others. For example, Buhl again argues that certain public items stated that Ladd and/or MGT were in New York around September 2016, when the first defamatory article was published, citing to an MGT SEC filing and Ladd's Bloomberg profile and LinkedIn profile.[6] Buhl made the **exact same argument** in her reply on her motion to dismiss. *See* Doc. 41 at pp. 5-6.

However, like her prior arguments, Buhl completely ignores facts and evidence leading to the inference that she knew Ladd/MGT were in North Carolina. For example,

---

[5] As the Court properly pointed out, the cases cited by Buhl for the proposition that the conspiracy theory of jurisdiction requires a showing that she actually knew her alleged co-conspirator was in North Carolina and engaged in conduct to further the conspiracy with that knowledge have **no such requirement**; rather, they "require only a showing that a conspiracy existed, the defendants participated therein, and the co-conspirator's activities in furtherance of the conspiracy had sufficient contact with North Carolina to subject that conspirator to jurisdiction in North Carolina. None explicitly say that the out-of-state co-conspirator had to know where her co-conspirators were located." Doc. 49 at pp. 4-5 (fn. 2).

[6] While Buhl references Ladd's Bloomberg and LinkedIn profiles, neither of her declarations states that she reviewed these profiles while creating the defamatory articles or has actually ever viewed them. Accordingly, it is quite hypocritical for Buhl to argue that the Court's reliance on an inference is when Buhl, herself, argues for an inference that she thought Ladd/MGT to be in New York.

Buhl conveniently ignores a public filing stating that MGT's principal executive offices were in Durham, North Carolina. *See* Doc. 21 (Laverne Decl.), Ex. F. Buhl also conveniently ignores that, on **July 25, 2016**, MGT's own website stated: "Mr. Ladd currently lives in Chapel Hill, North Carolina." *See* Doc. 32 (Stonerock Decl.), Ex. A.

Further, Buhl again fails to address the length and number of other acts in the conspiracy, in addition to the first defamatory article. Again, in furtherance of Defendants' conspiracy, she published the February 9, 2017 article "leaking" the Subpoena and republishing several of the false and defamatory statements in the September 23, 2016 article. Ladd/MGT provided the Subpoena to Buhl several months after MGT moved to this District. Doc. 35 (Honig Declaration), ¶ 12; Doc. 36 (Anderson Declaration), ¶ 11.

Lastly, the length and scope of the conspiracy also justify the inference that Buhl knew that Ladd/MGT were in North Carolina. The conspiracy lasted over the series of months between two people, Ladd and Buhl, who are/were rather friendly – meeting in person and frequently communicating via phone and email.[7] And, again, Buhl fails to address the clear facts that her repeated contact with Ladd involved her desire to harm Honig. *See* Doc. 35 (Honig Declaration), ¶ 6 (stating that at a meeting between Ladd and Honig, Ladd called Buhl, and Honig could tell that Ladd and Buhl had a familiar

---

[7] Buhl again suggests that the fact she met Ladd in New York and that Ladd maintained his New York cell phone leads to the inference that Buhl believed Ladd was still in New York. However, the notion that Buhl seemingly had no idea that Ladd/MGT had moved to North Carolina, when Ladd and Buhl had been in contact for numerous months before and after Ladd and MGT made the major change of moving their entire life and business of MGT (of which Buhl was intimately familiar) to North Carolina is just, frankly, not believable and surely is not objectively reasonable.

relationship and that Ladd obviously was the primary source behind the September 23, 2016 article).

Overall, the inference that Buhl knew that Ladd/MGT were in North Carolina when she conspired with them is more than reasonable. Especially when viewed in the light most favorable to Honig, the applicable standard of which Buhl completely ignores, there was no clear error of fact. *See BeoCare*, *supra*, 124 F. Supp. 3d at 703 (holding emails by out-of-state defendant in furtherance of conspiracy to defraud plaintiff sufficient for personal jurisdiction; stating "factual dispute must be resolved in the light most favorable to the Plaintiff. Therefore, for the purposes of this motion, the Court **infers** that Alliance knew of Morrissey's employment in North Carolina at BeoCare") (emphasis added). Therefore, the Court's ruling should stand.

### 4. Interlocutory appeal is improper in this case

A. <u>Standards for interlocutory appeal</u>

The statutory certification requirements are: (1) there must be a controlling question of law; (2) there must be substantial grounds for difference of opinion; and (3) it must appear that an immediate appeal may materially advance ultimate termination of the litigation. 28 U.S.C. § 1292(b).

Section 1292(b) "was not intended to allow interlocutory appeal in ordinary suits," or "as a vehicle to provide early review of difficult rulings in hard cases." *State ex rel. Howes v. Peele*, 889 F.Supp. 849, 852 (E.D.N.C. 1995) (quoting in part *Abortion Rights Mobilization, Inc. v. Regan*, 552 F.Supp. 364, 366 (S.D.N.Y. 1982)). Rather, section 1292(b) "is limited to extraordinary cases where early appellate review might avoid

protracted and expensive litigation." *Id.*

Section 1292(b) "should be used sparingly and . . . its requirements must be strictly construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). Further, even when "the requirements of section 1292(b) are satisfied, the district court has 'unfettered discretion' to decline to certify an interlocutory appeal if exceptional circumstances are absent." *Manion v. Spectrum Healthcare Res.*, 966 F. Supp. 2d 561, 567 (E.D.N.C. 2013).

B. Buhl has not presented a controlling issue of law

The requirement that the question sought for certification is a "controlling question of law" may be divided into two requirements: the question must be "controlling" and it must be one "of law." In order for a question to be "controlling," the district court must be required to decide such question. *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 409 (8th Cir. 1979); *see Schwartz v. Rent a Wreck of Am., Inc.*, 603 Fed.Appx. 142, No. 13–2189, 2015 WL 1020647, at *3 n. 2 (4th Cir. Mar. 10, 2015) (unpublished).

Controlling questions include those "whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, *5 (4th Cir. 1989). "Conversely, a question of law would not be controlling 'if the litigation would necessarily continue regardless of how that question were decided.'" *Wyeth v. Sandoz, Inc.*, 703 F. Supp. 2d 508, 525 (E.D.N.C. 2010) (quoting *State of N.C. ex rel. Howes v. W.R. Peele, Sr. Tr.*, 889 F.Supp. 849, 852-853 (E.D.N.C. 1995)).

Additionally, questions sought to be certified should be "narrow question[s] of pure law." *Fannin*, 1989 WL 42583, at *5. Even if a question "is technically one of law," if the

issue is "heavily freighted with the necessity for factual assessment," the question is likely not proper for Section 1292(b) interlocutory review. *Id.*; *Xoom, Inc. v. Imageline, Inc.*, No. CIV. A. 3:98CV542, 1999 WL 1611444, at *2 (E.D. Va. Sept. 3, 1999) (finding an issue not a "controlling question of law" because "it was in part based on facts" placed into evidence by the parties); *In re Jemsek Clinic, P.A.*, Nos. 06–31766, 06–319866, 07–03006, 07–03008, 2011 WL 3841608, at *3 (W.D.N.C. Aug. 30, 2011) (denying certification of a question that was "'grounded in the specific facts of the case, and cannot be divorced from [those] facts'" (alteration in original) (citation omitted)) (applying Section 1292(b) analysis to an interlocutory bankruptcy appeal). Pure questions of law include "matters the court of appeals can decide quickly and cleanly without having to study the record." *Long v. CPI Sec. Sys.*, Inc., No. 3:12-CV-396-RJC-DSC, 2013 WL 3761078, at *2 (W.D.N.C. July 16, 2013) (citation omitted) (internal quotation marks omitted).

Here, Buhl argues that the "question of whether this Court has personal jurisdiction over Buhl is a 'controlling question of law.'" Doc. 54 at p. 12. On its face, that question is clearly not a pure question of law – it is the application of the various legal principles involved in the personal jurisdiction analysis to the facts in this case. *See Speizman Knitting Mach. Co. v. Terrot Strickmaschinen GmBH*, 505 F.Supp. 200, 202 (W.D.N.C. 1981) ("A question which requires a factual as well as legal decision is not suitable for interlocutory review. Since this court as a factual and legal matter has personal jurisdiction over defendant, an interlocutory appeal would be unlikely materially (to) advance the ultimate termination of the litigation . . . . Allowing such an appeal would only complicate and prolong the litigation." (internal quotations and citations omitted)).

Further, as shown above, the Court has personal jurisdiction over Buhl based on her own conduct, without reliance on the conspiracy theory of jurisdiction. Accordingly, the conspiracy theory of jurisdiction is not "controlling" to justify an interlocutory appeal. *See Speizman*, 505 F.Supp. at 202 ("This jurisdictional basis, however, is not controlling. Hence it does not provide the controlling question of law necessary for certifying an interlocutory appeal pursuant to 28 U.S.C. s 1292(b). Plaintiff has alleged sufficient facts for the court to determine that personal jurisdiction exists apart from the Mohasco theory.").

C. Buhl has not presented a substantial ground for difference of opinion

A "'substantial ground for difference of opinion' must arise 'out of a genuine doubt as to whether the district court applied the correct legal standard in its order.'" *Wyeth*, *supra*, 703 F. Supp. 2d at 527 (citation omitted). "But just any simple disagreement between courts will not merit certification." *Cooke-Bates v. Bayer Corp.*, No. 3:10BCVB261, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010). A mere lack of unanimity, *Wyeth*, 703 F.Supp.2d at 527, or opposing decisions outside of the governing circuit, need not persuade a court that a substantial ground for disagreement exists. *Cross v. Suffolk City Sch. Bd.*, No. 2:11CV88, 2011 WL 2838180, at *3, fn. 1 (E.D. Va. July 14, 2011). "An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling question of law." *Cooke–Bates*, 2010 WL 4789838, at *2 (citation omitted).

Here, Buhl has not identified any "substantial" split of authority, just speculation. As Buhl's own cited cases states, there has been no decision overruling a conspiracy theory of jurisdiction after *Walden* – only theory and conjecture, as evidenced by the terms "highly

unlikely," *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696, 2017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017), or "questionable," *In re N. Sea Brent Crude Oil Futures Litig.*, 2017 WL 2535731, at *9 (S.D.N.Y. June 8, 2017).

Further, there is no split of authority within the Fourth Circuit. All of the cases cited by Buhl for rejecting conspiracy personal jurisdiction are outside of the Fourth Circuit – *Martin*, *supra* (S.D. Ind.); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2:12-cv-00501, 2015 WL 4508938 (E.D. Mich. July 24, 2015); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015); *Hanna v. Blanchette*, No. H-13-3119, 2014 WL 4185816 (S.D. Tex. Aug. 21, 2014).

Accordingly, an interlocutory appeal will not involve the Fourth Circuit resolving an internal conflict or advance any law within the circuit. *See Quilling v. Cristell*, No. 3:04 CV 252, 2006 WL 1889155, at *2 (W.D.N.C. July 7, 2006) ("In addition, the mere fact that the Fourth Circuit has not addressed this issue does not create a reason to grant the certificate for interlocutory appeal. If that were the case, then district courts would have to grant the certificate after consideration of any novel issue-and the statute simply does not provide for that.").

Buhl also argues a difference of opinion exists as to whether the defendant's knowledge of the location of her co-conspirators in the forum state must be shown for conspiracy jurisdiction. Therein, Buhl argues that a difference of opinion exists because the "Tenth Circuit held (and the Supreme Court declined to overrule) that 'in addition to pleading a prima facie conspiracy, due process requires that a defendant also have minimum contacts with the forum.'" *Hart v. Salois*, 605 F.App'x 694, 700 (10th Cir. 2015),

*cert. denied*, 136 S. Ct. 544, 193 L. Ed. 2d 436 (2015).

However, that case did **not** even mention the issue of a defendant's knowledge of the location of his co-conspirators. It simply was **not** an issue. Rather, that court rejected the conclusory assertion of conspiracy theory jurisdiction because the plaintiff conceded he did not allege a conspiracy directed towards the forum state, and the allegations did not show substantial steps taken in the forum state in furtherance of the conspiracy. *See Id.* at 700.

In fact, that court noted that a "co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum." *Id.* The court made **no** mention of a conspirator's knowledge of the location of the other conspirator(s). Accordingly, *Hart* actually supports the Court's Order because Honig has adequately shown the formation and execution of a conspiracy between Ladd/MGT and Buhl that was directed at North Carolina and for which substantial steps in furtherance of that conspiracy were taken in North Carolina.[8]

Lastly, that court did not find any factual allegations supporting the assertion that a conspiracy actually existed, which the Court did here based on substantial evidence. *See Id.* at 699-700 ("After reciting the elements of a conspiracy claim, Hart baldly asserts he

---

[8] As noted above, the Court properly pointed out that the cases cited by Buhl for the knowledge proposition have **no such requirement**. Thus, it comes as no surprise that Buhl has now been forced to abandon those cases and greatly stretch the analysis of *Hart v. Salois*.

'has met this burden' and '[it] is clear a conspiracy existed as pleaded.' But Hart points to nothing in the Complaint supporting these assertions, and we will not comb the Complaint's 200–plus pages and 1000–plus paragraphs to determine whether Hart pled more than a bare allegation that a conspiracy existed.").

Lastly, Buhl argues that this Court's Order conflicts with Buhl's assertion that "using the conspiracy theory to hale a reporter into a foreign jurisdiction based only on the forum contacts of her alleged source violated the free speech protections of the First Amendment." Doc. 54 at p. 15 (relying upon *Dowd v. Calabrese*, 589 F.Supp. 1206, 1214 n.25 (D.D.C. 1984)). However, Buhl does not explain what substantial ground for a difference of opinion exists. More specifically, Buhl does not even mention how *Dowd* is applicable in this case, because she cannot.

*Dowd* did **not** even involve the issue of personal jurisdiction. Rather, the only relevance it has to this case was the determination, on summary judgment, of whether the plaintiff justified a claim for conspiracy between a reporter and a source. As that court recognized, "[t]he motion for summary judgment with respect to this claim is predicated upon the proposition that the evidence is not adequate to prove the existence of such a conspiracy." *Id.* at 1213. Again, Honig produced evidence of a conspiracy to defame him between Ladd/MGT and Buhl that more than satisfied his burden at this stage of the case, which is well before summary judgment.

Overall, Buhl has not articulated an issue of law that must be resolved by the Fourth

Circuit at this time.[9]

D. <u>Interlocutory appeal in this case would cause more problems than it would</u>

<u>potentially solve</u>

"The mere fact that [the resolution of the question sought to be certified] at this time may save pre-trial and trial effort and expense is not determinative . . . ." *Fannin*, 1989 WL 42583, at *5 (citation omitted). Such speculation "of course can be said of any interlocutory appeal." *Id.* Instead, courts look to whether "'early appellate review might avoid protracted and expensive litigation.'" *Xoom*, 1999 WL 1611444, at *1 (quoting *Howes*, 889 F.Supp. at 852); *see In re Va. Elec. & Power Co.*, 539 F.2d 357, 364 (4th Cir. 1976) (finding interlocutory appeal would advance ultimate termination of the litigation because the decision would prevent needless waste of "much time, expense and effort").

Here, Buhl argues that an immediate appeal on her personal jurisdiction argument would materially advance the ultimate termination of the litigation. Nothing could be further from the truth.

A ruling in Buhl's favor from the Fourth Circuit would, at best, only end her participation in this case as a defendant. It would not terminate this case because Honig would continue his claims against Ladd/MGT here, and seek discovery from Buhl in this

---

[9] In the big picture, Buhl's argument that the Court's Order is ripe for interlocutory appeal directly conflicts with her argument for reconsideration. In essence, Buhl is speaking outside both sides of her mouth. In her request for reconsideration, Buhl argues that the law is clear and that the Court got it wrong. But in her request for interlocutory appeal, Buhl argues that conflict in the law exists. It cannot be both. Additionally, in her request for consideration, Buhl argues that the Court got an issue of fact wrong – whether Buhl knew Ladd/MGT were in North Carolina when she conspired with them. However, as shown above, interlocutory appeals are not meant for rulings on questions of fact.

case. Further, it would not terminate Honig's claims against Buhl, it would just move them to another jurisdiction.

Accordingly, even if Buhl is successful on an interlocutory appeal, neither the Court nor the parties will be "spared." Rather, Honig's claims would then be split into two cases proceeding at the same time in two courts. In addition to multiplying the proceedings for the courts and the parties, such a scenario would potentially lead to inconsistent rulings and outcomes.

Overall, Buhl has given no valid reason why this Court should utilize its discretion to grant the extraordinary relief of certifying its Order for immediate appeal. As one court recently stated:

> Finally, even if the requirements of section 1292(b) had been satisfied, there are no exceptional circumstances in this case. Defendant Siemens has not shown that there are any "exceptional circumstances [to] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (internal quotations omitted). Moreover, an immediate appeal could easily create more litigation and expense, as well as cause inefficient use of the Fourth Circuit's resources. Therefore, even if the requirements of section 1292(b) had been satisfied, no exceptional circumstances exist that warrant justification of an immediate interlocutory appeal.

*Lineberger, v. CBS Corporation, et al.*, No. 1:16-CV-00390-MR-DLH, 2017 WL 4448241, at *2 (W.D.N.C. Oct. 5, 2017).

## CONCLUSION

For the foregoing reasons, the Court should deny Buhl's motion in its entirety.

Dated: October 12, 2017

Respectfully submitted,

**MOORE & VAN ALLEN PLLC**

By: */s/ David E. Fox*_____
David E. Fox, Esq.
N.C. State Bar No. 10332
Moore & Van Allen PLLC
3015 Carrington Mill Blvd., Suite 400
Morrisville, North Carolina 28202-4003
Tel: (704) 331-1000
Fax: (704) 331-1159
Email: davidfox@mvalaw.com


Charles J. Harder, Esq.*
Ryan J. Stonerock, Esq.*
**HARDER MIRELL & ABRAMS LLP**
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel: (424) 203-1600
Fax: (424) 203-1601
Email: charder@hmafirm.com
Email: rstonerock@hmafirm.com
* LR 83.1(d) Special Appearance

*Counsel for Plaintiff*

<u>**CERTIFICATE OF WORD COUNT**</u>

This brief does not exceed the word limit of 9,000 words and complies with LR 7.3(d)(1). Based upon the word count feature on my word processing software, the word count is 8,039 words, excluding the case caption, signature lines, and the certificate of service.

Dated: October 12, 2017           Respectfully submitted,

**MOORE & VAN ALLEN PLLC**

By: *_/s/ David E. Fox_____*
David E. Fox, Esq.
N.C. State Bar No. 10332
Moore & Van Allen PLLC
3015 Carrington Mill Blvd., Suite 400
Morrisville, North Carolina 28202-4003
Tel: (704) 331-1000
Fax: (704) 331-1159
Email: davidfox@mvalaw.com


Charles J. Harder, Esq.*
Ryan J. Stonerock, Esq.*
**HARDER MIRELL & ABRAMS LLP**
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel: (424) 203-1600
Fax: (424) 203-1601
Email: charder@hmafirm.com
Email: rstonerock@hmafirm.com
* LR 83.1(d) Special Appearance

*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing **BRIEF IN OPPOSITION TO DEFENDANT TERRI BUHL'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL** was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

> Jonathan C. Krisko
> Erik R. Zimmerman
> *Robinson, Bradshaw & Hinson P.A.*
> 101 N. Tryon Street, Suite 1900
> Charlotte, NC 28246
> *jkrisko@robinsonbradshaw.com*
> *ezimmerman@robinsonbradshaw.com*
>
> Darren Laverne
> Jeffrey W. Davis
> John P. Coffey
> Kramer, Levin, Naftalis & Frankel LLP
> 1177 Avenue of the Americas
> New York, NY 10036
> *dlaverne@kramerlevin.com*
> *jdavis@kramerlevin.com*
> *scoffey@kramerlevin.com*
>
> *Attorneys for Defendants, Robert Ladd*
> *and MGT Capital Investments, Inc.*
>
>
> Kimberly M. Marston
> Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
> 2000 Renaissance Plaza
> 230 North Elm Street
> Greensboro, NC 27401
> *kmarston@brookspierce.com*

Eric M. David
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
1700 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, NC 27601
*edavid@brookspierce.com*

Michael Tremonte
Erica A. Wolff
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, NY 10004
*mtremonte@shertremonte.com*
*ewolff@shertremonte.com*

*Attorneys for Defendant, Teri Buhl*

This 12th day of October, 2017.

/s/ David E. Fox
David E. Fox